**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| IN RE: | ) | |
| | ) | |
| 25350 PLEASANT VALLEY LLC | ) | Case No. 23-11983-KHK |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| | ) | |

**TRUSTEE'S APPLICATION FOR APPROVAL OF REAL ESTATE**
**LISTING AGREEMENT AND EMPLOYMENT OF REALTOR**

Janet M. Meiburger, Chapter 7 Trustee herein (the "Trustee"), by her undersigned counsel, respectfully requests entry of an order authorizing the employment of Stephen Karbelk of the firm CENTURY 21 Commercial New Millennium as the exclusive listing agent for the sale of the Debtor's commercial condominium units, Units 175 and 180, located at 25350 Pleasant Valley Rd., Chantilly, VA 20152 (the "Units"). In support of this Application, the Trustee states as follows:

1. On December 6, 2023, the Debtor filed a voluntary petition for relief pursuant to Chapter 11 Subchapter V of the Bankruptcy Code (the "Petition Date"). On April 19, 2024, the Court entered an order converting the case to a case under Chapter 7 (Docket No. 81). The Trustee was appointed on April 29, 2024 (Docket No. 90).

2. The Debtor's primary assets are Units 175 and 180 located at 25350 Pleasant Valley Rd., Chantilly, VA 20152 (the "Units"). The Units are commercial condominium units.

_____
Janet M. Meiburger, Esq, VA Bar No. 31842
The Meiburger Law Firm, P.C.
1493 Chain Bridge Road, Suite 201
McLean, VA 22101
(703) 556-7871
Counsel to Chapter 7 Trustee

3.      The Trustee proposes to market Unit 175 for sale at a listing price of $2,400,000 and Unit 180 at a listing price of $2,600,000, as well as offering them together for a listing price of $5,000,000, upon the terms of the listing agreement attached hereto as Exhibit A (the "Listing Agreement"). These prices are based on Mr. Karbelk's inspection of the exterior of the Units and on his research and recommendation based on his experience in commercial real estate in this area. The Trustee anticipates that the sale of the Units will generate funds for the payment of unsecured creditors.

4.      Mr. Karbelk is an experienced and knowledgeable real estate agent.

5.      To the best of the Trustee's knowledge, except as stated in the Declaration of Stephen Karbelk attached hereto as Exhibit B, Mr. Karbelk and his associates have no connection with the Trustee, any party in interest or their attorneys or accountants, the United States Trustee, or any persons employed in the office of the United States Trustee. Mr. Karbelk and his associates have no interest adverse to the bankruptcy estate that would disqualify Mr. Karbelk from employment, and he is a disinterested person as such term is defined by 11 U.S.C. § 101(14).

7.      The Listing Agreements provide for exclusive listings of the Units with Mr. Karbelk, terminating at 11:59 p.m. on December 31, 2024. Mr. Karbelk will pay all costs for marketing and advertising the Units. Any other property maintenance, management, utility, or repair related expenses advanced by Mr. Karbelk shall be subject to the prior authorization by the Trustee and shall be reimbursed upon entry of an Order by the Court.

8.      As provided in the Listing Agreement, upon receipt of one or more qualified offers for one or both of the Units acceptable to the Trustee, the Trustee will then seek the approval of this Court to authorize the sale of the Units and the compensation of Mr. Karbelk

with respect thereto.  Pursuant to the Listing Agreement, the commission due on sale of the Units

will be Five and One-Half percent (5.5%) of the sale price.

9.	At the request of the U.S. Trustee's office, the Trustee has not agreed to dual

agency or designated agency.

WHEREFORE, the Trustee respectfully requests this Court enter the proposed order

attached hereto as Exhibit C authorizing the employment of Mr. Karbelk and approving the

Listing Agreement.

Respectfully submitted

THE MEIBURGER LAW FIRM, P.C.

Dated: June 13, 2024	By:  /s/ Janet M. Meiburger

Janet M. Meiburger, Esq., VSB No. 31842
The Meiburger Law Firm, P.C.
1493 Chain Bridge Road, Suite 201
McLean, Virginia 22101
(703) 556-7871
Counsel to Chapter 7 Trustee

<u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that on this 13th day of  June, 2024, a true and correct copy of the

foregoing Trustee's Application for Approval of Real Estate Listing Agreement and

Employment of Realtor will be served by ECF e-mail pursuant to the applicable Standing Order

of the Court, and by e mail on Stephen Karbelk at <u>stephen@realmarkets.com</u>.


        /s/ Janet M. Meiburger
        Janet M. Meiburger

# EXHIBIT A

DigiSign Verified - 8224043e-6835-46c9-b84c-491238081187

CENTURY 21
COMMERCIAL
New Millennium

---

**EXCLUSIVE RIGHT TO SELL COMMERCIAL REAL ESTATE LISTING AGREEMENT**
**(IMPROVED OR UNIMPROVED)**
**(ALL JURISDICTIONS)**

---

1. **PARTIES**. This Exclusive Right to Sell Commercial Real Estate Listing Agreement is made on
June 4, 2024 ("Date") by and between the parties to this agreement (the "Listing") based upon their mutually
exchanged promises, and other good and valuable consideration the value of which is hereby acknowledged:

> **CLIENT**
> Individual Name(s):  Janet M. Meiburger, Trustee
> Client Entity Name:  The Meiburger Law Firm, P.C.
> Street Address:  1493 Chain Bridge Road, Suite 201
> Unit:
> City, State, Zip:  McLean, VA  22101
> Phone:  703-556-7871                          Email:  janetm@meiburgerlaw.com

> **BROKER**
> Name: CENTURY 21 Commercial New Millennium
> Street Address: 6631 Old Dominion Dr
> Unit:
> City, State, Zip: McLean, VA  22101
> Phone: 703-556-4222                          Email: stephen@realmarkets.com

2. **PROPERTY.** "Property" means the following real and/or personal

> PropertyStreet Address:  25350 Pleasant Valley Rd, Units 175 and 180
> Unit(s):  #175 and #180
> City:  Chantilly                    State: VA                    Zip:  20152
> County:  Loudoun County
> Condominium Association:  Epic at Dulles South

> Legal Description and/or Tax ID#:  070354376016 and 070354376017

Except as otherwise provided in this Listing, Broker is to market the Property together with:
- All buildings, improvements and fixtures;
- All rights, privileges, and appurtenances pertaining to the Property, including Client's right, title and interest in any minerals, utilities, adjacent streets, alleys, strips, easements and rights-of-way;
- Client's interest in all leases, rents, and security deposits for all or any part of the Property;
- Client's interest in all licenses and permits related to the Property, only as permitted by State law;
- Client's interest in all third-party warranties or guaranties, if transferable, relating to the Property or any fixtures;
- Client's interest in any trade names, if transferable, used in connection with the Property;
- All Client's tangible personal property located on the Property that is used in connection with the Property's operations except:

CNM2 (5/23)                                   1                    Client: _JMM_____  Broker: _TC____

DigiSign Verified - 8224043e-6835-46c9-b84c-49123080c187

3. **LISTING PRICE – SALE.** Client instructs Broker to market the Property at the following price: $\underline{\$2,400,000}$ for Unit 175; $\$2,600,000$ for Unit 180, subject to the approval of the US Bankruptcy Court

A. Client agrees to sell the Property for the Listing Price or any other price acceptable to Client. The Client shall pay to the Broker all commissions and fees, described herein, as a condition of closing. The payment of any closing costs shall be negotiated in the sales contract or lease agreement.

B. This Listing begins <u>upon Bankruptcy Court Approval</u> and ends at 11:59p.m. on 12/31/24 (the "Expiration Date"). Clientor Broker may terminate this Listing on notice to Client or Broker at any time after 60-day notice from either party. The Listing shall automatically extend and renew on a month-to-month basis ("Automatic Extension Period") beginning on the first day following the Expiration Date. Either party may terminate this Listing Agreement by giving not less than thirty (30) days written notice of termination prior to the Listing's expiration or to any extension period agreed to by the Parties, including the Automatic Extension Period. If the Client elects to terminate this Agreement before the Expiration Date, the Client shall pay the Broker <u>$N/A</u> within five (5) business days as an early termination fee.

4. **BROKER'S FEE – SALE OF PROPERTY.** When earned and payable, and as a condition of closing, the Client will pay the Broker a fee of:

   A. 5.5% of sales price, payable at closing, as defined herein. From its commission, the Broker shall offer a 2.5% commission to licensed brokers representing a prospective purchaser.
   B. If the buyer is not represented by another broker, the Broker shall earn 4.0% of the sales price, payable at closing.
   C. Payment of all commissions are subject to the approval of the US Bankruptcy Court.

The Broker's fee is earned when any one of the following occurs during this Listing: (a) Client sells, exchanges, agrees to sell, or agrees to exchange all or part of the Property to anyone at any price on any terms; (b) Broker individually or in cooperation with another broker procures a buyer ready, willing and able to buy all or part of the Property at the Listing Price or at any other price acceptable to Client; (c) Client grants, or agrees to grant, to another person an option to purchase all or part of the Property; (d) Client transfers, or agrees to transfer, all or part of Client's interest (stock and/or shares) in any entity that holds title to all or any part of the Property for the purposeof conveying all or part of the Property to another person; or (e) Client breaches this Listing Agreement

The Broker's fee, once earned, is payable at the earlier of any of the following events: (a) the closing and funding of any sale or exchange of the Property or any part thereof; , (b) Client's refusal to sell the Property after the Broker's Fee has been earned; (c) Client's breach of this Listing Agreement; or (d) at such time as otherwise set forth in this Listing Agreement. The Broker's fee is not payable if a sale of the Property does not close or fund as a result of: (a) Client'sfailure, without fault of Client, to deliver to a buyer a deed as required by a contract to sell; (b) loss of Property ownership due to foreclosure or other legal proceeding, ; or (c) Client's failure to restore the Property, as a result of a casualty loss, to its previous condition by the closing date set forth in a contract for the Property's sale..

If Client collects earnest money, advanced deposit, the sales price, or damages by suit, compromise, settlement or otherwise from a buyer who breaches a contract for the sale of all or part of the Property entered into during this Listing Agreement, Client will pay Broker, after deducting attorney's fees and out-of-pocket collection expenses, any amount equal to the lesser of one-half of the amount collected after deductions, or the Brokers Fee described herein. Any amount paid under this Paragraph is in addition to any amount that Broker may be entitled to receive for subsequently selling the Property.

If the Broker advances any property maintenance or repair expenses on the Client's behalf, with Client's prior written approval, then Client shall reimburse the Broker those amounts within fifteen (15) days of Broker's invoice to the Client, or at Closing, whichever is earlier.

5.     **PROTECTION PERIOD.** The "Protection Period" means that time period starting the day after this Listing ends and continuing for 30 days thereafter. Not later than seven (7) days after this Listing ends, Broker may send Clientwritten notice specifying the names of persons and/or corporate entities whose attention Broker has called to the Property during the Listing. If Client agrees to sell, or lease, all or part of the Property during the Protection Period to a person and/or corporate entity(s) named in the notice, or to any entity created, owned and/or controlled by any person or corporate entity named in the notice, or to a relative or business of a person named in the notice, Client will pay Broker the amount Broker would have been entitled to receive if this Listing were still in effect upon the closing of the sale or upon execution of the lease,. For purposes of this paragraph: "Person" means any person in any capacity whether an individual or entity; "Sell" or "Lease" means any transfer of any interest in the Property whether by agreement, option, or sale of stock or shares. This Paragraph shall survive termination of this Listing Agreement. All amounts payable to Broker are to be paid in US Dollars. Client authorizes, and Broker may so instruct, any escrow or closing agent authorized to close a contract for the purchase, lease or acquisition of the Property to collect and disburse to Broker all amounts payable to Broker under this Listing.

6     **ACCESS TO THE PROPERTY.** The Client does not have access to the Property. Unless and until access is provided by the tenant(s) or the Client, the Property shall be marketed without access provided.

7.     **COOPERATION WITH OTHER BROKERS.** Broker will allow other brokers to show the Property to prospective buyers and/or tenants. If the other broker procures a buyer or tenant that closes on the transaction, Broker will offer to pay the other broker a portion of the Broker's fee described herein at the Broker's sole discretion.

8.     **CONFIDENTIAL INFORMATION.** During this Listing and after it ends, Broker may not knowingly disclose information obtained in confidence from Client except as authorized by Client or required by law. Broker may not disclose to Client any information obtained in confidence regarding any other person Broker represents or may have represented except as required by law.

If Confidential Information is provided to other parties, the Broker shall prepare and deliver to the Client a Confidentiality Agreement that the Client shall review, edit, and approve. The Broker shall require any person that requests Confidential Information to sign and return the Client-approved Confidentiality Agreement, unless agreed otherwise in writing by the Client.

9.     **BROKER'S AUTHORITY.** Broker will use reasonable efforts and act diligently to market the Property for Sale and/or Lease, as provided in Paragraph 3, procure a buyer and/or tenant, and negotiate the sale or lease of the Property. In addition to other authority granted by this Listing, Broker may advertise the Property by means and methods as Broker determines is appropriate in any media, including but not limited to: (a) placing a "For Sale" sign or similar marketing sign on the Property, subject to the rights of any tenants; (b) creating and placing information about the Property, including exterior and interior photographs and videos, on the internet, on the Broker's website and on other websites as the Broker shall solely determine: (c)  any print or digital advertisements;(d)  listing services that may publicize the information on the internet or by other means; (e) reproduce, display and distribute information about



CNM2 (5/23)                                           3                     Client _JMM_/_____Broker: _TC_____

DigiSign Verified - 8224043e-6835-46c9-b84c-490230068187

the Property for purposes of marketing the Property; (f) furnish comparative marketing, sales and leasing information about other properties to prospects; (g) disseminate information about the Property to other Brokers and prospects, including applicable disclosures, notices or other information that Client is required to make under law or a contract; (h) accept, in trust, any earnest money, option fee, security deposit or other money related to the purchase or lease of the Property, and deliver such money for deposit in accordance with a contract for the sale or lease of the Property; (i) disclose the sales price and terms of any lease to other brokers, appraisers, other real estate professionals, and any other listing services into which information about the Property is placed; (j) place information about this Listing and a transaction for the Property on an electronic platform; (k) advertise that Broker "sold" or "leased" the Property after a sale closing , or execution of a Property lease in which Broker was involved.

Broker is not authorized to execute any document in the name of, or on behalf of Client, concerning the Property. Photographs, videos, and compilations of information submitted to a listing service are the property of the listing service for all purposes, pursuant to their subscriber content agreement. The Client acknowledges that data and/or images of the Property, once posted online, may not be retrievable.

10. **SELLER REPRESENTATIONS**
Except as provided otherwise in this Listing, Client represents that:
A. Subject to the approval of the US Bankruptcy Court, and the rights of any tenant(s), the Client has the legal capacity to convey the Property;
B. Client is not bound by a listing agreement with another broker for the sale, exchange, or lease of the Property that is or will be in effect during this Listing;
C. no person or entity has any right to purchase, lease or acquire the Property by an option, right of first refusal, or other agreement;
D. This agreement, all sales, and payment of any commission is subject to the approval of the US Bankruptcy Court, In Re: 25350 Pleasant Valley LLC, 23-11983-KHK

11. **CLIENT'S ADDITIONAL PROMISES**
Client agrees to:
A. cooperate with Broker to facilitate the showing and marketing of the Property;
B. not negotiate with any other prospective buyer or tenant who may contact Client directly, but instead refer all prospective buyers and tenants to Broker;
C. not enter into a listing agreement with another Broker for the sale, lease or exchange of the Property to become effective during this Listing;
D. complete any disclosures or notices if any material change occurs during this Listing;

DigiSign Verified - 8224043e-6835-46c9-b84c-49f283b30187

**12. LIMITATION OF LIABILITY**

A. Broker is not responsible or liable in any manner for personal injury to any person or loss or damage to any person's real or personal property resulting from any act or omission not caused by Broker, including but not limited to injuries or losses caused by: (i) other brokers, inspectors, appraisers, lenders, contractors, surveyors, engineers, and other persons who are authorized to access the Property; (ii) acts of third parties, such as vandalism or theft; (iii) freezing or broken water pipes; (iv) any dangerous condition on the Property; (v) the Property's non-compliance with any law, association regulation or ordinance.

B. Client agrees to indemnify and hold Broker and Broker's associates harmless from any damages, costs, attorney's fees and expenses that; (i) arise from, or are related to, Client's failure to disclose any material information about the Property; (ii) that are caused by Client giving incorrect information to Broker, other brokers or prospects; (iii) that arise from any claim for misuse of intellectual property in any materials or information that Client provided to Broker related to the Property or this agreement; and (iv) that are otherwise caused by Client or Client's negligence.

**13. DEFAULT.** If Client breaches this Listing Agreement, Client is in default and will be liable to Broker for Broker's fee specified in Paragraphs 4 and 5, with such fees based on the List Price(s) in Paragraph 3, and any other fees and expense reimbursements Broker is entitled to receive under this Listing. If Broker breaches this Listing, Broker is in default and Client may exercise any remedy at law. If either party is in default, the complaining party shall give the defaulting party written notice of the default, setting forth therein the nature of the default and the action required to cure said default, by mailing such notice to the address, and by email to the contact information provided in Paragraph 1, with a fifteen (15) day grace period to cure. If the defaulting party initiates and diligently pursues cure within said fifteen (15) period but is unable to complete said cure within the fifteen (15) day period, the period for cure shall be extended for as long as the defaulting party is diligently pursuing cure. If the defaulting party does not cure the default, the complaining party may exercise any remedy at law. If Client or Broker is a prevailing party in any legal proceeding brought as a result of a dispute under this Listing, or any transaction related to or contemplated by this Listing, such party may recover from the non- prevailing party all costs of such proceeding including reasonable attorney's fees. The US Bankruptcy Court shall have exclusive jurisdiction over this Agreement.

**14. AGENCY**

A. The Broker shall only represent the Seller. Dual agency shall be prohibited.

B. Ministerial Acts. Client agrees that the Broker may perform ministerial acts for a buyer or tenant. A "ministerial act" is an act where the Broker assists a buyer or tenant to complete or fulfill a sales contract or lease for a client and an act that does not involve discretion or the exercise of the Broker's own judgment.

**15. SECURITY SYSTEMS THAT MONITOR OR RECORD AUDIO.** Client is advised that State law prohibits audio recording and/or monitoring of private conversations without the consent of the parties. The Trustee has no knowledge regarding monitor or record audio at the Property.

**16. OFFER PRESENTATION.** All written offers or counteroffers shall be presented to the Client in full as a hard copy or in an electronic format unless otherwise agreed to by the Client and Broker.

**17. AGREEMENT OF THE PARTIES**

A. Entire Agreement. This Listing is the entire agreement of the parties and may not be changed except by written agreement.

B. Assignability. Neither party may assign this Listing Agreement without the written consent of the other party.

C. Binding Effect. Upon entry of an order by the US Bankruptcy Court, the Client's obligations to pay Broker an earned fee is binding upon the Client and the Client'sheirs, administrators, executors, successors and permitted assigns.

D. Joint and Several. All Clients executing this Listing are jointing and severally liable for the performance of its terms.

E. Governing Law. The interpretation, validity, performance, and enforcement of this Listing shall be governed by the US Bankruptcy Court, Eastern District of Virginia, Alexandria Division.

Client: *JMM* /_____ Broker: *TC*

CNM2 (5/23)

F. <u>Severability</u>. If a court finds any clause in this Listing invalid or unenforceable, the remainder of this Listing will not be affected, and all other provisions of this Listing will remain valid and enforceable.

G. <u>Partial Sales or Leases</u>. If Client sells or leases part of the Property before the date this Listing ends, this Listing will continue for the remaining part of the Property through the term of this Listing.

H. <u>Notices</u>. Notices between the parties must be in writing and are effective when sent to the receiving party's address and email address specified in Paragraph 1.

I. <u>Fees</u>. Broker's fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested, or maintained by the NATIONAL ASSOCIATION OF REALTORS®, its local affiliates, or any listing service. Broker's fees are negotiable.

J. **THIS IS A LEGAL DOCUMENT**. Broker cannot give legal advice. This is a legally binding agreement. READ IN CAREFULLY. If you do not understand the effect of this Listing, consult your attorney BEFORE signing.

**18.   EXCLUSION OF SERVICES AND ASSISTANCE.** The Parties hereto understand and agree that the scope of the Brokers responsibilities **do not include** providing, nor shall Broker at any time during this agency be considered to have provided, information, advice, guidance, support, instruction, or any similar type of service or assistance ("Assistance") with regarding to matters other than selling and/or leasing the Property. This exclusion includes, but is not limited to, Assistance raising capital; structuring partnerships or other such legal entities; drafting specific language for inclusion in a contract of sale or a lease; and participation in REIT's. Client acknowledges that: (i) neither the Broker nor the Agent intend to provide Assistance other than with respect to the sale and/or lease of the Property; (ii) Assistance other than with respect to selling or leasing the Property requires consultation with an attorney or other qualified professional; and, (iii) Broker advises that Client seek such legal or other professional services for any Assistance other than selling and/or leasing the Property.

Client hereby releases and discharges Broker, its agents, employees, officers, directors, subsidiaries, and all parties related to or affiliated with Broker of and from any and all claims and damages of any nature or kind arising out of, or in any way related to, Client's reliance on Assistance from Broker other than as pertains to the selling and/or leasing of the Property.

Further, Broker advises Client, and Client acknowledges being so advised, to seek the advice of an attorney or other qualified professional as to the final terms of any contract of sale or lease *prior to execution of said contract of sale or lease.*

**19.   ADDITIONAL TERMS:** Notwithstanding anything contained herein to the contrary, this Agreement and the payment of all commissions and expenses are subject to the approval of the US Bankruptcy Court. The Broker is aware that each Property is subject to a commercial lease agreement, each of the tenants are in default, and that the Client is taking steps to regain possession of the Properties.

Client: _JMM_____ Broker: _TC____

CNM2 (5/23)

DigiSign Verified - 8224043e-6835-46c9-b84c-49f283630187

Agreed and accepted:

*Janet M Merlunge*
Client

*Bankruptcy Trustee*

Title: Not individually but solely in her
capacity as Chapter 7 Trustee, *In Re:*
*25350 Pleasant Valley LLC, Case No. 23-11983-KHK*

6/12/2024
Date

CENTURY 21 Commercial New Millennium

*Tony Coleman*
Broker/Sales Agent

06/12/2024
Date

_____
Client
Title: _____

_____
Date

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### Sales Associate Contact Information

Sales Associate (Listing Agent): Stephen Karbelk
Team Name (if applicable): RealMarkets
Phone: (W) 703-556-4222                  (M) 571-481-1037
Email: stephen@realmarkets.com

Sales Associate (Co-Listing Agent): Stephanie Young
Team Name (if applicable): RealMarkets
Phone: (W) 703-556-4222                  (M) 571-223-9775
Email: stephanie@realmarkets.com

### Supervising Broker Contact Information

Broker Name: Tony Coleman
Phone: 703-556-4222
Email: tony.coleman@c21nm.com

© New Millennium RE, Inc. d/b/a/ CENTURY 21 Commercial New Millennium 2023
This document is the exclusive property of New Millennium RE, Inc. and is intended solely for the use by agents affiliated
with CENTURY 21 Commercial New Millennium. Any other use or copying of this document is strictly prohibited
without the prior written consent of New Millennium RE, Inc.



CNM2 (5/23)

7

Client *JMM* _____ Broker: *TC* _____

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

IN RE:                                     )
                                           )
25350 PLEASANT VALLEY LLC                  )     Case No. 23-11983-KHK
                                           )     Chapter 7
Debtor                                     )
                                           )
                                           )

## DECLARATION OF STEPHEN KARBELK

I, Stephen Karbelk of CENTURY 21 Commercial New Millennium, declare as follows:

1.      I am the founder and team leader of Auction Markets, LLC DBA RealMarkets, which is affiliated with CENTURY 21 Commercial New Millennium, a licensed Virginia real estate broker. I am also a Director and Partner in CENTURY 21 Commercial New Millennium.

2.      I am submitting this declaration in support of the Trustee's Application for Approval of Real Estate Listing Agreement and Employment of Realtor, which seeks approval of the listing agreement with CENTURY 21 Commercial New Millennium for the sale of Units 175 and 180 located at 25350 Pleasant Valley Rd., Chantilly, VA 20152 (the "Units").

3.      In this matter, I may engage the support of Stephanie Young, Robert Walters and Ryan Rauner, CCIM, who are real estate agents associated with Auction Markets, LLC DBA RealMarkets and real estate licensee's with CENTURY 21 Commercial New Millennium

4.      I have reviewed the list of creditors in this case and a list of the persons employed in the Office of the United States Trustee. To the best of my knowledge, neither I, CENTURY 21 Commercial New Millennium nor Auction Markets, LLC has any interest

1

adverse to the Trustee or the bankruptcy estate in the matters upon which I am to be engaged by the Trustee, and have no connection with the Trustee, the Debtor or its creditors, other parties in interest, their respective attorneys or accountants, the United States Trustee, or anyone employed by the United States Trustee, except that I have been employed to assist the Trustee with the evaluation and sale of assets in other bankruptcy cases.

5.      To the best of my knowledge, Auction Markets, LLC, the associates who work for Auction Markets, LLC and CENTURY 21 Commercial New Millennium and I are disinterested persons within the meaning of 11 U.S.C. § 101(14). I have also confirmed with Stephanie Young, Robert Walters and Ryan Rauner, CCIM that they are disinterested persons within the meaning of 11 U.S.C. § 101(14).

6.      I understand that any payment for my services will be subject to the approval of the US Bankruptcy Court.

7.      Auction Markets, LLC and CENTURY 21 Commercial New Millennium have not shared or agreed to share any portion of the fees they earn for their work in this matter with any other person outside of Auction Markets, LLC or CENTURY 21 Commercial New Millennium.

8.      Auction Markets, LLC and CENTURY 21 Commercial New Millennium have not received, or agreed to receive, any payment in this case except as set forth herein.

2

I declare under penalty of perjury that the foregoing is true and correct.

6/13/24

Stephen Karbelk, President
Auction Markets, LLC DBA RealMarkets
20333 Medalist Drive
Ashburn, VA  20147

J:\Trustee\25350 Pleasant Valley LLC (23-11983)\Pleadings\Employment Applications\Application to Employ Realtor.Declaration.docx

3

# EXHIBIT C

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| 25350 PLEASANT VALLEY LLC | ) | Case No. 23-11983-KHK |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| | ) | |

**ORDER APPROVING REAL ESTATE LISTING
AGREEMENT AND EMPLOYMENT OF REALTOR**

UPON CONSIDERATION of the Trustee's Application for Approval of Real Estate

Listing Agreement and Employment of Realtor (the "Application") (Docket No. ___), and it

appearing to the Court that the Application is proper and should be granted, it is by the Court

ORDERED, that the Listing Agreement attached to the Application be, and hereby is,

approved; and it is further

ORDERED, that Stephen Karbelk of the firm CENTURY 21 Commercial New

Millennium be, and he is hereby, authorized and designated as the listing agent for Units 175 and

180 located at 25350 Pleasant Valley Rd., Chantilly, VA 20152, with his compensation and

expense reimbursement, if any, to be subject to further order of the Court; and it is further

ORDERED, that no agent or broker in any CENTURY 21 Commercial New Millennium

or CENTURY 21 New Millennium office may represent a buyer for the purchase of the Units,

except as approved by the Court; and it is further

ORDERED, that an agent or broker operating from another franchised, independently

owned and operated, Century 21 Commercial or Century 21 office may represent a buyer for the

purchase of the Units; and it is further

ORDERED, that any provision in the Listing Agreement, attached to the Application, allowing designated representation or dual representation by agents or brokers in a CENTURY 21 Commercial New Millennium or CENTURY 21 New Millennium office is not approved and not permitted except as set forth herein.

Date:_____

_____
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket:_____

I ASK FOR THIS:

/s/ Janet M. Meiburger_____
Janet M. Meiburger, Esq., VSB No. 31842
The Meiburger Law Firm, P.C.
1493 Chain Bridge Road, Suite 201
McLean, Virginia 22101
Phone: (703) 556-7871
Counsel to Chapter 7 Trustee

SEEN AND NO OBJECTION:

/s/ Jack I. Frankel_____
Jack I. Frankel, Esq.
Office of the United States Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314
Phone: (703) 557-7229

<u>Local Rule 9022-1(C) Certification</u>

I hereby certify that the foregoing [proposed] Order Approving Trustee's Application for

Approval of Real Estate Listing Agreement and Employment of Realtor has been endorsed by all

necessary parties.


/s/ Janet M. Meiburger
Janet M. Meiburger

**PARTIES TO RECEIVE COPIES BY MAIL**

      Mr. Stephen Karbelk
      Auction Markets, LLC DBA RealMarkets
      20333 Medalist Drive
      Ashburn, VA 20147

_____
Janet M. Meiburger, Esq. VA Bar No. 31842
The Meiburger Law Firm, P.C.
1493 Chain Bridge Road, Suite 201
McLean, VA 22101
(703) 556-7871
Counsel to Chapter 7 Trustee