John P. Forest, II, VSB# 33089
11350 Random Hills Rd., Suite 700
Fairfax, VA 22030
(703) 691-4940
*Counsel for the Debtor*

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| IN RE 25350 PLEASANT VALLEY LLC | ) Docket Number 23-11983-KHK |
|  | ) Chapter 11 |
| Debtor | ) |
|  | ) |

**FIFTH AMENDED PLAN OF REORGANIZATION**

The Debtor proposes the following Fifth Amended Plan of Reorganization (the "Plan")

pursuant to Chapter 11 of Title 11 of the U.S. Code, 11 U.S.C. § 101 *et seq*. (the "Code"):

**ARTICLE I - DEFINITIONS**

1.01.   "ADM Note" means the means the Confessed Judgment Promissory Note

attached to this Plan as Exhibit B.

1.02.   "Administrative Claim" means a Claim that has been allowed with administrative

priority under § 503 of the Code.

1.03.   "Allowed Claim" means a Claim:

(a)   If no objection to the allowance has been made within any applicable

period of limitation fixed by the Code, the Rules, an order of the Court, or the Plan: (i) in the

amount for which either a proof of claim has been filed with the Court within the applicable

period of limitation fixed by the Rules, or an order of the Court; or (ii) in the amount scheduled

in the list of creditors prepared and filed with the Court pursuant to Fed. R. Bankr. P. 1007(b), as

such may be amended pursuant to Fed. R. Bankr.P. 1009 prior to the Confirmation Date, and not

listed therein as disputed, contingent, or unliquidated.

(b)    If an objection to the allowance thereof has been interposed, within any applicable period of limitation fixed by the Code, the Rules, an order of the Court, or the Plan, in the amount determined by the Court by a Final Order allowing the Claim.

1.04.    "Allowed Secured Claim" means an Allowed Claim that is secured by a lien on property in which the Debtor's estate has an interest, to the extent of the value of such property that is available to such claimant.

1.05.    "Allowed Unsecured Claim" means an Allowed Claim to the extent that it is not an Allowed Secured Claim.

1.06.    "Backstop Guaranty" means the Confessed Judgment Guaranty of Payment attached to this Plan as Exhibit C.

1.07.    "Bar Date" shall mean any date established by the Court or the Clerk by which any person (including any governmental entity) may file a Proof of Claim.

1.08.    "Bayramov Note" means the Confessed Judgment Promissory Note attached to this Plan as Exhibit D.

1.09.    "Business Day" shall mean any weekday which is not a Saturday, Sunday, or day upon which federally chartered banks in Virginia are authorized to be closed.

1.10.    "Chapter 7 Trustee" means Janet Meiburger as Chapter 7 Trustee of the Estate of 25350 Pleasant Valley LLC.

1.11.    "Conversion Order" means the Order entered by the Court on April 17, 2025 re-converting this case to a proceeding under Chapter 11.

1.12.    "Claim" means any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor that existed on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

[2]

undisputed, secured, or unsecured.

1.13.   "Commitment Period" means the ten (10) year period beginning on the Effective Date and concluding ten (10) years thereafter.

1.14.   "Forbearance Agreements" means those agreements by and between the Debtor and Northwest Federal Credit Union ("NWFCU") and MainStreet Bank ("MainStreet"), attached to this Plan as Exhibits 2 and 3, respectively.  The enforceability of the Forbearance Agreements is subject to confirmation of the Debtor's plan of reorganization incorporating the terms of such agreements.

1.15.   "Confirmation Date" means the date upon which the order of confirmation has been both entered by the Court and docketed by the clerk.

1.16.   "Court" means the U.S. Bankruptcy Court for the Eastern District of Virginia.

1.17.   "Creditor" means a person holding a claim.

1.18.   "Dividend" shall mean the proposed dividend to unsecured creditors as expressed in the Budget.

1.19.   "Disputed Claim" shall have the meaning set forth in Article XII of this Plan.

1.20.   "Effective Date" means 30 days from the date upon which the Order of Confirmation of this Plan or any amended plan of reorganization filed by the Debtor is entered by the Court assuming that no appeal from said Order of Confirmation is filed. If there is an appeal, the Effective Date will be 30 days after the date on which all appeals have been withdrawn, dismissed or otherwise completed, or 30 days after any such order becomes dispositive of said appeal and confirming a plan of the Debtor becomes final and subject to no further appeal.

1.21.   "Final Order" means an order of a court as to which any appeal that has been or may be taken has been resolved or as to which the time for appeal, or further appeal, or petition

[3]

for a writ of certiorari, has expired.

1.22.    "Interest Holders" means those Persons who held equity interests in the Debtor, as of the Petition Date.

1.23.    "Halabi/Hamidov Note" means the Confessed Judgment Promissory Note attached to this Plan as Exhibit E.

1.24.    "New Value Contributions" shall mean the contributions by Rovshan Hamidov ("Hamidov") Anthony Halabi ("Halabi"), Elshan Bayramov ("Elshan"), Babak Bayramov ("Babak"), and Auto Deal Makers, LLC ("ADM") reflected in Exhibits A-1 to A-10.[1]

1.25.    "Order of Confirmation" means the order of the Court confirming the Plan.

1.26.    "Person" includes an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision.

1.27.    "Petition Date" means December 6, 2023, the date on which the Debtor filed its voluntary petition for relief under the Code.

1.28.     "Professional Person" means a Person employed as a professional in the Case.

1.29.    "Projections" means the documents attached to this Plan as Exhibits A-1 to A-10.

1.30.    "Reorganized Debtor" means the Debtor following confirmation of the Plan.

1.31.    "Rules" means the Federal Rules of Bankruptcy Procedure, as supplemented and/or modified by the local bankruptcy rules as adopted by the Court as amended.

1.32.    The provisions of 11 U.S.C. §§ 101 and 102 are incorporated into this Article.

## ARTICLE II - DESCRIPTION OF PLAN

The payments and distributions under the Plan will be funded over the 120-month term of

---

[1]  The date and amounts of the component New Value Contributions shall be made by these persons on the dates and in the amounts set forth as "PLAN CONTRIBUTIONS" as set forth on each of Exhibit A-1 through A-10.

[4]

the Plan, from the operations of the Debtor and the New Value Contributions.   The projections of the Debtor as to its income and expenses are set forth in the Projections and identify the estimated payments that will be made to the Creditors through the Commitment Period.  The estimates as to payments to Creditors and Interest Holders are made upon the assumptions as to allowed administrative claims incurred during the course of the Chapter 7 proceedings as set forth in the Projections.  To the extent any ultimately allowed administrative or other claims during the course of the Chapter 7 proceedings are greater than or less than the stated estimates, then the amounts paid to general unsecured creditors will be correspondingly reduced or increased.  The payments to general unsecured creditors will also be reduced by any administrative or other expenses incurred after the Conversion Order.  The payments and distributions to be made under the Plan are supported by the secured and enforceable New Value Contributions.

For the sale of clarity, notwithstanding the fact that the Commitment Period is ten (10) years, the claims of NWFCU and MainStreet must be satisfied in accord with the restrictions set forth in the respective agreements identified and referenced in Section 1.11.

### ARTICLE III - CLASSIFICATION OF CLAIMS AND INTERESTS

3.01.   All Claims, defined under §101(4) of the Code and all interests in equity securities as defined in §101(15) of the Code and are classified as follows:

3.02.   Class 1 consists of Allowed Administrative Claims. Administrative Claims include any post-petition, unpaid bills or charges incurred in the ordinary course of business and the fees and expenses allowed to professionals employed upon Court authority to render services to the Debtor during the course of this case.  Any quarterly fees due to the Office of the U.S. Trustee are administrative fees.  Any fees awarded to the Chapter 7 Trustee and any professional engaged by the Chapter 7 Trustee during the course of the Chapter 7 proceedings are

[5]

administrative fees.  As set forth in the Conversion Order, the right of all parties with claims arising out of the Chapter 7 proceeding are preserved and may be asserted by such parties as (chapter 7) administrative claims.

3.03.   Class 2 consists of any allowed priority tax claims.

3.04.   Class 3 consists of the Allowed Secured Claim of NWFCU which is impaired.

3.05.   Class 4 consists of the Allowed Secured Claim of MainStreet which is impaired.

3.06.   Class 5 consists of the general unsecured claims of Epic at Dulles South Condominium Unit Owner's Association ("Epic").  The Class 5 Claim is impaired.

3.07   Class 6 consists of the general unsecured claims of: (a) the U.S. Small Business Administration (the "SBA"); (b) American Credit Acceptance ("ACA"); (c) Automotive Finance Corporation ("AFC"); and (d) the Bankruptcy Estate of Total Auto Finance, LLC ("TAF").  The Class 6 Claims are impaired.

3.08.   Class 7 consists of the Equity Interest of Elshan and Babak Bayramov ("Babak"). The Class 7 Interests are impaired.

## ARTICLE IV - ADMINISTRATIVE EXPENSES

4.01.   Allowed Administrative Claims [Class 1 Claims] shall be paid in full on the Effective Date, but if such fees have not been approved prior to the Effective Date, then any such fees shall be paid within fourteen (14) days of entry of an order approving such fees.

4.02   John P. Forest, II, and NumberSquad have been engaged and as professionals to represent the Debtor during this bankruptcy case.  Professional fees incurred by the Debtor after the Petition for Relief are administrative claims payable by the Debtor pursuant to the Plan.

4.03   Professional fees and any allowed commissions incurred by the Chapter 7 Trustee and any professionals engaged by the Chapter 7 Trustee are administrative expenses.  To be compensated and paid by the Debtor pursuant to the Plan, all professionals must apply to the

Court for compensation and will be paid the amount which the Court allows.

4.04    Any other person claiming an administrative expense must file an application for approval.

4.05    Janet Meiburger, as Chapter 7 Trustee has filed a fee application and an award of $15,539.92 was made; [*See* Docket Entry 409] and an application for compensation and award of $11,078.35 was made. *See* Docket Entry 408.

4.06    Sadiq Hafiz has filed an application for administrative expenses and has been awarded $20,000. *See* Docket Entry 401.

4.07    All fees owed to the Office of the U.S. Trustee (whether quarterly or otherwise) will be paid until the case is closed, dismissed, or converted.

## ARTICLE V – PRIORITY - CLASS 2

The Class 2 Claims consist of any claims of any creditors whose claims are entitled to priority under the Code.  As of the date of this Plan, there are no known claims entitled to priority under the Code.  However, if there are any allowed priority claims, then the holder(s) of such claim(s) shall, on the first Business Day of the first month after the Effective Date, receive payment on account of such claim(s) from any Dividend available to creditors after the payment of any administrative claims until any pre-petition priority claims have been paid in full.

## ARTICLE VI - SECURED CLAIM - CLASS 3

NWFCU, as holder of Class 3 claim, shall be paid in full under and pursuant to the terms of the Plan and the Forbearance Agreements, incorporated herein, over a period not to exceed 48 months.  The Class 3 Claim shall receive the monthly interest and other payments as and when provided in the Forbearance Agreements and as reflected in the Projections.  The forbearance of NWFCU and any respective rights with regard to the Debtor's real property (the Units) shall be expressly conditioned on and subject to the terms and conditions of the Forbearance Agreement

[7]

and the Debtor's performance of its obligations thereunder.

## ARTICLE VII - SECURED CLAIM - CLASS 4

MainStreet, as holder of Class 4 claim, shall be paid in full under and pursuant to the terms of the Plan and the Forbearance Agreement, incorporated herein, over a period not to exceed 48 months.  The Class 4 Claimants shall receive the monthly interest and other payments as and when provided in the Forbearance Agreement and as reflected in the Projections.  The forbearance of MainStreet of their respective rights with regard to the Debtor's real property (the Units) shall be expressly conditioned on and subject to the terms and conditions of the Forbearance Agreement and the Debtor's performance of its obligations thereunder.

## ARTICLE VIII – GENERAL UNSECURED CLAIM OF EPIC– CLASS 5

8.01.   Epic, as a holder of a Class 5 claim shall receive $15,000 on or about the Effective Date, with the balance of the amount of condominium fees and expenses due as of the Effective Date in accord with its rights flowing from the condominium declaration and the bylaws of the condominium regime in which the Debtor's properties are located.  The funds necessary to make this payment have been deposited into escrow with Epic's counsel, pursuant to a prior order of the Bankruptcy Court.

8.02.   On account of the balance of the arrearage owed to Epic, Epic shall, beginning on the first Business Day of the first month after the Effective Date and continuing thereafter, receive payment on account of such arrearage from any Dividends available to creditors after the payment of any administrative claims.

8.03.   In addition, as reflected in the Projections, Epic shall be paid its regular monthly condominium assessment payment amount for each of the Units.

8.04.   The Claim of Epic is impaired.

[8]

**ARTICLE IX**
**GENERAL UNSECURED CLAIMS OF SBA, ACA, AFC, AND TAF  – CLASS 6**

The holders of Class 6 Claims (the SBA, ACA, AFC, and TAF) shall, on the first Business Day of the first month after the Effective Date, after the Debtor's required payment to the holders of any Classes 2, 3, 4, or 5 Claims, be paid, pro rata, quarterly payments equal to the amounts available to holders of Class 6,Claims, as provided and specified in the Projections through the Commitment Period.  The Class 6 Claims are impaired.

**ARTICLE X – EQUITY INTEREST - CLASS 7**

Class 7 consists of the equity interests held by E. Bayramov and B. Bayramov.  This equity holders will receive no Plan distribution. The Class 7 Interests are impaired.  In exchange for the New Value Contributions, equity in the Reorganized Debtor shall be issued, effective as of the Effective Date, as follows:

- Elshan: 26%

- Babak : 25%

- Hamidov: 24.5%

- Halabi: 24.5%

The New Value Contributions  will be made as described in Article I, Section 1.20. As of the anticipated date of confirmation, approximately $215,000 of the total New Value Contributions will have been deposited into escrow.

**ARTICLE XI – LIQUIDATION ANALYSIS**

While this case was pending pursuant to Chapter 7, owing to the value of the Debtor's properties, the amounts owed to NWFCU on account of its secured claim, the amounts owed to MainStreet on account of its secured claim, and any administrative expenses incurred by the Estate (in the form of statutory fees to the Chapter 7 Trustee, attorney fees incurred by the Chapter 7 Trustee, unpaid condominium fees and other professional and administrative expenses

incurred incident to any attempt to sell the Debtor's real properties, there would be no funds available to constitute a dividend to any general unsecured creditors.  Based upon the Projections, subject only to administrative expenses (including those estimated in the Projections), the Debtor anticipates making payments to general unsecured creditors of approximately $888,100.  Therefore, the Debtor submits that the requirements of 11 U.S.C. § 1129(a)(7) are satisfied.   In comparison to liquidation under Chapter 7, the Plan's structure ensures that the estate's capital base expands monthly through rental income and new-value contributions. The Backstop Guarantee, together with the ADM Note, the Baryanov Note, and the Halabi/Hamidov Note, ensures that the New Value Contributions will be made. The Plan therefore provides a greater return to creditors than liquidation and satisfies the feasibility requirements of 11 U.S.C. § 1129(a)(11).

## ARTICLE XII - PROVISION FOR DISPUTED CLAIMS

Any party may object to the allowance of any Claim within 30 days of the Confirmation Date, by filing an objection with the Court, in which event the Claim objected to will be treated as a Disputed Claim. If a Disputed Claim is finally resolved by allowance of the Claim in whole or in part, the Debtor will make any payment of such Allowed Claim in accordance with the Plan.  No payments shall be made to the holder of any Disputed Claim during the process of resolution or allowance of any Disputed Claim.

## ARTICLE XIII
## ADMINISTRATIVE EXPENSES AND OTHER PRE-PETITION CLAIMS

13.01.  The Debtor will be responsible for the timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). After confirmation, the Debtor will serve the U.S. Trustee with financial reports as long as the case remains open. The monthly financial report shall include the following: a statement of all disbursements made during the course of the month, whether or not

[10]

pursuant to the Plan; a summary, by class, of amounts distributed or property transferred to each recipient under the plan and an explanation of the failure to make any distributions or transfers of property under the Plan; the Debtor's projections as to its continuing ability to comply with the terms of the Plan; a description of any other factors which may materially affect the Debtor's ability to consummate the Plan; and the estimated date when an application for final decree will be filed with the Court or in the case of the final monthly report, the date the decree was filed.

13.02.  All claims for administrative expenses must be filed within thirty (30) days of entry of the Confirmation Order, otherwise such claims shall be deemed waived.

## ARTICLE XIV - CLAIMS AND DISTRIBUTION MATTERS

14.01.  If no objection is filed to a Claim, such Claim shall be deemed an Allowed Claim.

14.02.  Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth in its allowed proof of claim or, if none, at such holder's address set forth in the schedules prepared and filed with the Court, pursuant to F. R. Bankr. P. 1007(b), or at such later address as may be of record with the Clerk of the Court.

14.03.  If distribution is returned from the address applicable under this Article as undeliverable, then such returned distribution shall be held by the Debtor subject to the Allowed Claim of such holder. Such returned distribution shall be distributed as follows: (a) if the Debtor is notified of such holder's then current address or the holder is otherwise found within 90 days after the distribution has been returned as undeliverable, then any returned distributions (without interest) shall be delivered to the holder; but (b) all returned distributions that remain unclaimed more than 90 days after the distribution has been returned as undeliverable shall revert to the Debtor free and clear of the Allowed Claim, provided that Debtor shall make inquiry of the post service if the holder has given the postal service an alternative mailing address.

[11]

14.04.   Notwithstanding any other provision of the Plan specifying a date or time for payment or distribution hereunder, payments in respect of any claim which at such date or time is disputed, unliquidated or contingent shall not be made until such claim becomes an Allowed Claim, whereupon such payment and distribution shall be made promptly in accordance with the Plan, as if no objection had been filed to such claim. If any claim is not allowed on such date, a reserve for such claim shall be established and held until the claim is allowed or disallowed, whereupon the reserve shall be disbursed in accordance with the Order of this Court.

## ARTICLE XV - AMENDMENTS AND WAIVERS

Except as otherwise specifically set forth in the Plan, any term of the Plan may be amended and the observance of any term of the Plan may be waived (either generally or in a particular instance and either retroactively or prospectively) with the consent to such amendment or waiver by the holders of 51% of the amount of Allowed Claims.

## ARTICLE XVI - EXECUTORY CONTRACTS

The leases with ADM and KBL, as amended, are ratified and assumed.  However, the pre-petition lease with Autoline, which has been terminated, is not assumed.[2]  E. Bayramov's Consulting Agreement with ADM, as amended, shall remain in effect post-confirmation, providing the ongoing income source necessary to fund Mr. Bayramov's Plan contributions.

## ARTICLE XVII EFFECT OF CONFIRMATION

17.01.   Upon entry of the Order of Confirmation, the provisions of the Plan bind the Debtor and all Creditors and equity security holders, whether or not the Claim or interest of such Creditor or equity security holder is impaired under the Plan and whether or not such Creditor or equity security holder has accepted the Plan.

17.02.   Upon entry of the Order of Confirmation, each obligor under the ADM Note, Backstop Guaranty, the Bayramov Note, and the Halabi/Hamidov Note shall execute and deliver to counsel for the Debtor, an original instrument.   These instruments shall be held in escrow pending the Effective Date.  After the Effective Date, these instruments shall be released to the Debtor and shall become the valid obligations of each obligor.

17.03.   Confirmation of the Plan vests all of the property of the estate in the Reorganized Debtor, free and clear of all Claims, liens, and interests of Creditors and equity security holders;

---

[2]  The Debtor also intends to file independent motions to assume the leases, as amended, and intends to set a hearing for these motions contemporaneously with any hearing where the Debtor may seek confirmation of this Plan.

provided, however, that any holder of an Allowed Secured Claim shall retain its security interest in any property of the Debtor.

17.04.  No discharge entered by the Court will apply to any of the claims of NWFCU, MainStreet, or the SBA.

17.05.  As to the Claims of all other Creditors and Interest Holders, the Debtor shall be discharged upon completion of the payments required by this Plan.

17.06.  The Reorganized Debtor may seek to have this bankruptcy proceeding closed upon substantial consummation of the Plan, as defined in § 1101(2) of the Code.

## ARTICLE XVIII - RETENTION OF JURISDICTION

18.01.  The Court shall retain jurisdiction in the Case until completion of the Plan to: (a) classify the Claim of any Creditor and re-examine Claims that were allowed for purposes of voting, and to determine such objections as may be filed to the Claims of Creditors. The failure by the Debtor to object to or examine any Claim for purposes of voting, shall not be deemed to be a waiver of the Debtor's right to object to or re-examine a Claim in whole or in part; (b) estimate contingent or unliquidated claims; (c) determine all causes of action, controversies, disputes, and conflicts arising prior to the Effective Date involving either the Debtor or its assets and any other party, including but not limited to any right of the Debtor to recover assets pursuant to the provisions of the Code; (d) determine adversary proceedings arising under the Code seeking to avoid preferences, fraudulent conveyances, sell property, or otherwise to recover money or property for the estate; (e) remedy any defect, to cure any omission, or to reconcile any inconsistency in the Plan or in any order of the Court as may be necessary to carry out the purposes and intent of the Plan; and to interpret and enforce the terms and conditions of the Plan, including any agreement for satisfaction of an Allowed Claim; (f) to enforce any post-petition agreements to which the Debtor is a party; (g) determine the validity, extent, and/or priority of any liens against the Debtor's assets; (h) determine under the Code the amount of any tax, fine, or penalty relating to a tax, or any addition to a tax; (i) fix compensation of Professional Persons and other Administrative Claims; (j) modify the Plan after confirmation as authorized by §§ 1127 and 105 of the Code; (k) to enforce any claims the Debtor may have against any obligor under the instruments providing for New Value Contributions; (l) enter a discharge; and (m) enter a Final Order closing the Case.

18.02.  Except as provided in this Article, the Court's jurisdiction shall terminate as to the Case on the Effective Date.

[13]

## ARTICLE XIX - MISCELLANEOUS

19.01.  All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile, or mailed by registered or certified mail with return receipt requested as follows: (a) if to the Debtor, then to John P. Forest, II, 11350 Random Hills Road, Suite 700, Fairfax, VA 22030; (b) if to a holder of an Allowed Claim, then at the address set forth in its allowed proof of claim or, if none, at such holder's address set forth in the schedules prepared and filed with the Court pursuant to Fed R. Bankr. P. 1007(b); and (c) notice shall be deemed given when received. Any Person may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this section to the Person to be charged with the knowledge of such change.

19.02.  The Debtor reserves the right to revoke and withdraw the Plan prior to entry of an Order of Confirmation. If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceeding involving the Debtor.

19.03.  Neither the filing of the Plan, nor any statement or provision herein, nor the taking by any Creditor of any action with respect to the Plan shall (a) be or be deemed to be an admission against interest; and (b) until the Confirmation Date, be or be deemed to be a waiver of any rights which any Creditor may have against either the Debtor, its property, or any other Creditor of the Debtor; and until the Confirmation Date all such rights are specifically reserved.

19.04.  All administrative claims must be filed within 30 days of the Effective Date.

19.05.  In the event an objection is filed to any claim, no distributions shall be made on account of such claim until such claim becomes an Allowed Claim.

19.06.  The headings of any Articles or Sections of this Plan are for informational purposes only and shall not be used as a guide to interpret the text of any Article or Section of this Plan.

19.07.  To the extent any deadline to perform an action falls on a day which is not a Business Day, the deadline for performance shall be extended to the next day which is not a Business Day.

19.08.  In the event of any conflict between any information appearing in an Exhibit and any information appearing in the text of this Plan, the information in the Exhibit shall control.

19.09.  In the event of any default under the Backstop Guarantee or any Confessed Judgment Promissory Note, 25350 Pleasant Valley LLC shall have the immediate right to enforce

[14]

collection and apply such proceeds toward the funding obligations described in this Plan.

Respectfully submitted by:

/s/ John P. Forest, II
John P. Forest, II, VSB# 33089
11350 Random Hills Rd., Suite 700
Fairfax, VA 22030
Telephone: (703) 691-4940
Email: john@forestlawfirm.com
*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I certify that on January 16, 2026, I have electronically filed this FIFTH AMENDED PLAN

OF REORGANIZATION with the Clerk of the Court which provides electronic notice of such filing

to all parties who receive notices in this matter.

/s/ John P. Forest, II
John P. Forest, II

# EXHIBITS A-1 TO A-10
# FOLLOW THIS PAGE

## Exhibit A-1 – Budget Summary (March 2026 – February 2027)

### 1. Contributions and Funding

For FY 2026 – 2027, **ADM LLC** and **KBL LLC** each contribute **$150,000** in annual rent under amended lease agreements, for a combined **$300,000 in rental income**.
Plan contributors provide additional new-value funding as follows:

- **Rovshan Hamidov:** $ 77,500

- **Anthony Halabi:** $ 77,500

- **Elshan Bayramov (Manager / Consultant):** $ 160,000
  **Total new-value plan funding: $ 315,000**

### 2. Operating Revenues and Expenses

- **Total Rental Income:** $ 300,000 (ADM LLC & KBL LLC)

- **Total Operating Expenses:** $ 66,000 (including property taxes, condominium fees, and administrative costs)

- **Net Cash from Operations:** ≈ $ 234,000 (before plan payments)

### 3. Payments to Claimants

Total projected plan payments for the period equal **$ 530,027**, allocated as follows:

- **Chapter 7 Trustee (Janet Meiburger):** $ 26,617

- **U.S. SBA EIDL Loan (Secured by UCC):** $ 4,260

- **Condo Fees – Catch-Up (Accrued Pre-Ch. 11 Conversion):** $ 77,500

- **Sadiq Hafiz (Buyer) Refund (App/DD):** $ 20,000

- **Condo Assoc. Legal Expense (Per Agreement with Counsel):** $ 10,000

- **Unsecured Creditors – ACA & AFC:** $ 60,000

- **NWFCU Loan Payment (Debt Service):** $ 90,000

- **MSB Loan Payment (Debt Service):** $ 220,150

- **John Forest Legal Admin Fees (Chapter 11):** $ 21,500

### 4. Cash Position

The period opens with a **cash balance of $ 12,500** and closes with a **cash balance of $ 31,473**, reflecting a net increase of approximately **$ 18,973** and demonstrating steady liquidity throughout the plan term.

## EXHIBIT A-1

### March 2026- Feb 2027

| | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | Feb-27 | TOTAL FOR Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RENTAL INCOME / CONTRIBUTIONS** | | | | | | | | | | | | | |
| ADM LLC Rent (Lease Amend.) | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $150,000 |
| KBL LLC Rent (Lease Amend.) | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $150,000 |
| **TOT. RENT REC.** | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | |
| | | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | | |
| Prop.Tax - Loudoun Co. | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | |
| General Admin Expenses | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | |
| Condo Fees Mo. Budg. / Pd. Qtrly. | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | |
| **TOTAL EXPENSES** | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | |
| | | | | | | | | | | | | | |
| **PROJ. NET CF OPS.** | $ 19,500 | $ 19,500 | $ 19,500 | $ 19,500 | $ 19,500 | $ 19,500 | $ 19,500 | $ 19,500 | $ 19,500 | $ 19,500 | $ 19,500 | $ 19,500 | |
| | | | | | | | | | | | | | |
| **PLAN CONTRIBUTIONS** | | | | | | | | | | | | | |
| **R. Hamidov (ADM 50%) - ADM ESCROW** | $ 50,000 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 77,500 |
| **A. Halabi (ADM 50%) _ ADM ESCROW** | $ 50,000 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 77,500 |
| **E. Bayramov – Mgr. 25350 PLV & ADM Consult. - ADM ESCROW** | $ 105,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $160,000 |
| | | | | | | | | | | | | | $315,000 |
| | | | | | | | | | | | | | |
| **CASH BALANCE ROLLFORWARD** | | | | | | | | | | | | | |
| Beg. Cash Bal./Acct. 25350 PLV | $ 12,500 | $ 37,028 | $ 36,523 | $ 36,018 | $ 35,513 | $ 35,008 | $ 34,503 | $ 33,998 | $ 33,493 | $ 32,988 | $ 32,483 | $ 31,978 | |
| Proj. Plan Funding / Net CF + Contrib. | $ 224,500 | $ 29,500 | $ 29,500 | $ 29,500 | $ 29,500 | $ 29,500 | $ 29,500 | $ 29,500 | $ 29,500 | $ 29,500 | $ 29,500 | $ 29,500 | |
| Total plan payments | $ 199,972 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | |
| **CASH ENDING BALANCE** | $ 37,028 | $ 36,523 | $ 36,018 | $ 35,513 | $ 35,008 | $ 34,503 | $ 33,998 | $ 33,493 | $ 32,988 | $ 32,483 | $ 31,978 | $ 31,473 | |
| | | | | | | | | | | | | | |
| **PROJ. PMTS. TO CLAIMANTS** | | | | | | | | | | | | | |
| **Chapter 7 Trustee Janet Meiburger - Trustee** | $ 26,617 | | | | | | | | | | | | $ 26,617 |
| **Class 3 U.S. SBA EIDL LOAN  ( Secured by-UCC)** | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 4,260 |
| **SALES BROKER EXPENSE/ ALLOWANCE** | $ - | | | | | | | | | | | | |
| **Condo Fees – Catch-Up (Accrued Pre-Ch.11 Conversion)** | $ 77,500 | | | | | | | | | | | | $ 77,500 |
| **Sadiq Hafiz (Buyer)  Refund (App/DD)** | $ 20,000 | | | | | | | | | | | | $ 20,000 |
| **Condo Assoc. Legal Exp. (per agreement with Counsels)** | $ 10,000 | | | | | | | | | | | | $ 10,000 |
| **UNSECURED CREDITORS PAYMENTS - AFC+ ACA** | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $ 60,000 |
| **NWFCU Loan Payment - debt service** | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 90,000 |
| **MSB Loan Loan Payment - debt service** | $ 31,500 | $ 17,150 | $ 17,150 | $ 17,150 | $ 17,150 | $ 17,150 | $ 17,150 | $ 17,150 | $ 17,150 | $ 17,150 | $ 17,150 | $ 17,150 | $220,150 |
| **John Forest Legal Admin Fees for Chapter 11 Case** | $ 21,500 | | | | | | | | | | | | $ 21,500 |
| **TOTAL PLAN PAYMENTS** | $ 199,972 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | $ 30,005 | |

## Exhibit A-2 – Budget Summary (March 2027 – February 2028)

**1. Contributions and Funding**

During FY 2027 – 2028, ADM LLC principals **Rovshan Hamidov** and **Anthony Halabi** each contribute **$36,000**, and **Elshan Bayramov**, serving as both manager and principal of the Debtor and consultant to ADM LLC, contributes **$60,000**.
**Total new-value funding: $132,000.**

**2. Operating Revenues and Expenses**

- **Total Rental Income:** $300,000 (ADM LLC & KBL LLC)

- **Total Operating Expenses:** $62,844 (including property taxes and condominium fees)

- **Net Cash from Operations:** ≈ $237,000 before plan payments

**3. Payments to Claimants**

Total projected plan payments for the period: **$369,060**, allocated as follows:

- **U.S. SBA EIDL Loan (Secured by UCC):** $4,260

- **Unsecured Creditors (ACA & AFC):** $60,000

- **NWFCU Loan Payment – Debt Service:** $90,000

- **MSB Loan Payment – Debt Service:** $205,800

- **Total Plan Payments:** $369,060

**4. Cash Position**

The period begins with a cash balance of **$31,473** and closes with a steady cash ending balance of approximately **$28,800**, reflecting stable operations and consistent plan performance.

| | EXHIBIT A-2 | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **March 2027- Feb 2028** | | | | | | | | | | | | TOTAL FOR Period |
| **RENTAL INCOME / CONTRIBUTIONS** | **Mar-27** | **Apr-27** | **May-27** | **Jun-27** | **Jul-27** | **Aug-27** | **Sep-27** | **Oct-27** | **Nov-27** | **Dec-27** | **Jan-28** | **Feb-28** | |
| ADM LLC Rent (Lease Amend.) | $ 12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $150,000 |
| KBL LLC Rent (Lease Amend.) | 12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $150,000 |
| **TOT. RENT REC.** | $ 25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | |
| | | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | | |
| Prop.Tax - Loudoun Co. | $ 2,550 | $ 2,550 | $ 2,550 | $ 2,550 | $ 2,550 | $ 2,550 | $ 2,550 | $ 2,550 | $ 2,550 | $ 2,550 | $ 2,550 | $ 2,550 | |
| Geenral Admin Fees | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | |
| Condo Fees Mo. Budg. / Pd. Qtrly. | $ 2,687 | $ 2,687 | $ 2,687 | $ 2,687 | $ 2,687 | $ 2,687 | $ 2,687 | $ 2,687 | $ 2,687 | $ 2,687 | $ 2,687 | $ 2,687 | |
| **TOTAL EXPENSES** | $ 5,837 | $ 5,837 | $ 5,837 | $ 5,837 | $ 5,837 | $ 5,837 | $ 5,837 | $ 5,837 | $ 5,837 | $ 5,837 | $ 5,837 | $ 5,837 | |
| | | | | | | | | | | | | | |
| **PROJ. NET CF OPS.** | $ 19,163 | $19,163 | $19,163 | $19,163 | $19,163 | $19,163 | $19,163 | $19,163 | $19,163 | $19,163 | $19,163 | $19,163 | |
| | | | | | | | | | | | | | |
| **PLAN CONTRIBUTIONS** | | | | | | | | | | | | | |
| **R. Hamidov (ADM 50%) -** | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 36,000 |
| **A. Halabi (ADM 50%) _** | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 36,000 |
| E. Bayramov – Mgr. 25350 PLV & ADM Consult. - | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 60,000 |
| | | | | | | | | | | | | | $ 132,000 |
| **CASH BALANCE ROLLFORWARD** | | | | | | | | | | | | | |
| Beg. Cash Bal./Acct. 25350 PLV | $ 31,473 | $31,631 | $ 31,789 | $ 31,947 | $32,105 | $32,263 | $ 32,421 | $ 32,579 | $32,737 | $ 32,895 | $ 33,053 | $ 33,211 | |
| Proj. Plan Funding / Net CF + Contrib. | $ 30,163 | $30,163 | $ 30,163 | $ 30,163 | $30,163 | $30,163 | $ 30,163 | $ 30,163 | $30,163 | $ 30,163 | $ 30,163 | $ 30,163 | |
| Total plan payments | $ 30,005 | $30,005 | $ 30,005 | $ 30,005 | $30,005 | $30,005 | $ 30,005 | $ 30,005 | $30,005 | $ 30,005 | $ 30,005 | $ 30,005 | |
| **CASH ENDING BALANCE** | $ 31,631 | $31,789 | $ 31,947 | $ 32,105 | $32,263 | $32,421 | $ 32,579 | $ 32,737 | $32,895 | $ 33,053 | $ 33,211 | $ 33,369 | |
| | | | | | | | | | | | | | |
| **PROJ. PMTS. TO CLAIMANTS** | | | | | | | | | | | | | |
| Class 3 U.S. SBA EIDL LOAN  ( Secured by-UCC) | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 4,260 |
| **UNSECURED CREDITORS PAYMENTS - AFC & ACA** | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | $ 60,000 |
| **NWFCU Loan Payment - debt service** | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 90,000 |
| **MSB Loan Loan Payment - debt service** | $ 17,150 | $17,150 | $ 17,150 | $ 17,150 | $17,150 | $17,150 | $ 17,150 | $ 17,150 | $17,150 | $ 17,150 | $ 17,150 | $ 17,150 | $205,800 |
| **TOTAL PLAN PAYMENTS** | $ 30,005 | $30,005 | $ 30,005 | $ 30,005 | $30,005 | $30,005 | $ 30,005 | $ 30,005 | $30,005 | $ 30,005 | $ 30,005 | $ 30,005 | |

1

**Exhibit A-3 – Budget Summary (March 2028 – February 2029)**

**1. Contributions and Funding**

Beginning FY 2028 – 2029, the lease rent escalates to **$13,791 per month** for each tenant (**ADM LLC** and **KBL LLC**), for a combined annual rental income of **$330,984**.
Plan participants contribute new-value funding as follows:

- **Rovshan Hamidov:** $30,000

- **Anthony Halabi:** $30,000

- **Elshan Bayramov (Manager / Consultant):** $48,000
  **Total new-value funding: $108,000**

**2. Operating Revenues and Expenses**

- **Total Rental Income:** $330,984 (ADM LLC & KBL LLC)

- **Total Operating Expenses:** $72,048 (including property taxes and condo fees)

- **Net Cash from Operations:** ≈ $258,900 before plan payments

**3. Payments to Claimants**

Total projected plan payments for this period: **$390,060**, allocated as follows:

- **U.S. SBA EIDL Loan (Secured by UCC):** $4,260

- **Unsecured Creditors – ACA & AFC:** $90,000

- **NWFCU Loan Payment – Debt Service:** $90,000

- **MSB Loan Payment – Debt Service:** $205,800

- **Total Plan Payments:** $390,060

**4. Cash Position**

The period opens with a cash balance of **$33,369** and closes with a cash balance of **$10,245**, reflecting planned distributions and steady liquidity after rent escalation and creditor payments.

**EXHIBIT A-3**

**March 2028- Feb 2029**

| | Mar-28 | Apr-28 | May-28 | Jun-28 | Jul-28 | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 | Jan-29 | Feb-29 | TOTAL FOR Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RENTAL INCOME / CONTRIBUTIONS** | | | | | | | | | | | | | |
| ADM LLC Rent (Lease Amend.) | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $165,492 |
| KBL LLC Rent (Lease Amend.) | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $13,791 | $165,492 |
| TOT. RENT REC. | $27,582 | $27,582 | $27,582 | $27,582 | $27,582 | $27,582 | $27,582 | $27,582 | $27,582 | $27,582 | $27,582 | $27,582 | |
| **EXPENSES** | | | | | | | | | | | | | |
| Prop. Tax - Loudoun Co. | $2,625 | $2,625 | $2,625 | $2,625 | $2,625 | $2,625 | $2,625 | $2,625 | $2,625 | $2,625 | $2,625 | $2,625 | |
| General Admin Expenses | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | |
| Condo Fees Mo. Budg. / Pd. Qtrly. | $2,779 | $2,779 | $2,779 | $2,779 | $2,779 | $2,779 | $2,779 | $2,779 | $2,779 | $2,779 | $2,779 | $2,779 | |
| E. Bayramov – Mgr. 25350 PLV & ADM Consult. | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $48,000 |
| TOTAL EXPENSES | $6,004 | $6,004 | $6,004 | $6,004 | $6,004 | $6,004 | $6,004 | $6,004 | $6,004 | $6,004 | $6,004 | $6,004 | |
| PROJ. NET CF OPS. | $21,578 | $21,578 | $21,578 | $21,578 | $21,578 | $21,578 | $21,578 | $21,578 | $21,578 | $21,578 | $21,578 | $21,578 | |
| **PLAN CONTRIBUTIONS** | | | | | | | | | | | | | $108,000 |
| R. Hamidov (ADM 50%) - | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $30,000 |
| A. Halabi (ADM 50%) | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $30,000 |
| **CASH BALANCE ROLLFORWARD** | | | | | | | | | | | | | |
| Beg. Cash Bal./Acct. 25350 PLV | 33,369 | 31,442 | 29,515 | 27,588 | 25,661 | 23,734 | 21,807 | 19,880 | 17,953 | 16,026 | 14,099 | 12,172 | |
| Proj. Plan Funding / Net CF + Contrib. | 30,578 | 30,578 | 30,578 | 30,578 | 30,578 | 30,578 | 30,578 | 30,578 | 30,578 | 30,578 | 30,578 | 30,578 | |
| Total plan payments | 32,505 | 32,505 | 32,505 | 32,505 | 32,505 | 32,505 | 32,505 | 32,505 | 32,505 | 32,505 | 32,505 | 32,505 | |
| CASH ENDING BALANCE | 31,442 | 29,515 | 27,588 | 25,661 | 23,734 | 21,807 | 19,880 | 17,953 | 16,026 | 14,099 | 12,172 | 10,245 | |
| **PROJ. PMTS. TO CLAIMANTS** | | | | | | | | | | | | | |
| Class 3 U.S. SBA EIDL LOAN ( Secured by UCC) | $355 | $355 | $355 | $355 | $355 | $355 | $355 | $355 | $355 | $355 | $355 | $355 | $4,260 |
| UNSECURED CREDITORS PAYMENTS - AFC & ACA | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $90,000 |
| NWFCU Loan Payment - debt service | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $7,500 | $90,000 |
| MSB Loan Loan Payment - debt service | $17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $205,800 |
| TOTAL PLAN PAYMENTS | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | |

## Exhibit A-4 – Budget Summary (March 2029 – February 2030)

### 1. Contributions and Funding

During FY 2029 – 2030, lease payments increase to **$14,108 per month** for each tenant (**ADM LLC** and **KBL LLC**), producing combined annual rental income of **$338,592**.
Plan contributors provide the following additional new-value funding:

- **Rovshan Hamidov:** $36,000

- **Anthony Halabi:** $36,000

- **Elshan Bayramov (Manager / Consultant):** $60,000
  **Total new-value plan funding: $132,000**

### 2. Operating Revenues and Expenses

- **Total Rental Income:** $338,592 (ADM LLC & KBL LLC)

- **Total Operating Expenses:** $75,840 (including property taxes and condominium fees)

- **Net Cash from Operations:** ≈ $262,752 (before plan payments)

### 3. Payments to Claimants

Total projected plan payments for the period equal **$390,060**, allocated as follows:

- **U.S. SBA EIDL Loan (Secured by UCC):** $4,260

- **Unsecured Creditors – ACA & AFC:** $90,000

- **NWFCU Loan Payment – Debt Service:** $90,000

- **MSB Loan Payment – Debt Service:** $205,800

- **Total Plan Payments:** $390,060

### 4. Cash Position

The period begins with a cash balance of **$10,245** and closes with a cash balance of **$14,937**, reflecting gradual growth from rent escalation and steady plan performance.

| | | | EXHIBIT A - 4 | | | | | | | | | | TOTAL FOR Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | **March 2029- Feb 2030** | | | | | | | | | | | | |
| **RENTAL INCOME / CONTRIBUTIONS** | | **Mar-29** | **Apr-29** | **May-29** | **Jun-29** | **Jul-29** | **Aug-29** | **Sep-29** | **Oct-29** | **Nov-29** | **Dec-29** | **Jan-30** | **Feb-30** | |
| ADM LLC Rent (Lease Amend.) | $ | 14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $169,296 |
| KBL LLC Rent (Lease Amend.) | $ | 14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $14,108 | $169,296 |
| **TOT. RENT REC.** | $ | 28,216 | $28,216 | $28,216 | $28,216 | $28,216 | $28,216 | $28,216 | $28,216 | $28,216 | $28,216 | $28,216 | $28,216 | |
| | | | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | | | |
| Prop.Tax - Loudoun Co. | $ | 2,675 | $ 2,675 | $ 2,675 | $ 2,675 | $ 2,675 | $ 2,675 | $ 2,675 | $ 2,675 | $ 2,675 | $ 2,675 | $ 2,675 | $ 2,675 | |
| General Expenses | $ | 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | |
| Condo Fees Mo. Budg. / Pd. Qtrly. | $ | 2,895 | $ 2,895 | $ 2,895 | $ 2,895 | $ 2,895 | $ 2,895 | $ 2,895 | $ 2,895 | $ 2,895 | $ 2,895 | $ 2,895 | $ 2,895 | |
| **TOTAL EXPENSES** | $ | 6,320 | $ 6,320 | $ 6,320 | $ 6,320 | $ 6,320 | $ 6,320 | $ 6,320 | $ 6,320 | $ 6,320 | $ 6,320 | $ 6,320 | $ 6,320 | |
| | | | | | | | | | | | | | | |
| **PROJ. NET CF OPS.** | $ | 21,896 | $21,896 | $21,896 | $21,896 | $21,896 | $21,896 | $21,896 | $21,896 | $21,896 | $21,896 | $21,896 | $21,896 | |
| | | | | | | | | | | | | | | |
| **PLAN CONTRIBUTIONS** | | | | | | | | | | | | | | |
| **R. Hamidov (ADM 50%)** | $ | 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 36,000 |
| **A. Halabi (ADM 50%)** | $ | 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 36,000 |
| E. Bayramov – Mgr. 25350 PLV & ADM Consult. | $ | 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 60,000 |
| | | | | | | | | | | | | | | $132,000 |
| | | | | | | | | | | | | | | |
| **CASH BALANCE ROLLFORWARD** | | | | | | | | | | | | | | |
| Beg. Cash Bal./Acct. 25350 PLV | $ | 10,245 | $10,636 | $11,027 | $11,418 | $11,809 | $12,200 | $12,591 | $12,982 | $13,373 | $13,764 | $14,155 | $14,546 | |
| Proj. Plan Funding / Net CF + Contrib. | $ | 32,896 | $32,896 | $32,896 | $32,896 | $32,896 | $32,896 | $32,896 | $32,896 | $32,896 | $32,896 | $32,896 | $32,896 | |
| Total plan payments | $ | 32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | |
| **CASH ENDING BALANCE** | $ | 10,636 | $11,027 | $11,418 | $11,809 | $12,200 | $12,591 | $12,982 | $13,373 | $13,764 | $14,155 | $14,546 | $14,937 | |
| | | | | | | | | | | | | | | |
| **PROJ. PMTS. TO CLAIMANTS** | | | | | | | | | | | | | | |
| **Class 3 U.S. SBA EIDL LOAN ( Secured by-UCC)** | $ | 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 4,260 |
| **UNSECURED CREDITORS PAYMENTS - AFC & ACA** | $ | 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 90,000 |
| **NWFCU Loan Payment - debt service** | $ | 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 | $ 90,000 |
| **MSB Loan Loan Payment - debt service** | $ | 17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $17,150 | $205,800 |
| **TOTAL PLAN PAYMENTS** | $ | 32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | $32,505 | |

**Exhibit A-5 – Budget Summary (March 2030 – February 2031)**

**1. Contributions and Funding**

At the start of FY 2030 – 2031, all existing **NWFCU and MSB** obligations are fully refinanced under a new consolidated bank facility.
ADM LLC contributes an additional **$200,000 corporate infusion** to strengthen cash reserves and support the transition.
Plan contributors provide the following continuing new-value funding:

- **Rovshan Hamidov:** $30,000

- **Anthony Halabi:** $30,000

- **Elshan Bayramov (Manager / Consultant):** $48,000
  **Total new-value funding: $108,000 + $200,000 corporate infusion = $308,000.**

**2. Operating Revenues and Expenses**

- **Total Rental Income:** $348,744 (ADM LLC & KBL LLC at $14,531 per month each)

- **Total Operating Expenses:** $76,440 (including property taxes and condo fees)

- **Net Cash from Operations:** ≈ $272,300 (before plan payments)

**3. Payments to Claimants**

Total projected plan payments for the period equal **$584,100**, distributed as follows:

- **U.S. SBA EIDL Loan (Secured by UCC):** $4,260

- **Unsecured Creditors – ACA & AFC:** $232,500

- **New Bank Financing (Replacement for NWFCU + MSB):** $347,340

- **Total Plan Payments:** $584,100

**4. Cash Position**

The period begins with a cash balance of **$14,937** and ends with a cash balance of **$10,721**, reflecting steady servicing of refinanced debt and consistent rental cash flow throughout the plan year.

| | EXHIBIT A-5 | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **March 2030- Feb 2031** | | | | | | | | | | | | **TOTAL FOR Period** |
| **RENTAL INCOME / CONTRIBUTIONS** | **Mar-30** | **Apr-30** | **May-30** | **Jun-30** | **Jul-30** | **Aug-30** | **Sep-30** | **Oct-30** | **Nov-30** | **Dec-30** | **Jan-31** | **Feb-31** | |
| ADM LLC Rent (Lease Amend.) | $ 14,531 | $14,531 | $14,531 | $ 14,531 | $ 14,531 | $ 14,531 | $ 14,531 | $ 14,531 | $ 14,531 | $ 14,531 | $ 14,531 | $ 14,531 | $ 174,372 |
| KBL LLC Rent (Lease Amend.) | $ 14,531 | $14,531 | $14,531 | $ 14,531 | $ 14,531 | $ 14,531 | $ 14,531 | $ 14,531 | $ 14,531 | $ 14,531 | $ 14,531 | $ 14,531 | $ 174,372 |
| **TOT. RENT REC.** | $ 29,062 | $29,062 | $29,062 | $ 29,062 | $ 29,062 | $ 29,062 | $ 29,062 | $ 29,062 | $ 29,062 | $ 29,062 | $ 29,062 | $ 29,062 | |
| | | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | | |
| Prop.Tax - Loudoun Co. | $ 2,725 | $ 2,725 | $ 2,725 | $ 2,725 | $ 2,725 | $ 2,725 | $ 2,725 | $ 2,725 | $ 2,725 | $ 2,725 | $ 2,725 | $ 2,725 | |
| General Admin Expenses | $ 650 | $ 650 | $ 650 | $ 650 | $ 650 | $ 650 | $ 650 | $ 650 | $ 650 | $ 650 | $ 650 | $ 650 | |
| Condo Fees Mo. Budg. / Pd. Qtrly. | $ 2,995 | $ 2,995 | $ 2,995 | $ 2,995 | $ 2,995 | $ 2,995 | $ 2,995 | $ 2,995 | $ 2,995 | $ 2,995 | $ 2,995 | $ 2,995 | |
| **TOTAL EXPENSES** | $ 6,370 | $ 6,370 | $ 6,370 | $ 6,370 | $ 6,370 | $ 6,370 | $ 6,370 | $ 6,370 | $ 6,370 | $ 6,370 | $ 6,370 | $ 6,370 | |
| | | | | | | | | | | | | | |
| **PROJ. NET CF OPS.** | $ 22,692 | $22,692 | $22,692 | $ 22,692 | $ 22,692 | $ 22,692 | $ 22,692 | $ 22,692 | $ 22,692 | $ 22,692 | $ 22,692 | $ 22,692 | |
| | | | | | | | | | | | | | |
| **PLAN CONTRIBUTIONS** | | | | | | | | | | | | | |
| **R. Hamidov (ADM 50%) -** | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 30,000 |
| **A. Halabi (ADM 50%) _** | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 30,000 |
| E. Bayramov – Mgr. 25350 PLV & ADM Consult. - | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 48,000 |
| | | | | | | | | | | | | | $ 108,000 |
| ADM LLC CORPORATE INFUSION | $ 200,000 | | | | | | | | | | | | $200,000.00 |
| | | | | | | | | | | | | | $ 308,000 |
| **CASH BALANCE ROLLFORWARD** | | | | | | | | | | | | | |
| Beg. Cash Bal./Acct. 25350 PLV | $ 14,937 | $ 67,294 | $ 62,151 | $ 57,008 | $ 51,865 | $ 46,722 | $ 41,579 | $ 36,436 | $ 31,293 | $ 26,150 | $ 21,007 | $ 15,864 | |
| Proj. Plan Funding / Net CF + Contrib. | $ 231,692 | $31,692 | $31,692 | $ 31,692 | $ 31,692 | $ 31,692 | $ 31,692 | $ 31,692 | $ 31,692 | $ 31,692 | $ 31,692 | $ 31,692 | |
| Total plan payments | $ 179,335 | $36,835 | $36,835 | $ 36,835 | $ 36,835 | $ 36,835 | $ 36,835 | $ 36,835 | $ 36,835 | $ 36,835 | $ 36,835 | $ 36,835 | |
| **CASH ENDING BALANCE** | $ 67,294 | $62,151 | $57,008 | $ 51,865 | $ 46,722 | $ 41,579 | $ 36,436 | $ 31,293 | $ 26,150 | $ 21,007 | $ 15,864 | $ 10,721 | |
| | | | | | | | | | | | | | |
| **PROJ. PMTS. TO CLAIMANTS** | | | | | | | | | | | | | |
| **Class 3 U.S. SBA EIDL LOAN ( Secured by-UCC)** | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 4,260 |
| **UNSECURED CREDITORS PAYMENTS - AFC & ACA** | $150000.00 | 7500 | 7500 | 7500 | 7500 | 7500 | 7500 | 7500 | 7500 | 7500 | 7500 | 7500 | $ 232,500 |
| **NEW BANK FINANCING _ REPLACING NWFCU+MSB** | $ 28,980 | $28,980 | $28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 347,760 |
| **TOTAL PLAN PAYMENTS** | $ 179,335 | $36,835 | $36,835 | $ 36,835 | $ 36,835 | $ 36,835 | $ 36,835 | $ 36,835 | $ 36,835 | $ 36,835 | $ 36,835 | $ 36,835 | |

## Exhibit A-6 – Budget Summary (March 2031 – February 2032)

### 1. Contributions and Funding

For fiscal year 2031 – 2032, ADM LLC and KBL LLC each contribute **$14,966 per month** in lease payments, providing total annual rental income of **$359,184**.
Plan participants continue new-value contributions as follows:

- **Rovshan Hamidov (50%)** – $30,000

- **Anthony Halabi (50%)** – $30,000

- **Elshan Bayramov (Manager / Consultant)** – $48,000
  **Total new-value funding: $108,000**

### 2. Operating Revenues and Expenses

- **Total Rental Income:** $359,184 (ADM LLC & KBL LLC)

- **Total Operating Expenses:** $78,000 (Property tax $2,850 + G&A $500 + Condo fees $3,150 per month)

- **Net Cash from Operations:** ≈ $281,000 before plan payments

### 3. Payments to Claimants

Total projected plan payments for this period are **$397,020**, allocated as follows:

- **U.S. SBA EIDL Loan (Secured by UCC):** $4,260 ($355 × 12)

- **Unsecured Creditors – ACA & AFC:** $45,000 ($3,750 × 12)

- **New Bank Refinancing (Replacing MSB + NWFCU):** $347,760 ($28,980 × 12)
  **Total Plan Payments:** $397,020 ($33,085 × 12)

### 4. Cash Position

The period opens with a **cash balance of $10,721** and closes with a **cash balance of $2,885**, reflecting full servicing of obligations under the refinanced facility and stable liquidity.

**EXHIBIT A-6**

**March 2031– Feb 2032**

| | Mar-31 | Apr-31 | May-31 | Jun-31 | Jul-31 | Aug-31 | Sep-31 | Oct-31 | Nov-31 | Dec-31 | Jan-32 | Feb-32 | TOTAL FOR Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RENTAL INCOME / CONTRIBUTIONS** | | | | | | | | | | | | | |
| ADM LLC Rent (Lease Amend.) | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 179,592 |
| KBL LLC Rent (Lease Amend.) | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 14,966 | $ 179,592 |
| **TOT. RENT REC.** | $ 29,932 | $ 29,932 | $ 29,932 | $ 29,932 | $ 29,932 | $ 29,932 | $ 29,932 | $ 29,932 | $ 29,932 | $ 29,932 | $ 29,932 | $ 29,932 | |
| **EXPENSES** | | | | | | | | | | | | | |
| Prop. Tax - Loudoun Co. | $ 2,850 | $ 2,850 | $ 2,850 | $ 2,850 | $ 2,850 | $ 2,850 | $ 2,850 | $ 2,850 | $ 2,850 | $ 2,850 | $ 2,850 | $ 2,850 | |
| General Admin Expenses | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | |
| Condo Fees Mo. Budg. / Pd Qrtly. | $ 3,150 | $ 3,150 | $ 3,150 | $ 3,150 | $ 3,150 | $ 3,150 | $ 3,150 | $ 3,150 | $ 3,150 | $ 3,150 | $ 3,150 | $ 3,150 | |
| **TOTAL EXPENSES** | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | |
| **PROJ. NET CF OPS.** | $ 23,432 | $ 23,432 | $ 23,432 | $ 23,432 | $ 23,432 | $ 23,432 | $ 23,432 | $ 23,432 | $ 23,432 | $ 23,432 | $ 23,432 | $ 23,432 | |
| **PLAN CONTRIBUTIONS** | | | | | | | | | | | | | |
| R. Hamidov (ADM 50%) - | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 30,000 |
| A. Halabi (ADM 50%) | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 30,000 |
| E. Bayramov – Mgr. 25350 PLV & ADM Consult. - | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 48,000 |
| | $ - | | | | | | | | | | | | |
| **CASH BALANCE ROLLFORWARD** | | | | | | | | | | | | | |
| Beg. Cash Bal./Acct. 25350 PLV | $ 10,721 | $ 10,068 | $ 9,415 | $ 8,762 | $ 8,109 | $ 7,456 | $ 6,803 | $ 6,150 | $ 5,497 | $ 4,844 | $ 4,191 | $ 3,538 | |
| Proj. Plan Funding / Net CF + Contrib. | $ 32,432 | $ 32,432 | $ 32,432 | $ 32,432 | $ 32,432 | $ 32,432 | $ 32,432 | $ 32,432 | $ 32,432 | $ 32,432 | $ 32,432 | $ 32,432 | |
| Total plan payments | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | |
| **CASH ENDING BALANCE** | $ 10,068 | $ 9,415 | $ 8,762 | $ 8,109 | $ 7,456 | $ 6,803 | $ 6,150 | $ 5,497 | $ 4,844 | $ 4,191 | $ 3,538 | $ 2,885 | |
| | | | | | | | | | | | | | $ 108,000 |
| | | | | | | | | | | | | | $ 108,000 |
| **PROJ. PMTS. TO CLAIMANTS** | | | | | | | | | | | | | |
| Class 3 U.S. SBA EIDL LOAN ( Secured by-UCC) | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 4,260 |
| UNSECURED CREDITORS PAYMENTS - AFC & ACA | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $ 45,000 |
| NEW BANK REFINANCED MSB AND NWFCU | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 347,760 |
| **TOTAL PLAN PAYMENTS** | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | |

1

**Exhibit A-7 – Budget Summary (March 2032 – February 2033)**

**1. Contributions and Funding**

During FY 2032 – 2033, the lease rate rises to **$ 15,500 per month** for each tenant (**ADM LLC** and **KBL LLC**), producing a combined annual rental income of **$ 372,000**.
Plan participants continue scheduled new-value contributions as follows:

- **Rovshan Hamidov (50 %)** – $ 30,000

- **Anthony Halabi (50 %)** – $ 30,000

- **Elshan Bayramov (Manager / Consultant)** – $ 48,000
  **Total new-value funding: $ 108,000**

**2. Operating Revenues and Expenses**

- **Total Rental Income:** $ 372,000 (ADM LLC & KBL LLC)

- **Total Operating Expenses:** $ 80,760 (Property Tax $ 2,995 + G&A $ 600 + Condo Fees $ 3,130 per month)

- **Net Cash from Operations:** ≈ $ 291,240 (before plan payments)

**3. Payments to Claimants**

Total projected plan payments for this period equal **$ 397,020**, allocated as follows:

- **U.S. SBA EIDL Loan (Secured by UCC):** $ 4,260 ($ 355 × 12)

- **Unsecured Creditors – ACA & AFC:** $ 45,000 ($ 3,750 × 12)

- **New Bank Refinanced MSB and NWFCU:** $ 347,760 ($ 28,980 × 12)
  **Total Plan Payments: $ 397,020 ($ 33,085 × 12)**

**4. Cash Position**

The period opens with a **cash balance of $ 2885** and closes with a **cash balance of $ 5,045**, reflecting steady operations, timely debt service, and positive retained cash flow under the lease-rate escalation schedule.

| | EXHIBIT A -7 | | | | | | | | | | | | TOTAL FOR Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | March 2032- Feb 2033 | | | | | | | | | | | | |
| RENTAL INCOME / CONTRIBUTIONS | Mar-32 | Apr-32 | May-32 | Jun-32 | Jul-32 | Aug-32 | Sep-32 | Oct-32 | Nov-32 | Dec-32 | Jan-33 | Feb-33 | |
| ADM LLC Rent (Lease Amend.) | $15,500 | $ 15,500 | $15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $186,000 |
| KBL LLC Rent (Lease Amend.) | $15,500 | $ 15,500 | $15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $ 15,500 | $186,000 |
| TOT. RENT REC. | $31,000 | $ 31,000 | $31,000 | $ 31,000 | $ 31,000 | $ 31,000 | $ 31,000 | $ 31,000 | $ 31,000 | $ 31,000 | $ 31,000 | $ 31,000 | |
| | | | | | | | | | | | | | |
| EXPENSES | | | | | | | | | | | | | |
| Prop.Tax - Loudoun Co. | $ 2,985 | $ 2,985 | $ 2,985 | $ 2,985 | $ 2,985 | $ 2,985 | $ 2,985 | $ 2,985 | $ 2,985 | $ 2,985 | $ 2,985 | $ 2,985 | |
| General Admin Expenses | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | |
| Condo Fees Mo. Budg. / Pd. Qtrly. | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | $ 3,250 | |
| TOTAL EXPENSES | $ 6,735 | $ 6,735 | $ 6,735 | $ 6,735 | $ 6,735 | $ 6,735 | $ 6,735 | $ 6,735 | $ 6,735 | $ 6,735 | $ 6,735 | $ 6,735 | |
| | | | | | | | | | | | | | |
| PROJ. NET CF OPS. | $24,265 | $ 24,265 | $24,265 | $ 24,265 | $ 24,265 | $ 24,265 | $ 24,265 | $ 24,265 | $ 24,265 | $ 24,265 | $ 24,265 | $ 24,265 | |
| | | | | | | | | | | | | | |
| PLAN CONTRIBUTIONS | | | | | | | | | | | | | |
| R. Hamidov (ADM 50%) - | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 30,000 |
| A. Halabi (ADM 50%) _ | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 30,000 |
| E. Bayramov – Mgr. 25350 PLV & ADM Consult. - | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 48,000 |
| | | | | | | | | | | | | | $108,000 |
| | $ - | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| CASH BALANCE ROLLFORWARD | | | | | | | | | | | | | |
| Beg. Cash Bal./Acct. 25350 PLV | $ 2,885 | $ 3,065 | $ 3,245 | $ 3,425 | $ 3,605 | $ 3,785 | $ 3,965 | $ 4,145 | $ 4,325 | $ 4,505 | $ 4,685 | $ 4,865 | |
| Proj. Plan Funding / Net CF + Contrib. | $33,265 | $ 33,265 | $33,265 | $ 33,265 | $ 33,265 | $ 33,265 | $ 33,265 | $ 33,265 | $ 33,265 | $ 33,265 | $ 33,265 | $ 33,265 | |
| Total plan payments | $33,085 | $ 33,085 | $33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | |
| CASH ENDING BALANCE | $ 3,065 | $ 3,245 | $ 3,425 | $ 3,605 | $ 3,785 | $ 3,965 | $ 4,145 | $ 4,325 | $ 4,505 | $ 4,685 | $ 4,865 | $ 5,045 | |
| | | | | | | | | | | | | | |
| PROJ. PMTS. TO CLAIMANTS | | | | | | | | | | | | | |
| Class 3 U.S. SBA EIDL LOAN  ( Secured by-UCC) | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 4,260 |
| UNSECURED CREDITORS PAYMENTS - AFC & ACA | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $3750.00 | $ 45,000 |
| NEW BANK REFINANCED MSB AND NWFCU | $28,980 | $ 28,980 | $28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $347,760 |
| TOTAL PLAN PAYMENTS | $33,085 | $ 33,085 | $33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | $ 33,085 | |

1

## Exhibit A-8 – Budget Summary (March 2033 – February 2034)

### 1. Contributions and Funding

For FY 2033 – 2034, lease rates increase to **$15,965 per month** for both **ADM LLC** and **KBL LLC**, providing total annual rental income of **$383,160**.
Plan participants continue their new-value contributions as follows:

- **Rovshan Hamidov (50 %) – ** $30,000

- **Anthony Halabi (50 %) – ** $30,000

- **Elshan Bayramov (Manager / Consultant) – ** $48,000
  **Total new-value funding: $108,000**

### 2. Operating Revenues and Expenses

- **Total Rental Income:** $383,160 (ADM LLC & KBL LLC)

- **Total Operating Expenses:** $83,880 (Property Tax $3,025 + G&A $600 + Condo Fees $3,375 per month)

- **Net Cash from Operations:** ≈ $299,280 (before plan payments)

### 3. Payments to Claimants

Total projected plan payments for the period equal **$403,020**, allocated as follows:

- **U.S. SBA EIDL Loan (Secured by UCC):** $4,260 ($355 × 12)

- **Unsecured Creditors – ACA & AFC:** $51,000 ($4,250 × 12)

- **New Bank Refinanced MSB and NWFCU:** $347,760 ($28,980 × 12)
  **Total Plan Payments: $403,020 ($33,585 × 12)**

### 4. Cash Position

The period begins with a **cash balance of $5,045** and ends with a **cash balance of $10,385**, demonstrating positive cash growth from increased rental revenue, stable expenses, and consistent loan servicing.

## EXHIBIT A- 8

| RENTAL INCOME / CONTRIBUTIONS | Mar-33 | Apr-33 | May-33 | Jun-33 | Jul-33 | Aug-33 | Sep-33 | Oct-33 | Nov-33 | Dec-33 | Jan-34 | Feb-34 | TOTAL FOR Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ADM LLC Rent (Lease Amend.) | $15,965 | $ 15,965 | $15,965 | $ 15,965 | $ 15,965 | $ 15,965 | $ 15,965 | $ 15,965 | $ 15,965 | $ 15,965 | $ 15,965 | $15,965 | $ 191,580 |
| KBL LLC Rent (Lease Amend.) | $15,965 | $ 15,965 | $15,965 | $ 15,965 | $ 15,965 | $ 15,965 | $ 15,965 | $ 15,965 | $ 15,965 | $ 15,965 | $ 15,965 | $15,965 | $ 191,580 |
| TOT. RENT REC. | $31,930 | $ 31,930 | $31,930 | $ 31,930 | $ 31,930 | $ 31,930 | $ 31,930 | $ 31,930 | $ 31,930 | $ 31,930 | $ 31,930 | $31,930 | |
| | | | | | | | | | | | | | |
| EXPENSES | | | | | | | | | | | | | |
| Prop.Tax - Loudoun Co. | $ 3,025 | $ 3,025 | $ 3,025 | $ 3,025 | $ 3,025 | $ 3,025 | $ 3,025 | $ 3,025 | $ 3,025 | $ 3,025 | $ 3,025 | $ 3,025 | |
| Geenral Admin Expenses | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | |
| Condo Fees Mo. Budg. / Pd. Qtrly. | $ 3,375 | $ 3,375 | $ 3,375 | $ 3,375 | $ 3,375 | $ 3,375 | $ 3,375 | $ 3,375 | $ 3,375 | $ 3,375 | $ 3,375 | $ 3,375 | |
| TOTAL EXPENSES | $ 6,900 | $ 6,900 | $ 6,900 | $ 6,900 | $ 6,900 | $ 6,900 | $ 6,900 | $ 6,900 | $ 6,900 | $ 6,900 | $ 6,900 | $ 6,900 | |
| | | | | | | | | | | | | | |
| PROJ. NET CF OPS. | $25,030 | $ 25,030 | $25,030 | $ 25,030 | $ 25,030 | $ 25,030 | $ 25,030 | $ 25,030 | $ 25,030 | $ 25,030 | $ 25,030 | $ 25,030 | |
| | | | | | | | | | | | | | |
| PLAN CONTRIBUTIONS | | | | | | | | | | | | | |
| R. Hamidov (ADM 50%) - | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 30,000 |
| A. Halabi (ADM 50%) _ | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 30,000 |
| E. Bayramov – Mgr. 25350 PLV & ADM Consult. - | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 48,000 |
| | | | | | | | | | | | | | $ 108,000 |
| | $ - | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| CASH BALANCE ROLLFORWARD | | | | | | | | | | | | | |
| Beg. Cash Bal./Acct. 25350 PLV | $ 5,045 | $ 5,490 | $ 5,935 | $ 6,380 | $ 6,825 | $ 7,270 | $ 7,715 | $ 8,160 | $ 8,605 | $ 9,050 | $ 9,495 | $ 9,940 | |
| Proj. Plan Funding / Net CF + Contrib. | $34,030 | $ 34,030 | $34,030 | $ 34,030 | $ 34,030 | $ 34,030 | $ 34,030 | $ 34,030 | $ 34,030 | $ 34,030 | $ 34,030 | $ 34,030 | |
| Total plan payments | $33,585 | $ 33,585 | $33,585 | $ 33,585 | $ 33,585 | $ 33,585 | $ 33,585 | $ 33,585 | $ 33,585 | $ 33,585 | $ 33,585 | $ 33,585 | |
| CASH ENDING BALANCE | $ 5,490 | $ 5,935 | $ 6,380 | $ 6,825 | $ 7,270 | $ 7,715 | $ 8,160 | $ 8,605 | $ 9,050 | $ 9,495 | $ 9,940 | $10,385 | |
| | | | | | | | | | | | | | |
| PROJ. PMTS. TO CLAIMANTS | | | | | | | | | | | | | |
| Class 3 U.S. SBA EIDL LOAN ( Secured by-UCC) | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 4,260 |
| UNSECURED CREDITORS PAYMENTS - AFC & ACA | 4250 | 4250 | 4250 | 4250 | 4250 | 4250 | 4250 | 4250 | 4250 | 4250 | 4250 | 4250 | $ 51,000 |
| NEW BANK REFINANCED MSB AND NWFCU | $28,980 | $ 28,980 | $28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $ 28,980 | $28,980 | $ 347,760 |
| TOTAL PLAN PAYMENTS | $33,585 | $ 33,585 | $33,585 | $ 33,585 | $ 33,585 | $ 33,585 | $ 33,585 | $ 33,585 | $ 33,585 | $ 33,585 | $ 33,585 | $ 33,585 | |

1

## Exhibit A-9 – Budget Summary (March 2034 – February 2035)

### 1. Contributions and Funding

During FY 2034 – 2035, lease rates increase to **$16,500 per month** for each tenant (**ADM LLC** and **KBL LLC**), producing combined annual rental income of **$396,000**.
Plan participants continue recurring new-value contributions as follows:

- **Rovshan Hamidov (50 %)** – $30,000

- **Anthony Halabi (50 %)** – $30,000

- **Elshan Bayramov (Manager / Consultant)** – $48,000
  **Total new-value funding: $108,000**

### 2. Operating Revenues and Expenses

- **Total Rental Income:** $396,000 (ADM LLC & KBL LLC)

- **Total Operating Expenses:** $85,500 (Property Tax $3,125 + G&A $600 + Condo Fees $3,475 per month)

- **Net Cash from Operations:** ≈ $310,500 (before plan payments)

### 3. Payments to Claimants

Total projected plan payments for the period equal **$412,020**, allocated as follows:

- **U.S. SBA EIDL Loan (Secured by UCC):** $4,260 ($355 × 12)

- **Unsecured Creditors – ACA & AFC:** $60,000 ($5,000 × 12)

- **New Bank Refinanced MSB and NWFCU:** $347,760 ($28,980 × 12)
  **Total Plan Payments: $412,020 ($34,335 × 12)**

### 4. Cash Position

The period opens with a **cash balance of $10,385** and closes with a **cash balance of $17,045**, reflecting healthy liquidity growth driven by increased rental income and stable loan servicing through the new bank refinance.

**EXHIBIT A-9**

**March 2034- Feb 2035**

| | Mar-34 | Apr-34 | May-34 | Jun-34 | Jul-34 | Aug-34 | Sep-34 | Oct-34 | Nov-34 | Dec-34 | Jan-35 | Feb-35 | TOTAL FOR Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RENTAL INCOME / CONTRIBUTIONS** | | | | | | | | | | | | | |
| ADM LLC Rent (Lease Amend.) | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $198,000 |
| KBL LLC Rent (Lease Amend.) | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $16,500 | $198,000 |
| **TOT. RENT REC.** | $33,000 | $33,000 | $33,000 | $33,000 | $33,000 | $33,000 | $33,000 | $33,000 | $33,000 | $33,000 | $33,000 | $33,000 | |
| | | | | | | | | | | | | | |
| **EXP. & SEC. CRED. PMTS.** | | | | | | | | | | | | | |
| Prop.Tax - Loudoun Co. | $3,125 | $3,125 | $3,125 | $3,125 | $3,125 | $3,125 | $3,125 | $3,125 | $3,125 | $3,125 | $3,125 | $3,125 | |
| General Admin Expenses | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | |
| Condo Fees Mo. Budg. / Pd. Qtrly. | $3,485 | $3,485 | $3,485 | $3,485 | $3,485 | $3,485 | $3,485 | $3,485 | $3,485 | $3,485 | $3,485 | $3,485 | |
| **TOTAL EXPENSES** | $7,110 | $7,110 | $7,110 | $7,110 | $7,110 | $7,110 | $7,110 | $7,110 | $7,110 | $7,110 | $7,110 | $7,110 | |
| | | | | | | | | | | | | | |
| **PROJ. NET CF OPS.** | $25,890 | $25,890 | $25,890 | $25,890 | $25,890 | $25,890 | $25,890 | $25,890 | $25,890 | $25,890 | $25,890 | $25,890 | |
| | | | | | | | | | | | | | |
| **PLAN CONTRIBUTIONS** | | | | | | | | | | | | | |
| R. Hamidov (ADM 50%) - | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $30,000 |
| A. Halabi (ADM 50%) _ | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $30,000 |
| E. Bayramov – Mgr. 25350 PLV & ADM Consult. - | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $48,000 |
| | $ - | | | | | | | | | | | | $108,000 |
| | | | | | | | | | | | | | |
| **CASH BALANCE ROLLFORWARD** | | | | | | | | | | | | | |
| Beg. Cash Bal./Acct. 25350 PLV | $10,385 | $10,940 | $11,495 | $12,050 | $12,605 | $13,160 | $13,715 | $14,270 | $14,825 | $15,380 | $15,935 | $16,490 | |
| Proj. Plan Funding / Net CF + Contrib. | $34,890 | $34,890 | $34,890 | $34,890 | $34,890 | $34,890 | $34,890 | $34,890 | $34,890 | $34,890 | $34,890 | $34,890 | |
| Total plan payments | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | |
| **CASH ENDING BALANCE** | $10,940 | $11,495 | $12,050 | $12,605 | $13,160 | $13,715 | $14,270 | $14,825 | $15,380 | $15,935 | $16,490 | $17,045 | |
| | | | | | | | | | | | | | |
| **PROJ. PMTS. TO CLAIMANTS** | | | | | | | | | | | | | |
| Class 3 U.S. SBA EIDL LOAN  ( Secured by-UCC) | $355 | $355 | $355 | $355 | $355 | $355 | $355 | $355 | $355 | $355 | $355 | $355 | $4,260 |
| UNSECURED CREDITORS PAYMENTS - AFC & ACA | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | 5000 | $60,000 |
| NEW BANK REFINANCED MSB AND NWFCU | $28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $347,760 |
| **TOTAL PLAN PAYMENTS** | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | $34,335 | |

1

# Exhibit A-10 – Budget Summary (March 2035 – February 2036)

## 1. Contributions and Funding

For FY 2035 – 2036, lease rates increase to **$16,995 per month** for both **ADM LLC** and **KBL LLC**, providing total annual rental income of **$407,880**.
Plan participants continue new-value contributions as follows:

- **Rovshan Hamidov (50 %)** – $18,000

- **Anthony Halabi (50 %)** – $18,000

- **Elshan Bayramov (Manager / Consultant)** – $30,000
  **Total new-value funding: $66,000**

## 2. Operating Revenues and Expenses

- **Total Rental Income:** $407,880 (ADM LLC & KBL LLC)

- **Total Operating Expenses:** $85,776 (Property Tax $3,200 + G&A $550 + Condo Fees $3,398 per month)

- **Net Cash from Operations:** ≈ $322,104 (before plan payments)

## 3. Payments to Claimants

Total projected plan payments for this period equal **$388,020**, allocated as follows:

- **U.S. SBA EIDL Loan (Secured by UCC):** $4,260 ($355 × 12)

- **Unsecured Creditors – ACA & AFC:** $36,000 ($3,000 × 12)

- **New Bank Refinanced MSB and NWFCU:** $347,760 ($28,980 × 12)
  **Total Plan Payments: $388,020 ($32,335 × 12)**

## 4. Cash Position

The period begins with a **cash balance of $17,045** and closes with a **cash balance of $17,129**, demonstrating consistent stability and full debt-service coverage at maturity of the plan's 10-year horizon.

## EXHBIT A-10

| RENTAL INCOME / CONTRIBUTIONS | | Mar-35 | Apr-35 | May-35 | Jun-35 | Jul-35 | Aug-35 | Sep-35 | Oct-35 | Nov-35 | Dec-35 | Jan-36 | Feb-36 | TOTAL FOR Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | **March 2035- Feb 2036** | | | | | | | |
| ADM LLC Rent (Lease Amend.) | $ | 16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $203,940 |
| KBL LLC Rent (Lease Amend.) | $ | 16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $16,995 | $203,940 |
| TOT. RENT REC. | $ | 33,990 | $33,990 | $33,990 | $33,990 | $33,990 | $33,990 | $33,990 | $33,990 | $33,990 | $33,990 | $33,990 | $33,990 | |
| | | | | | | | | | | | | | | |
| EXP. & SEC. CRED. PMTS. | | | | | | | | | | | | | | |
| Prop.Tax - Loudoun Co. | $ | 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 | |
| Geenral Admin Expenses | $ | 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | |
| Condo Fees Mo. Budg. / Pd. Qtrly. | $ | 3,598 | $ 3,598 | $ 3,598 | $ 3,598 | $ 3,598 | $ 3,598 | $ 3,598 | $ 3,598 | $ 3,598 | $ 3,598 | $ 3,598 | $ 3,598 | |
| TOTAL EXPENSES | $ | 7,148 | $ 7,148 | $ 7,148 | $ 7,148 | $ 7,148 | $ 7,148 | $ 7,148 | $ 7,148 | $ 7,148 | $ 7,148 | $ 7,148 | $ 7,148 | |
| | | | | | | | | | | | | | | |
| PROJ. NET CF OPS. | $ | 26,842 | $26,842 | $26,842 | $26,842 | $26,842 | $26,842 | $26,842 | $26,842 | $26,842 | $26,842 | $26,842 | $26,842 | |
| | | | | | | | | | | | | | | |
| PLAN CONTRIBUTIONS | | | | | | | | | | | | | | |
| R. Hamidov (ADM 50%) - | $ | 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 18,000 |
| A. Halabi (ADM 50%) _ | $ | 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 18,000 |
| E. Bayramov – Mgr. 25350 PLV & ADM Consult. - | $ | 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 30,000 |
| | | | | | | | | | | | | | | $ 66,000 |
| | $ | - | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| CASH BALANCE ROLLFORWARD | | | | | | | | | | | | | | |
| Beg. Cash Bal./Acct. 25350 PLV | $ | 17,045 | $17,052 | $17,059 | $17,066 | $17,073 | $17,080 | $17,087 | $17,094 | $17,101 | $17,108 | $17,115 | $17,122 | |
| Proj. Plan Funding / Net CF + Contrib. | $ | 32,342 | $32,342 | $32,342 | $32,342 | $32,342 | $32,342 | $32,342 | $32,342 | $32,342 | $32,342 | $32,342 | $32,342 | |
| Total plan payments | $ | 32,335 | $32,335 | $32,335 | $32,335 | $32,335 | $32,335 | $32,335 | $32,335 | $32,335 | $32,335 | $32,335 | $32,335 | |
| CASH ENDING BALANCE | $ | 17,052 | $17,059 | $17,066 | $17,073 | $17,080 | $17,087 | $17,094 | $17,101 | $17,108 | $17,115 | $17,122 | $17,129 | |
| | | | | | | | | | | | | | | |
| PROJ. PMTS. TO CLAIMANTS | | | | | | | | | | | | | | |
| Class 3 U.S. SBA EIDL LOAN  ( Secured by-UCC) | $ | 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 355 | $ 4,260 |
| UNSECURED CREDITORS PAYMENTS - AFC & ACA | | $3000.00 | $3000.00 | $3000.00 | $3000.00 | $3000.00 | $3000.00 | $3000.00 | $3000.00 | $3000.00 | $3000.00 | $3000.00 | $3000.00 | $ 36,000 |
| NEW BANK REFINANCED MSB AND NWFCU | $ | 28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $28,980 | $347,760 |
| TOTAL PLAN PAYMENTS | $ | 32,335 | $32,335 | $32,335 | $32,335 | $32,335 | $32,335 | $32,335 | $32,335 | $32,335 | $32,335 | $32,335 | $32,335 | |

1

# Final Statement of Preparation and Certification

This 10-year budget projection (Exhibits A-1 through A-10) represents a comprehensive cash-flow and debt-service plan for **25350 Pleasant Valley LLC** and related entities, prepared in accordance with the proposed plan of reorganization and associated financial schedules.

All figures reflect projected performance based on lease amendments, planned rent escalations, secured loan refinancing, and confirmed adequate protection and creditor-payment schedules.

**Prepared and Certified by:**

**Elshan Bayramov**
Manager / Plan Preparer
25350 Pleasant Valley LLC
Date: **November 15 2025**

Signature: _____

# EXHIBIT B
# FOLLOWS THIS PAGE

## IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

## CONFESSED JUDGMENT PROMISSORY NOTE

FOR VALUE RECEIVED, **Auto Deal Makers, LLC**, a  Virginia limited liability company ("**Maker**") promises to pay to the order of 25350 Pleasant Valley LLC, a Virginia limited liability company (the "**Holder**"), the principal sum of Two Hundred Thousand Dollars ($200,000) without setoff (the "**Outstanding Principal Amount**"), in immediately available funds in lawful money of the United States of America, together with interest as specified in this Confessed Judgment Promissory Note (the "**Note**") and all other amounts owing pursuant to this Note.  Maker shall pay this Note at Holder's address - 25350 Pleasant Valley Road, Unit 180, Chantilly, Virginia 20152, or at such other address as Holder may designate.

1.      Accrual of Interest. Until there is an Event of Default (defined, below), no interest shall accrue.  From and after any Event of Default, and continuing until the Outstanding Principal Amount of this Note shall have been paid, interest shall accrue and be calculated at a per-annum interest rate that is equal to ten percent (10%) (the "**Interest Rate**") *per anum*.  Any accrued but unpaid interest shall be added to the Outstanding Principal Amount.  Interest shall be calculated on the basis of a three hundred sixty (360) days per year factor applied to the actual days on which there exists an Outstanding Principal Amount.

2.      Payment.  On March 31, 2030, Maker shall make payment to Holder of of the Outstanding Principal Balance.

3.      Method of Payment. All payments of principal, interest, costs and fees hereunder shall be made in immediately available funds to Holder at its address (above), or at any other location of Holder specified in writing to Maker at least 10 days before any due date.

4.      Application of Payments. Any and all periodic or installment payments made under this Note shall be applied, as of the date received, first to accrued interest (if any), then to costs of collection (if any), and then to principal.

5.       Notices. Any notice required or permitted by or in connection with this Note shall be in writing and be deemed given when deposited either with the United States Postal Service postage pre-paid, certified mail, return receipt requested or when deposited with a recognized international overnight delivery service company, fees pre-paid: (i) if sent to Maker, then at its address on page one of this Note; and (ii) if sent to Maker, then to it at _____ __ _____.

6.      Event of Default/Remedies. Maker's failure to timely make payment as set forth in Section 2 of this Note shall be an Event of Default.  If an Event of Default exists, Holder may, without any additional notice to Maker, declare the entire Outstanding Principal Amount

[1]

immediately due and payment, and may exercise any remedies available to Holder, including but not limited to seeking the entry of judgment as set forth in this Note.

7. Expenses of Collection. If an Event of Default exists, Maker shall pay all costs, fees, and expenses resulting from any enforcement action, or which may be incurred in connection with the defense of this Note by Holder against any claim or cause of action, including an award of reasonable attorneys' fees.

8. Waiver of Protest. Borrower waives presentment, notice of dishonor and protest and any and all lack of diligence or delays in the collection or enforcement hereof, and expressly consents to the renewal of any and all Obligations, any release or any other indulgence or forbearance, which may be without notice.

9. Commercial Loan; Voluntary Involvement. It is hereby covenanted and warranted that the loan evidenced by this Note was obtained and used solely for business, investment or commercial purposes, and is the result of a commercial loan transaction and no truth-in-lending, similar laws or laws constituting limitations regarding interest, are applicable.

10. Choice of Law; Consent to Jurisdiction and Venue. The laws of the Commonwealth of Virginia, without reference to conflicts of laws principles, shall govern.

11. Invalidity of Any Part. If any provision or part of any provision of this Note shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity or unenforceability shall not affect any other provisions of this Note and this Note shall be construed as if such invalid, illegal or unenforceable provision or part thereof had never been contained herein, but only to the extent of its invalidity, illegality or unenforceability.

12. Time of Essence. Time shall be of the essence of each provision of this Note.

13. Binding Nature. This Note shall inure to the benefit of and be enforceable by Holder and any successors and/or assigns. This Note hall be binding and enforceable against the Maker and any personal representative or heirs.

14. Paragraph Headings. The paragraph headings used within this Note are for convenience only, and shall not affect the meanings set forth in such paragraphs, or in this Note.

15. **CONFESSED JUDGMENT. MAKER HEREBY CONSTITUTES AND APPOINTS WARNER F. YOUNG, III OF ARLINGTON COUNTY, VIRGINIA, AND JONATHAN E. LEVINE, OF ARLINGTON COUNTY, VIRGINIA, AND ADAM J. BACON OF FAIRFAX COUNTY, VIRGINIA ANY ONE OF WHOM MAY ACT INDEPENDENTLY OF ANOTHER, WHO ARE IRREVOCABLY AUTHORIZED AND EMPOWERED TO ACT AS THE TRUE AND LAWFUL ATTORNEYS IN FACT, FOR MAKER, IN MAKERS NAME, PLACE AND STEAD, AND UPON THE OCCURRENCE OF A DEFAULT HEREUNDER TO CONFESS JUDGMENT WITHOUT PRIOR HEARING AGAINST THE MAKER, IN THE CIRCUIT COURT OF LOUDOUN COUNTY, VIRGINIA FOR THE FULL AMOUNT OF THE INDEBTEDNESS DUE HEREUNDER, PLUS INTEREST AND COSTS, INCLUDING ATTORNEY'S FEES**

[2]

**EQUAL TO THIRTY-FIVE PERCENT (35%) OF THE AMOUNT OF DUE HEREUNDER, HEREBY RATIFYING AND CONFIRMING THE ACTS OF SAID ATTORNEYS IN FACT AS FULLY AS IF DONE BY HIMSELF. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF OR BY ANY IMPERFECT EXERCISE THEREOF AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT PURSUANT THERETO. SUCH AUTHORITY MAY BE EXERCISED ON ONE OR MORE OCCASIONS OR FROM TIME TO TIME AS OFTEN AS HOLDER SHALL DEEM NECESSARY, FOR ALL OF WHICH THIS NOTE SHALL BE SUFFICIENT WARRANT.  MAKER AUTHOIRIZES HOLDER TO SUBSTITUTE ANY ATTORNEYS IN FACT AT ANY TIME AND FROM TIME TO TIME.**

16.     **WAIVERS**.  **MAKER HEREBY EXPRESSLY RELINQUISHES AND WAIVES (TO THE EXTENT THE SAME MAY BE LAWFULLY WAIVED) EACH AND EVERY RIGHT, DEFENSE OR CLAIM THAT FOLLOWS: (a) ANY RIGHT TO REQUIRE HOLDER TO FIRST ENFORCE ITS REMEDIES AGAINST ANY PARTICULAR PARTY; (b) ANY DEFENSE ARISING BY REASON OF ANY DISABILITY, OR THE DISABILITY OF BORROWER OR ANY OTHER OBLIGORS; (c) ALL RIGHTS OF OR TO PRESENTMENTS, DEMANDS FOR PERFORMANCE, NOTICES OF NONPERFORMANCE, PROTESTS, NOTICES OF PROTEST, DEMANDS, NOTICES OF DEMANDS, NOTICES OF DISHONOR, NOTICES OF NON-PAYMENT AND OF THE EXISTENCE, CREATION, OR INCURRING OF NEW OR ADDITIONAL INDEBTEDNESS OF THE BORROWER; (d) ALL RIGHTS TO REQUIRE WRITTEN ACCEPTANCE OF THIS NOTE BY HOLDER; (e) ALL RIGHTS TO A TRIAL BY JURY WITH RESPECT TO ANY DEFENSES, CLAIMS OR COUNTERCLAIMS BROUGHT HEREUNDER; (f) THE RIGHT TO INTERPOSE ANY DEFENSE BASED UPON ANY CLAIM OF LACHES, INDULGENCES, DETERIORATION OF SECURITY, EXTENSION OF TIME OF PAYMENT, RENEWALS AND MODIFICATIONS; AND (g) THE RIGHT TO ASSERT ANY SET-OFF IN FAVOR OF ANY OBLIGOR PRIOR TO PAYMENT IN FULL TO MAKER.**

17.     **ACKNOWLEDGMENT**.  **MAKER HAS BEEN ADVISED TO SEEK THE ASSITANCE OF COUNSEL IN REVIEWING THIS INSTRUMENT PRIOR TO EXECUTION.**

SIGNATURE PAGE FOLLOWS

[3]

WITNESS the following signatures and seals

Auto Deal Makers, LLC


By: _____ (Seal)
Name: _____
Title: _____


COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF FAIRFAX, to wit:


The foregoing instrument was acknowledged before me, a notary public, this ____ day of _____ 2026, by _____ as the _____ of Auto Deal Makers, LLC for the purposes therein stated.


My Commission Expires:
Registration Number: _____
                                             Notary Public

[4]

# EXHIBIT C
# FOLLOWS THIS PAGE

<u>**IMPORTANT NOTICE**</u>

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

<u>**CONFESSED JUDGMENT GUARANTY OF PAYMENT**</u>

FOR VALUE RECEIVED, **AUTO DEAL MAKERS, LLC**, a Virginia limited liability company ("Guarantor"), covenants and agrees with **25350 PLEASANT VALLEY LLC**, a Virginia limited liability company ("<u>Creditor</u>") covenants with Creditor and agrees as follows:

1.      Guarantor hereby unconditionally guarantees to Creditor the full and punctual payment by Elshan Bayramov and Babak Bayramov ("Debtor") of all payments due and payable to Creditor under Confessed Judgment Promissory Note (the "<u>Note</u>") bearing even date with this Guaranty of Payment (all such amounts and indebtedness, being the "<u>Obligations</u>").  Guarantor agrees to pay all reasonable expenses which may be paid or incurred by Creditor in collecting any or all of the Obligations and enforcing any rights under this Guaranty.  If Debtor fails to pay any Obligation as and when due, Guarantor shall within thirty (30) days of any demand, and from time to time, pay Creditor the amount of such Obligation at the address specified for payments to Creditor under the Amended Settlement Agreement in immediately available funds.

2.      This is a guaranty of payment and not of collection, and the obligations are unconditional and absolute and, without limiting the foregoing, shall not be released, discharged or otherwise affected by: (i) any change in the existence, structure or ownership of the Debtor, or any insolvency, bankruptcy, reorganization or other similar proceeding affecting the Debtor or its assets or any resulting disallowance, released or discharge of all or any portion of any Obligation; (ii) any invalidity or unenforceability relating to or against the Debtor for any reason of the Obligations, or any provision of law purporting to prohibit the Debtor's payment of the Obligations; (iii) any failure by Creditor  to enforce a claim against the Debtor or its estate in any proceeding, to give notice of the existence, creation or incurring by the Debtor of any new or additional indebtedness or obligation under or with respect to the Obligations, or to commence any action against the Debtor; or (iv) any other act or omission to act or delay of any kind by any person or any other circumstance whatsoever which might, but for the provisions of this clause, constitute a legal or equitable discharge of the Guarantor's obligations.

3.      Guarantor's obligations shall remain in full force and effect until full payment by Debtor of the Obligations.  If any payment by Debtor or any Obligation is rescinded or must otherwise be restored or returned, the Guarantor's obligations with respect to such payments shall be reinstated as though such payment had been due but was not made at such time upon written notice by certified mail.  Guarantor agrees that payment or performance of any of the Obligations or other acts which toll any statute of limitations applicable to the Obligations shall also toll the statute of limitations applicable to the Guarantor's liability.

4.      Guarantor waives any and all notice of the creation, renewal, extension or accrual

[1]

of any of the Obligations and notice of or proof of reliance by Creditor upon this Guaranty of Payment or acceptance of this Guaranty of Payment, and the Obligations shall conclusively be deemed to have been created, contracted or incurred in reliance upon this Guaranty of Payment, and all dealings between the Debtor or Guarantor and Creditor shall likewise be conclusively presumed to have taken place or been consummated in reliance upon this Guaranty.  Guarantor irrevocably waives (i) acceptance hereof, diligence, presentment, demand, protest and any notice not provided for herein, including, without limitation, any notice when Creditor exercises rights against the Debtor to seek to enforce the terms of the Note, and (ii) the benefit of any statute of limitations affecting the Debtor's liability under the Obligations and the benefits of any statute or other rule of law requiring Creditor to proceed against Debtor for any obligations.

6.       All notices or other communications to any Guarantor shall be in writing and shall be given to such party at the address set forth on the signature page hereof or such other address as such party may hereafter specify for the purpose by notice to the other.  Each such notice, request or other communication shall be effective (i) three (3) days after such communication is deposited in the mails with first class postage prepaid, addressed as aforesaid or (ii) if given by any other means, when delivered at the address specified in this section.  Rejection or refusal to accept, or the inability to delivery because of a changed address of which no notice was given shall not affect the validity of notice, or other communication.

7.       No failure or delay by Creditor in exercising any right under this Guaranty of Payment shall operate as a waiver nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right.  The rights and remedies provided shall be cumulative and not exclusive of any rights or remedies provided by law.

8.       The provisions of this Guaranty of Payment are severable.  If any part is unenforceable, the remainder shall remain enforceable.

9.       The obligations of Guarantor shall be binding upon any successor in interest. The rights of Creditor shall inure to and for the benefit of any successor in interest to Creditor.

10.       **CONFESSED JUDGMENT.  GUARANTOR HEREBY  CONSTITUTES AND APPOINTS WARNER F. YOUNG, III OF ARLTINGTON COUNTY, VIRGINIA, ADAM J. BACON, OF FAIRFAX COUNTY, VIRGINIA, AND JON LEVINE OF ARLINGTON  COUNTY, VIRGINIA, ANY ONE OF WHOM MAY ACT INDEPENDENTLY OF ANOTHER, WHO ARE  JOINTLY AND SEVERALLY AND IRREVOCABLY AUTHORIZED AND EMPOWERED TO ACT AS THE DEBTOR'S TRUE AND LAWFUL ATTORNEYS IN FACT, FOR GUARANTOR, IN GUARANTOR'S NAME, PLACE AND STEAD, AND UPON THE OCCURRENCE OF A DEFAULT HEREUNDER TO CONFESS JUDGMENT WITHOUT PRIOR HEARING AGAINST GUARANTOR, IN THE CIRCUIT COURT OF FAIRFAX COUNTY, VIRGINIA FOR THE FULL AMOUNT OF THE INDEBTEDNESS DUE HEREUNDER, PLUS INTEREST AND COSTS, INCLUDING ATTORNEY'S FEES IN THE AMOUNT OF THIRTY-FIVE PERCENT (35%) OF THE AMOUNT OF THE INDEBTEDNESS DUE HEREUNDER, HEREBY RATIFYING AND CONFIRMING THE ACTS OF SAID**

[2]

**ATTORNEYS IN FACT AS FULLY AS IF DONE BY THEMSELVES.   THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST GUARANTOR SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF OR BY ANY IMPERFECT EXERCISE THEREOF AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT PURSUANT THERETO. SUCH AUTHORITY MAY BE EXERCISED ON ONE OR MORE OCCASIONS OR FROM TIME TO TIME AS OFTEN AS THE LENDER SHALL DEEM NECESSARY OR DESIRABLE, FOR ALL OF WHICH THIS NOTE SHALL BE SUFFICIENT WARRANT.  LENDER RESERVES THE EXCLUSIVE RIGHT TO SUBSTITUTE ANY ATTORNEYS IN FACT AT ANY TIME, WHICH SUBSTITUTION MAY BE MADEAT ANY TIME.**

11.     This Guaranty of Payment shall be construed under Virginia law.   In any proceeding under this Guaranty of Payment, **Guarantor waives trial by jury**.  If Creditor engages counsel to enforce its rights under this Guaranty of Payment and prevail, Guarantor shall pay any reasonable attorney fees and costs of collection incurred by Creditor in collecting the balance due under this Guaranty of Payment.

12.     Time is of the essence in the performance of all obligations under this Guaranty of Payment.

SIGANTURE PAGE FOLLOWS

[3]

WITNESS the following signature and seal:

AUTO DEAL MAKERS, LLC, a Virginia limited
liability company

By: _____ (Seal)
Name: _____
Title: _____
Dated: _____, 2025

<u>Address</u>:

25350 Pleasant Valley Rd.
Unit _____
Chantilly, VA 20152

COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF _____, to wit:

The foregoing instrument was acknowledged before me, a notary public, this _____ day of
_____, 206, by _____ as the Manager of Auto Deal Makers, LLC.

My Commission Expires:
Registration Number:                         _____
                                                              Notary Public

[4]

# EXHIBIT D
# FOLLOWS THIS PAGE

**IMPORTANT NOTICE**

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**CONFESSED JUDGMENT PROMISSORY NOTE**

FOR VALUE RECEIVED, **Elshan Bayramov** and **Babak Bayramov** (jointly and severally, but collectively (the "**Maker**"), hereby promise to pay to the order of 25350 Pleasant Valley LLC, a Virginia limited liability company (the "**Holder**"), the principal sum of INSERT VALUE Dollars ($XXX,000), without setoff (the "**Outstanding Principal Amount**"), in immediately available funds in lawful money of the United States of America, together with interest as specified in this Confessed Judgment Promissory Note (the "**Note**") and all other amounts owing pursuant to this Note.  Maker shall pay this Note at Holder's address - 25350 Pleasant Valley Road, Unit 180, Chantilly, Virginia 20152, or at such other address as Holder may designate.

1.      Accrual of Interest. Until there is an Event of Default (defined, below), no interest shall accrue.  From and after any Event of Default, and continuing until the Outstanding Principal Amount of this Note shall have been paid, interest shall accrue and be calculated at a per-annum interest rate that is equal to ten percent (10%) (the "**Interest Rate**") *per anum*.  Any accrued but unpaid interest shall be added to the Outstanding Principal Amount.  Interest shall be calculated on the basis of a three hundred sixty (360) days per year factor applied to the actual days on which there exists an Outstanding Principal Amount.

2.      Payment.  Beginning on [THE LAST DAY OF THE FIRST MONTH AFTER THE EFFECTIVE DATE OF THE PLAN] and continuing on the last day of each successive month thereafter until the Outstanding Principal Amount of this Note shall have been paid, Maker shall make payment to Holder of the amounts designated as "Plan Contributions" for Makers as shown on Exhibits A-1 through A-10 of Docket Entry_____ in the matter styled as *In re 25350 Pleasant Valley, LLC*, U.S. Bankruptcy Court, E.D. Va.. , Ales. Div. Docket No. 23-11983-KHK.

3.      Method of Payment. All payments of principal, interest, costs and fees hereunder shall be made in immediately available funds to Holder at its address (above), or at any other location of Holder specified in writing to Maker at least 10 days before any due date.

4.      Application of Payments. Any and all periodic or installment payments made under this Note shall be applied, as of the date received, first to accrued interest (if any), then to costs of collection (if any), and then to principal.

5.       Notices. Any notice required or permitted by or in connection with this Note shall be in writing and be deemed given when deposited either with the United States Postal Service postage pre-paid, certified mail, return receipt requested or when deposited with a recognized international overnight delivery service company, fees pre-paid: (i) if sent to Maker, then at its address on page one of this Note; and (ii) if sent to any Elshan Bayramov, then to him

[1]

at _____; and (iii) if sent to Babak Bayramov, then to him at _____.

6.      Event of Default/Remedies. Maker's failure to timely make payment of any installment set forth in Section 2 of this Note within thirty (30) days of a due date shall be an Event of Default.  If an Event of Default exists, Holder may, without any additional notice to Maker, declare the entire Outstanding Principal Amount immediately due and payment, and may exercise any remedies available to Holder, including but not limited to seeking the entry of judgment as set forth in this Note.

7.      Expenses of Collection. If an Event of Default exists, Maker shall pay all costs, fees, and expenses resulting from any enforcement action, or which may be incurred in connection with the defense of this Note by Holder against any claim or cause of action, including an award of reasonable attorneys' fees.

8.      Waiver of Protest.  Borrower waives presentment, notice of dishonor and protest and any and all lack of diligence or delays in the collection or enforcement hereof, and expressly consents to the renewal of any and all Obligations, any release or any other indulgence or forbearance, which may be without notice.

9.      Commercial Loan; Voluntary Involvement. It is hereby covenanted and warranted that the loan evidenced by this Note was obtained and used solely for business, investment or commercial purposes, and is the result of a commercial loan transaction and no truth-in-lending, similar laws or laws constituting limitations regarding interest, are applicable.

10.     Choice of Law; Consent to Jurisdiction and Venue. The laws of the Commonwealth of Virginia, without reference to conflicts of laws principles, shall govern.

11.     Invalidity of Any Part.  If any provision or part of any provision of this Note shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity or unenforceability shall not affect any other provisions of this Note and this Note shall be construed as if such invalid, illegal or unenforceable provision or part thereof had never been contained herein, but only to the extent of its invalidity, illegality or unenforceability.

12.     Time of Essence. Time shall be of the essence of each provision of this Note.

13.     Binding Nature. This Note shall inure to the benefit of and be enforceable by Holder and any successors and/or assigns.  This Note hall be binding and enforceable against the Maker and any personal representative or heirs.

14.     Paragraph Headings. The paragraph headings used within this Note are for convenience only, and shall not affect the meanings set forth in such paragraphs, or in this Note.

15.     **CONFESSED JUDGMENT.  MAKER HEREBY CONSTITUTES AND APPOINTS WARNER F. YOUNG, III OF ARLINGTON COUNTY, VIRGINIA, AND JONATHAN E. LEVINE, OF ARLINGTON COUNTY, VIRGINIA, AND ADAM J. BACON OF FAIRFAX COUNTY, VIRGINIA ANY ONE OF WHOM MAY ACT**

[2]

INDEPENDENTLY OF ANOTHER, WHO ARE  IRREVOCABLY AUTHORIZED AND EMPOWERED TO ACT AS THE TRUE AND LAWFUL ATTORNEYS IN FACT, FOR MAKER, IN MAKERS NAME, PLACE AND STEAD, AND UPON THE OCCURRENCE OF A DEFAULT HEREUNDER TO CONFESS JUDGMENT WITHOUT PRIOR HEARING AGAINST THE MAKER, IN THE CIRCUIT COURT OF LOUDOUN COUNTY, VIRGINIA FOR THE FULL AMOUNT OF THE INDEBTEDNESS DUE HEREUNDER, PLUS INTEREST AND COSTS, INCLUDING ATTORNEY'S FEES EQUAL TO THIRTY-FIVE PERCENT (35%) OF THE AMOUNT OF DUE HEREUNDER, HEREBY RATIFYING AND CONFIRMING THE ACTS OF SAID ATTORNEYS IN FACT AS FULLY AS IF DONE BY HIMSELF. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF OR BY ANY IMPERFECT EXERCISE THEREOF AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT PURSUANT THERETO. SUCH AUTHORITY MAY BE EXERCISED ON ONE OR MORE OCCASIONS OR FROM TIME TO TIME AS OFTEN AS HOLDER SHALL DEEM NECESSARY, FOR ALL OF WHICH THIS NOTE SHALL BE SUFFICIENT WARRANT.  MAKER AUTHOIRIZES HOLDER TO SUBSTITUTE ANY ATTORNEYS IN FACT AT ANY TIME AND FROM TIME TO TIME.

16.    **WAIVERS**.  MAKER HEREBY EXPRESSLY RELINQUISHES AND WAIVES (TO THE EXTENT THE SAME MAY BE LAWFULLY WAIVED) EACH AND EVERY RIGHT, DEFENSE OR CLAIM THAT FOLLOWS: (a) ANY RIGHT TO REQUIRE HOLDER TO FIRST ENFORCE ITS REMEDIES AGAINST ANY PARTICULAR PARTY; (b) ANY DEFENSE ARISING BY REASON OF ANY DISABILITY, OR THE DISABILITY OF BORROWER OR ANY OTHER OBLIGORS; (c) ALL RIGHTS OF OR TO PRESENTMENTS, DEMANDS FOR PERFORMANCE, NOTICES OF NONPERFORMANCE, PROTESTS, NOTICES OF PROTEST, DEMANDS, NOTICES OF DEMANDS, NOTICES OF DISHONOR, NOTICES OF NON-PAYMENT AND OF THE EXISTENCE, CREATION, OR INCURRING OF NEW OR ADDITIONAL INDEBTEDNESS OF THE BORROWER; (d) ALL RIGHTS TO REQUIRE WRITTEN ACCEPTANCE OF THIS NOTE BY HOLDER; (e) ALL RIGHTS TO A TRIAL BY JURY WITH RESPECT TO ANY DEFENSES, CLAIMS OR COUNTERCLAIMS BROUGHT HEREUNDER; (f) THE RIGHT TO INTERPOSE ANY DEFENSE BASED UPON ANY CLAIM OF LACHES, INDULGENCES, DETERIORATION OF SECURITY, EXTENSION OF TIME OF PAYMENT, RENEWALS AND MODIFICATIONS; AND (g) THE RIGHT TO ASSERT ANY SET-OFF IN FAVOR OF ANY OBLIGOR PRIOR TO PAYMENT IN FULL TO MAKER.

17.    **ACKNOWLEDGMENT**.  MAKER HAS BEEN ADVISED TO SEEK THE ASSISTANCE Of COUNSEL IN REVIEWING THIS INSTRUMENT PRIOR TO EXECUTION.

SIGNATURE PAGE FOLLOWS

[3]

WITNESS the following signatures and seals

_____ (Seal
Elshan Bayramov

COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF FAIRFAX, to wit:

The foregoing instrument was acknowledged before me, a notary public, this ____ day of _____ 2026, by Elshan Bayramov for the purposes therein stated.

My Commission Expires:
Registration Number:                        _____
                                            Notary Public

_____ (Seal
Babak Bayramov

COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF FAIRFAX, to wit:

The foregoing instrument was acknowledged before me, a notary public, this ____ day of _____ 2026, by Babak Bayramov for the purposes therein stated.

My Commission Expires:
Registration Number:                        _____
                                            Notary Public

[4]

# EXHIBIT E
# FOLLOWS THIS PAGE

**IMPORTANT NOTICE**

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**CONFESSED JUDGMENT PROMISSORY NOTE**

FOR VALUE RECEIVED, **Rovshan Hamidov** and **Anthony Halabi** (jointly and severally, but collectively (the "**Maker**"), hereby promise to pay to the order of 25350 Pleasant Valley LLC, a Virginia limited liability company (the "**Holder**"), the principal sum of INSERT VALUE Dollars ($XXX,000), without setoff (the "**Outstanding Principal Amount**"), in immediately available funds in lawful money of the United States of America, together with interest as specified in this Confessed Judgment Promissory Note (the "**Note**") and all other amounts owing pursuant to this Note.  Maker shall pay this Note at Holder's address - 25350 Pleasant Valley Road, Unit 180, Chantilly, Virginia 20152, or at such other address as Holder may designate.

1. Accrual of Interest. Until there is an Event of Default (defined, below), no interest shall accrue.  From and after any Event of Default, and continuing until the Outstanding Principal Amount of this Note shall have been paid, interest shall accrue and be calculated at a per-annum interest rate that is equal to ten percent (10%) (the "**Interest Rate**") *per anum*.  Any accrued but unpaid interest shall be added to the Outstanding Principal Amount.  Interest shall be calculated on the basis of a three hundred sixty (360) days per year factor applied to the actual days on which there exists an Outstanding Principal Amount.

2. Payment.  Beginning on [THE LAST DAY OF THE FIRST MONTH AFTER THE EFFECTIVE DATE OF THE PLAN] and continuing on the last day of each successive month thereafter until the Outstanding Principal Amount of this Note shall have been paid, Maker shall make payment to Holder of the amounts designated as "Plan Contributions" for Makers as shown on Exhibits A-1 through A-10 of Docket Entry_____ in the matter styled as *In re 25350 Pleasant Valley, LLC*, U.S. Bankruptcy Court, E.D. Va.. , Ales. Div. Docket No. 23-11983-KHK.

3. Method of Payment. All payments of principal, interest, costs and fees hereunder shall be made in immediately available funds to Holder at its address (above), or at any other location of Holder specified in writing to Maker at least 10 days before any due date.

4. Application of Payments. Any and all periodic or installment payments made under this Note shall be applied, as of the date received, first to accrued interest (if any), then to costs of collection (if any), and then to principal.

5. Notices. Any notice required or permitted by or in connection with this Note shall be in writing and be deemed given when deposited either with the United States Postal Service postage pre-paid, certified mail, return receipt requested or when deposited with a recognized international overnight delivery service company, fees pre-paid: (i) if sent to Maker, then at its address on page one of this Note; and (ii) if sent to any Rovshan Maidov, then to him

[1]

at ███████████████████████; and (iii) if sent to Anthony Halabi, then to him at ███████████████████████.

6.    <u>Event of Default/Remedies</u>. Maker's failure to timely make payment of any installment set forth in <u>Section 2</u> of this Note within thirty (30) days of a due date shall be an Event of Default.  If an Event of Default exists, Holder may, without any additional notice to Maker, declare the entire Outstanding Principal Amount immediately due and payment, and may exercise any remedies available to Holder, including but not limited to seeking the entry of judgment as set forth in this Note.

7.    <u>Expenses of Collection</u>. If an Event of Default exists, Maker shall pay all costs, fees, and expenses resulting from any enforcement action, or which may be incurred in connection with the defense of this Note by Holder against any claim or cause of action, including an award of reasonable attorneys' fees.

8.    <u>Waiver of Protest</u>.  Borrower waives presentment, notice of dishonor and protest and any and all lack of diligence or delays in the collection or enforcement hereof, and expressly consents to the renewal of any and all Obligations, any release or any other indulgence or forbearance, which may be without notice.

9.    <u>Commercial Loan; Voluntary Involvement</u>. It is hereby covenanted and warranted that the loan evidenced by this Note was obtained and used solely for business, investment or commercial purposes, and is the result of a commercial loan transaction and no truth-in-lending, similar laws or laws constituting limitations regarding interest, are applicable.

10.    <u>Choice of Law; Consent to Jurisdiction and Venue</u>. The laws of the Commonwealth of Virginia, without reference to conflicts of laws principles, shall govern.

11.    <u>Invalidity of Any Part</u>.  If any provision or part of any provision of this Note shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity or unenforceability shall not affect any other provisions of this Note and this Note shall be construed as if such invalid, illegal or unenforceable provision or part thereof had never been contained herein, but only to the extent of its invalidity, illegality or unenforceability.

12.    <u>Time of Essence</u>. Time shall be of the essence of each provision of this Note.

13.    <u>Binding Nature</u>. This Note shall inure to the benefit of and be enforceable by Holder and any successors and/or assigns.  This Note hall be binding and enforceable against the Maker and any personal representative or heirs.

14.    <u>Paragraph Headings</u>. The paragraph headings used within this Note are for convenience only, and shall not affect the meanings set forth in such paragraphs, or in this Note.

15.    **CONFESSED JUDGMENT.  MAKER HEREBY CONSTITUTES AND APPOINTS WARNER F. YOUNG, III OF ARLINGTON COUNTY, VIRGINIA, AND JONATHAN E. LEVINE, OF ARLINGTON COUNTY, VIRGINIA, AND ADAM J. BACON OF FAIRFAX COUNTY, VIRGINIA ANY ONE OF WHOM MAY ACT**

[2]

**INDEPENDENTLY OF ANOTHER, WHO ARE  IRREVOCABLY AUTHORIZED AND EMPOWERED TO ACT AS THE TRUE AND LAWFUL ATTORNEYS IN FACT, FOR MAKER, IN MAKERS NAME, PLACE AND STEAD, AND UPON THE OCCURRENCE OF A DEFAULT HEREUNDER TO CONFESS JUDGMENT WITHOUT PRIOR HEARING AGAINST THE MAKER, IN THE CIRCUIT COURT OF LOUDOUN COUNTY, VIRGINIA FOR THE FULL AMOUNT OF THE INDEBTEDNESS DUE HEREUNDER, PLUS INTEREST AND COSTS, INCLUDING ATTORNEY'S FEES EQUAL TO THIRTY-FIVE PERCENT (35%) OF THE AMOUNT OF DUE HEREUNDER, HEREBY RATIFYING AND CONFIRMING THE ACTS OF SAID ATTORNEYS IN FACT AS FULLY AS IF DONE BY HIMSELF. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF OR BY ANY IMPERFECT EXERCISE THEREOF AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT PURSUANT THERETO. SUCH AUTHORITY MAY BE EXERCISED ON ONE OR MORE OCCASIONS OR FROM TIME TO TIME AS OFTEN AS HOLDER SHALL DEEM NECESSARY, FOR ALL OF WHICH THIS NOTE SHALL BE SUFFICIENT WARRANT.  MAKER AUTHOIRIZES HOLDER TO SUBSTITUTE ANY ATTORNEYS IN FACT AT ANY TIME AND FROM TIME TO TIME.**

16. **WAIVERS**.  **MAKER HEREBY EXPRESSLY RELINQUISHES AND WAIVES (TO THE EXTENT THE SAME MAY BE LAWFULLY WAIVED) EACH AND EVERY RIGHT, DEFENSE OR CLAIM THAT FOLLOWS: (a) ANY RIGHT TO REQUIRE HOLDER TO FIRST ENFORCE ITS REMEDIES AGAINST ANY PARTICULAR PARTY; (b) ANY DEFENSE ARISING BY REASON OF ANY DISABILITY, OR THE DISABILITY OF BORROWER OR ANY OTHER OBLIGORS; (c) ALL RIGHTS OF OR TO PRESENTMENTS, DEMANDS FOR PERFORMANCE, NOTICES OF NONPERFORMANCE, PROTESTS, NOTICES OF PROTEST, DEMANDS, NOTICES OF DEMANDS, NOTICES OF DISHONOR, NOTICES OF NON-PAYMENT AND OF THE EXISTENCE, CREATION, OR INCURRING OF NEW OR ADDITIONAL INDEBTEDNESS OF THE BORROWER; (d) ALL RIGHTS TO REQUIRE WRITTEN ACCEPTANCE OF THIS NOTE BY HOLDER; (e) ALL RIGHTS TO A TRIAL BY JURY WITH RESPECT TO ANY DEFENSES, CLAIMS OR COUNTERCLAIMS BROUGHT HEREUNDER; (f) THE RIGHT TO INTERPOSE ANY DEFENSE BASED UPON ANY CLAIM OF LACHES, INDULGENCES, DETERIORATION OF SECURITY, EXTENSION OF TIME OF PAYMENT, RENEWALS AND MODIFICATIONS; AND (g) THE RIGHT TO ASSERT ANY SET-OFF IN FAVOR OF ANY OBLIGOR PRIOR TO PAYMENT IN FULL TO MAKER.**

17. **ACKNOWLEDGMENT**. **MAKER HAS BEEN ADVISED TO SEEK THE ASSISTANCE Of COUNSEL IN REVIEWING THIS INSTRUMENT PRIOR TO EXECUTION.**

SIGNATURE PAGE FOLLOWS

[3]

WITNESS the following signatures and seals

_____ (Seal
Rovshan Hamidov

COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF FAIRFAX, to wit:

The foregoing instrument was acknowledged before me, a notary public, this ____day of
_____ 2026, by Rovshan Hamidov for the purposes therein stated.

My Commission Expires:
Registration Number:                          _____
                                             Notary Public

_____ (Seal
Anthony Halabi

COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF FAIRFAX, to wit:

The foregoing instrument was acknowledged before me, a notary public, this ____day of
_____ 2026, by Anthony Halabi for the purposes therein stated.

My Commission Expires:
Registration Number:                          _____
                                             Notary Public

[4]

# EXHIBIT F
# FOLLOWS THIS PAGE

# ROGANMILLERZIMMERMAN, PLLC

ATTORNEYS AND COUNSELLORS AT LAW

50 CATOCTIN CIRCLE, NE, SUITE 300
LEESBURG, VA 20176
(703) 777-8850
(703) 7717-8854 (FAX)
www.RMZLawFirm.com

CHRISTOPHER L. ROGAN, ESQ.
CROGAN@RMZLAWFIRM.COM

March 18, 2025

ADMITTED IN
VIRGINIA
MARYLAND
DISTRICT OF COLUMBIA

Eugene W. Policastri
600 Jefferson Plaza
Suite 308
Rockville, MD 20852

> **Re:    In re 25350 Pleasant Valley LLC; Agreement with NWFCU**

Dear Gene:

As you know, I am representing Elshan Bayramov in his efforts to secure a reconversion of the chapter 7 bankruptcy proceeding of 25350 Pleasant Valley, LLC (the "Debtor") back to chapter 11, and then assisting in the preparation of a plan of reorganization and seeking confirmation. This letter will confirm the terms of the agreement with NorthWest Federal Credit Union ("NWFCU"), that will be incorporated in the Debtor's plan.

The parties have agreed:

1.    The NWFCU note and first deed of trust lien on the real property owned by 25350 Pleasant Valley, LLC, known as 25350 Pleasant Valley Road, Units 175 and 180, Chantilly, Virginia 20152 (the "Property") shall remain intact, and there will be no discount or any reduction in the amount owed.

2.    All rights under the NWFCU note and guaranty are reserved.

3.    Payments at the rate of 6% of the principal amount owned to NWFCU will be made to NWFCU for 36 months, with a balloon payment to be made upon the expiration of the 36-month period (the "Maturity Date"), after application of the payments to interest first, then principal. Payments will begin on the first day of the first month following the effective date of the Debtor's confirmed plan of reorganization. If there are no defaults during the 36-month payment period, the repayment term and the balloon payment due date shall be extended for an additional 12 months, for a total of 48 months.

4.    In the event any monthly payment or the balloon payment due under this agreement is not received by NWFCU, within 10 days of the due date, a notice of default will be sent to counsel to Mr. Bayramov (Christopher L. Rogan, Esq.) and the Debtor's counsel (John P. Forest, Esq.). If the default is not cured within ten (10) days thereafter, then the Debtor shall be in default and an agreed order will be submitted for entry by the Bankruptcy Court granting relief from the automatic stay for the purposes allowing NWFCU to exercise its contractual and state law rights, including, without limitation, foreclosing on the Property; or, if the Debtor's bankruptcy case has been closed prior to the default, then a consent order

March 18, 2025
Page 2

for possession of the Property shall be submitted to the Fairfax County Circuit Court), By their execution of this letter agreement, the of Property, KBL Auto Repair, LLC ("KBL") and Auto Deal Makers, LLC (ADM") confirm their understanding and agreement to the terms of this agreement, and further agree that each of the tenants shall immediately turn over possession of their respective units in the Property, upon written demand by NWFC, in the event of a default by Pleasant Valley, and entry of an order granting relief from the automatic stay or order for possession, as provided above.   The tenants shall immediately remove all their equipment and other personal property from the Property upon entry of the order granting relief from the automatic stay or the order for possession.

5.      The Debtor shall not re-rent or enter any new lease agreements or conveyances of any kind, related to the Property, without NWFCU prior written approval.

6.      The Debtor, tenants and all of their respective principals shall release any and all claims related to the Property, known and unknown, against NWFCU, upon confirmation of the Debtor's plan of reorganization.

7.      Debtor agrees to be subject to an annual review and provide all the necessary financials to complete the review, in accordance with NCUA guidelines. The financial review will include ,without limitation, financial statements and tax returns for the Debtor and guarantors and rent rolls and copies of leases.

We understand that, with the execution of this letter agreement, NWFCU will support the reconversion of the Debtor's bankruptcy case and confirmation of its chapter 11 plan, so long as such plan includes the provisions of this agreement.

Please indicate NWFCU's agreement to the terms of this agreement, by endorsing it in the space below.  Mr. Bayramov will also endorse this agreement on behalf of the Debtor, with the understanding that he is currently without authority to bind the Debtor (so long as it remains in the chapter 7).  Upon confirmation, Mr. Bayromov (and the tenants) will ratify the agreement, and seek the Bankruptcy Court's approval of the agreement in conjunction with the confirmation of the Debtor's plan.

Very truly yours,

ROGANMILLERZIMMERMAN, PLLC

Christopher L. Rogan

[signatures on follow page]

March 18, 2025
Page 3
_____

Agreed:

**NorthWest Federal Credit Union**

By: _____
     Eugene Policastri, Esq.
     Counsel to NWFCU

_____
**Elshan Bayramov, Individually**

**25350 Pleasant Valley, LLC**

By: _____
     Elshan Bayramov, Manager

Joined and Agreed for purposes of Section 4 of this Agreement

Tenants:

**KBL Auto Repair, LLC**

By: _____
     Rovshan Hamidov, Managing Member

**Auto Deal Makers, LLC**

By: _____
     Anthony Halabi, Managing Member

# EXHIBIT G
# FOLLOWS THIS PAGE

## FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT ("AGREEMENT") is made effective as of the ___ day of March 2025, by and among Caspian Auto House, Inc. ("CASPIAN") and Babak Bayramov ("B. BAYRAMOV")(collectively, the "BORROWERS"), 25350 Pleasant Valley LLC ("25350"), Elshan Bayramov ("E. BAYRAMOV"), KBL Auto Repair, LLC, Auto Deal Makers LLC and MainStreet Bank ("LENDER"). The BORROWERS and 25350 are sometimes collectively referred to herein as the "OBLIGORS." The OBLIGORS and E. BAYRAMOV are sometimes collectively referred to herein as the "PARTIES." Any one of the PARTIES is referred to herein as the "PARTY." KBL Auto Repair, LLC and Auto Deal Makers LLC are sometimes collectively referred to herein as the "TENANTS." Any one of the TENANTS is referred to herein as the "TENANT."

## RECITALS

On or about September 6, 2019, the LENDER entered into a commercial loan transaction with the BORROWERS pursuant to which the LENDER agreed to loan and did loan to the BORROWERS a principal amount of Four Million One Hundred Twenty-Four Thousand One Hundred Dollars ($4,124,100.00) ("LOAN"). The LOAN is evidenced by a U.S. Small Business Administration Note dated September 6, 2019, from the BORROWERS to the order of the LENDER in the aforesaid principal sum (the "NOTE").

The BORROWERS' obligations to the LENDER in connection with the LOAN are guaranteed by 25350 pursuant to a U.S. Small Business Administration Unconditional Limited Guarantee dated September 6, 2019, executed by 25350 ("GUARANTEE").

The obligations of the OBLIGORS to the LENDER under the LOAN are secured by, among other things: (a) a duly perfected indemnity deed of trust lien on certain real properties and improvements thereon in the Loudoun County, Virginia, and commonly known as 25350 Pleasant Valley Road, Units 175 and 180, Chantilly, Virginia 20152 (collectively, the "PROPERTIES"), as evidenced by an Indemnity Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing from 25350 dated September 6, 2019 and recorded with the land records of Loudoun County, Virginia (the "DEED OF TRUST"); (b) an assignment of leases and rents with respect to the PROPERTIES, as evidenced by an Assignment of Leases and Rents from 25350 dated September 6, 2019 and recorded with the records of Loudoun County, Virginia (the "ASSIGNMENT OF RENTS"); and (c) a security interest in all now owned or hereinafter acquired assets of CASPIAN as more fully described in a Security Agreement-Commercial executed by CASPIAN (the "SECURITY AGREEMENT") which SECURITY AGREEMENT is duly perfected by the filing of one or more Financing Statements (collectively, the "FINANCING STATEMENTS") in the appropriate jurisdictions.

The current tenant for Unit 180 of the PROPERTIES is Auto Deal Makers LLC and the tenant for Unit 175 of the PROPERTIES is KBL Auto Repair, LLC.

The NOTE, GUARANTEE, DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT, FINANCING STATEMENTS, together with all documents

executed in connection with or related to the LOAN, are hereinafter collectively referred to as the "ORIGINAL LOAN DOCUMENTS." The ORIGINAL LOAN DOCUMENTS, this AGREEMENT, and all documents to be executed and delivered to the LENDER pursuant to the terms and conditions of this AGREEMENT and all of the documents relating thereto and/or executed in connection therewith, are hereinafter collectively referred to as the "LOAN DOCUMENTS."

The OBLIGORS have defaulted under the ORIGINAL LOAN DOCUMENTS by virtue of, among other things, their failure to remit the monthly installments of principal and interest when and as due under the LOAN ("EXISTING DEFAULTS"). The LENDER has made demand upon the OBLIGORS for the payment of all sums due and owing under the LOAN and the LOAN DOCUMENTS, and these sums remain outstanding.

25350 filed a bankruptcy petition on or about December 6, 2023 in the United States Bankruptcy Court for the Eastern District of Virginia (Alexandria Division) (the "BANKRUPTCY COURT"), Case No. 23-11983-KHK (the "BANKRUPTCY"). 25350's BANKRUPTCY was converted from chapter 11 to chapter 7 on April 19, 2024, and Janet Meiburger (the "TRUSTEE") was appointed and continues to serve as the chapter 7 trustee. It is anticipated that a motion to reconvert 25350's BANKRUPTCY from chapter 7 to chapter 11 will be filed, with the support of the LENDER and the TRUSTEE, and that a plan of reorganization (the "PLAN") will be filed, incorporating and consistent with the terms of this AGREEMENT.

E. BAYRAMOV, upon information and belief, is a member of 25350.

The PARTIES have requested, among other things, that the LENDER forbear through and until March 1, 2028 (with a possible extension of said date to March 1, 2029) from exercising its rights and remedies under the LOAN and the ORIGINAL LOAN DOCUMENTS. The LENDER is willing to consent to the request of the PARTIES subject to the terms and provisions of this AGREEMENT.

NOW, THEREFORE, in consideration of the foregoing premises, and other good and valuable consideration, receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

1.    Recitals. The parties acknowledge the accuracy of the above Recitals and hereby incorporate the Recitals into this AGREEMENT.

2.    Acknowledgment of Obligations and Default With Respect to the Loan. The PARTIES acknowledge that: (a) the LOAN and the ORIGINAL LOAN DOCUMENTS are the valid and binding obligations of the OBLIGORS as indicated and are fully enforceable in accordance with their stated terms; and (b) the obligations of the OBLIGORS under the LOAN, the ORIGINAL LOAN DOCUMENTS are not subject to any set-off, defense or counterclaim. The PARTIES acknowledge that the OBLIGORS are in default under the LOAN and the ORIGINAL LOAN DOCUMENTS by reason of the EXISTING DEFAULTS. The PARTIES acknowledge that the LENDER, in the absence of the specific agreement to forbear as set forth in this AGREEMENT, has the immediate and unconditional right to exercise any of its rights and

2

remedies provided under the LOAN and the ORIGINAL LOAN DOCUMENTS, and applicable law.

3. Acknowledgment of Amounts Due Under the Loan. The PARTIES acknowledge and agree that the amounts of principal, interest, late charges and other charges/fees which are now due and payable under the LOAN and the LOAN DOCUMENTS are as set forth in this paragraph:

3.1. Principal, Interest, Late Charges and Other Charges/Fees. The sums of principal, interest, late charges and other charges/fees due and payable under LOAN are as follows:

**LOAN**

| | |
|---|---|
| Principal: | $2,158,755.37 |
| Interest (as of 02/12/25): | 327,073.20 |
| Late Charges: | 34,154.85 |
| Other Charges/Fees: | 137,269.52 |
| **TOTAL PRINCIPAL, INTEREST LATE CHARGES AND OTHER CHARGES/FEES DUE UNDER THE LOAN AS OF 02/12/25:** | **$2,657,252.94** |

4. Delivery Date/Bankruptcy Court Approval.

4.1 On or before March 6, 2025 ("DELIVERY DATE"), the PARTIES and the TENANTS shall deliver to the LENDER the original or electronic executed version of this AGREEMENT.

4.2 The PARTIES and the LENDER understand and agree that enforceability of this AGREEMENT requires the approval of the BANKRUPTCY COURT in the BANKRUPTCY. 25350 agrees that it will seek approval of this AGREEMENT in the BANKRUPTCY at the same time confirmation of the PLAN is sought, which PLAN shall incorporate the terms of this AGREEMENT. LENDER will support confirmation of the PLAN, so long as the terms of the PLAN incorporate and are consistent with the terms of this AGREEMENT.

4.3 In the event that this AGREEMENT and/or the PLAN are not approved by the BANKRUPTCY COURT, by June 30, 2025, (a) this AGREEMENT shall terminate as of that date; and (b) each of the PARTIES and TENANTS agree that they shall not oppose a motion to dismiss or convert the BANKRUPTCY thereafter filed by the LENDER. The obligation under paragraph 4.3(b) shall survive termination of this AGREEMENT and continue to be binding upon all PARTIES and TENANTS, notwithstanding such termination.

4.4    It is understood that, as of the date of this AGREEMENT, 25350 is still a chapter 7 Debtor in the BANKRUTPCY and E. BAYRAMOV may not presently have authority to bind 25350. As such, within seven (7) days following reconversion of the BANKRUPTCY to chapter 11, the PARTIES and TENANTS shall ratify this AGREEMENT, and support approval of the AGREEMENT by the BANKRUPTCY COURT.

5.    Confirmation of Obligations With Respect to the Loan. The BORROWERS acknowledge, ratify and confirm their obligations under the LOAN and the ORIGINAL LOAN DOCUMENTS and further acknowledge, ratify and confirm that the BORROWERS are and shall remain absolutely and unconditionally obligated to pay the LENDER all present and future indebtedness that is owed to the LENDER under the LOAN and the LOAN DOCUMENTS, notwithstanding the LENDER's execution of this AGREEMENT and the various agreements of the LENDER as set forth herein and therein. 25350 acknowledges, ratifies and confirms its obligations under the LOAN and the ORIGINAL LOAN DOCUMENTS and further acknowledges, ratifies and confirms that it is and shall remain absolutely and unconditionally obligated to pay the LENDER all present and future indebtedness that is owed to the LENDER under the LOAN and the LOAN DOCUMENTS, notwithstanding the LENDER's execution of this AGREEMENT and the various agreements of the LENDER as set forth herein and therein.

6.    Repayment. All sums due under the LOAN and the LOAN DOCUMENTS shall be paid in full in accordance with the following provisions:

6.1.    Payments. The OBLIGORS shall deliver the following payments to the LENDER:

(a)    Commencing the first day of the first month following BANKRUPTCY COURT approval (as provided in paragraph 4), and continuing on the first day of each month thereafter, through and including February 1, 2026, OBLIGORS shall deliver payments to the LENDER each in the amount of Thirteen Thousand Five Hundred Dollars ($13,500.00) to be applied to the outstanding sums due and owing under the LOAN and the LOAN DOCUMENTS. The OBLIGORS acknowledge that LENDER is to be paid Thirteen Thousand Five Hundred Dollars ($13,500.00) per month for March and April 2025, pursuant to a cash collateral agreement between LENDER and TRUSTEE, and agree that they will not oppose a further extension of the cash collateral agreement, including this payment amount to LENDER, in the event the PLAN is not confirmed and PLAN payments have not begun by May 1, 2025;

(b)    On March 1, 2026 the OBLIGORS shall deliver an additional payment to the LENDER in the amount of Eighteen Thousand Dollars ($18,000.00) to be applied to the outstanding sums due and owing under the LOAN and the LOAN DOCUMENTS;

(c)    In addition to the payments referenced above, commencing on March 1, 2026 and continuing on the first day of each month thereafter, through and

4

including February 1, 2028, the OBLIGORS shall deliver payments to the LENDER each in the amount of Seventeen Thousand One Hundred Fifty Dollars ($17,150.00) to be applied to the outstanding sums due and owing under the LOAN and the LOAN DOCUMENTS; and

(d)     In the event that the OBLIGORS are entitled to a fourth year of forbearance pursuant to paragraph 6.4 below, and in addition to the payments referenced above, commencing on March 1, 2028 and continuing on the first day of each month thereafter, through and including February 1, 2029, the OBLIGORS shall deliver payments to the LENDER each in the amount of Seventeen Thousand One Hundred Fifty Dollars ($17,150.00) to be applied to the outstanding sums due and owing under the LOAN and the LOAN DOCUMENTS.

(e)     The LOAN and/or any amounts due under the LOAN DOCUMENTS may be paid prior to the date due, absent any pre-payment penalty or payment of unaccrued interest.

6.2.    Excess Net Income:  In addition to the payments referenced above, the PARTIES agree that all net income of 25350 in excess of Two Thousand Dollars ($2,000.00) a month, commencing on March 1, 2025 and continuing until all sums due under the LOAN and the LOAN DOCUMENTS are remitted the LENDER in accordance with paragraph 6.4 below will be distributed 50/50 between the LENDER and Northwest Federal Credit Union, which holds a lien on the PROPERTIES.  For the first year of the forbearance, the excess net income will be distributed on March 1, 2026 and only after the LENDER has received the Eighteen Thousand Dollar ($18,000.00) sum referenced in paragraph 6.1 (b) above.  In years two and three of the forbearance (and year four if the extension set forth in paragraph 6.4 below is granted) the excess net income will be distributed quarterly to the LENDER and Northwest Federal Credit Union.

Net income is more fully set forth in the Projections prepared by 25350 and attached hereto as **Exhibit "1"** and incorporated herein by reference.  These Projections set forth the payments to be made by 25350 during the forbearance period.

6.3.    Interest Rate.  Between the date of this AGREEMENT and the date set forth in paragraph 6.4 below when all sums under the LOAN must be paid in full, interest shall accrue on the LOAN at rate equal to 7% per annum.

However, in the event that there are any defaults between the DELIVERY DATE and the date set forth in paragraph 6.4 below when all sums under the LOAN must be paid in full, the interest rate provided for in the NOTE will accrue on the LOAN retroactive to the DELIVERY DATE.

6.4.    Term:  On or before March 1, 2028, the OBLIGORS shall tender to the LENDER, in immediately available funds, a payment equal to all amounts owed at that time to the LENDER under the LOAN and the LOAN DOCUMENTS including, but not limited to, all

principal, accrued and unpaid interest, late charges, other fees, attorneys' fees and any other expenses or other amounts owed thereunder.

The LENDER agrees that the March 1, 2028 date set forth above in this paragraph 6.4 shall be changed to March 1, 2029 in the event that: (a) between the date of this AGREEMENT and March 1, 2028 the PARTIES have not defaulted under this AGREEMENT; and (b) by March 1, 2028, and in addition to all of the payments set forth above to be remitted to the LENDER, the OBLIGORS remit to the LENDER an additional sum of Two Hundred Fifty Thousand Dollars ($250,000.00) to be applied to the outstanding sums due and owing under the LOAN and the LOAN DOCUMENTS.

7.      Security.  All present and future indebtedness owed to the LENDER under the LOAN is secured by the liens and assignments granted to the LENDER in the ORIGINAL LOAN DOCUMENTS.    As an additional part of this AGREEMENT, the PARTIES acknowledge and confirm that all present and future indebtedness owed to the LENDER under the LOAN shall hereafter continue to be secured by the liens and assignments granted to the LENDER in the LOAN DOCUMENTS.

8.      Refinancing.  Between the date of this AGREEMENT and the date that all sums due under the LOAN are remitted to the LENDER, the PARTIES will exercise their best efforts to refinance and pay off in full all sums due and owing under the LOAN and shall provide to the LENDER, upon e-mail request from LENDER, written evidence of their refinancing efforts.

9.      Representations and Warranties.  To induce the LENDER to enter into this AGREEMENT and to provide the PARTIES with the accommodations described herein, the PARTIES make the representations and warranties set forth below and acknowledge the LENDER's justifiable right to rely upon these representations and warranties:

9.1.    Accuracy.  To the best of their knowledge, all information, documents, reports, statements, financial statements, and data submitted by or on behalf of the PARTIES in connection with this AGREEMENT are true, accurate and complete in all material respects as of the date made and contain no knowingly false, incomplete or misleading statements.

9.2.    Charter Issues.  The making and performance of this AGREEMENT will not immediately, or with the passage of time, the giving of notice, or both: (a) violate any charter, by-laws, partnership agreement or any other organizational documents of the PARTIES or violate any laws or result in a default under any contract, agreement, or instrument to which any PARTY is a party or by which any PARTY or any property of any of the PARTIES is bound; or (b) result in the creation or imposition of any security interest in, or lien or encumbrance upon any of the assets of any PARTY, except in favor of the LENDER.

9.3.    Organization Good Standing; Authorization.  CASPIAN is a Virginia corporation and 25350 is a Virginia limited liability company both duly organized and validly existing under the laws of the Commonwealth of Virginia.  They have the full power and authority to enter into this AGREEMENT and the documents required to be executed by them and have the power to perform all of their obligations in connection therewith. Borrower Babak Bayramov is the President of CASPIAN and Elshan Bayramov is the manager of 25350 and are

6

authorized to execute this and any other related documents on behalf of them.   Royshan Hamidov is the managing member of KBL Auto Repair, LLC and is authorized to execute this and any other related documents on behalf of it.  Anthony Halabi is the managing member of Auto Deal Makers LLC and is authorized to execute this and any other related documents on behalf of it.

9.4.    Judgment/Litigation.  There is no action, suit, investigation, or proceeding pending or, in the knowledge of any of the PARTIES (except for the BANKRUPTCY, the pending Adversary Proceedings in the BANKRUPTCY and appeals of certain of the orders of the BANKRUPTCY COURT), threatened against any of the PARTIES, or the assets of any of the PARTIES, or judgment outstanding against any of the PARTIES or the assets of any of the PARTIES except as disclosed to the LENDER in Exhibit A attached hereto.  In the event that, subsequent to the execution and delivery of this AGREEMENT, any of the PARTIES receives notice of, or otherwise acquires knowledge of, any such additional suit, investigation, proceeding, or judgment, the PARTIES shall immediately disclose the same to the LENDER in writing.

The PARTIES warrant and represent that the only pending litigation or appeals between one or more of the PARTIES and the LENDER or TRUSTEE Janet Meiburger are those appeals now pending in the United States District Court for the Eastern District of Virginia and the United States Court of Appeals for the Fourth Circuit.

9.5.    Taxes.  Except as disclosed to the LENDER in Exhibit B attached hereto, the PARTIES have filed with the United States Internal Revenue Service, the Commonwealth of Virginia, the State of North Carolina and all other governmental agencies or instrumentalities having authority to collect taxes (collectively, "TAXING AUTHORITIES") all tax returns, schedules, forms or other documents which, under applicable law, are required to have been filed as of the date hereof, and have fully paid all taxes which, under applicable law, are required to have been paid as of the date hereof, including, without limitation, all income taxes, withholding taxes, real property taxes, personal property taxes, and sales taxes, and no property of the PARTIES is subject to any lien for any tax, except liens for taxes which are not yet due and payable.

9.6.    Elshan Bayramov.  E. BAYRAMOV warrants and represents that he is securing adequate benefits as consideration for his execution of this AGREEMENT.

10.    Documents and Submissions.  The PARTIES agree to execute and deliver to the LENDER such other and further documents as may, from time to time, in the sole opinion of the LENDER or its counsel, be necessary, convenient or proper to carry out the terms and conditions of the AGREEMENT and the other LOAN DOCUMENTS, all in the form and substance acceptable to the LENDER.  The information required to be provided to the LENDER pursuant to this AGREEMENT shall be in addition to, and not in substitution of, any information which the PARTIES, or any of them, are required to provide to the LENDER under any other LOAN DOCUMENTS.  All information and reports shall be in form and substance satisfactory to the LENDER.  All financial statements shall be prepared in accordance with generally accepted

7

accounting principles. All information, statements and reports shall be provided at the expense of the PARTIES.

11. Understanding of Agreement. Each of the PARTIES and the TENANTS acknowledges that they have read this AGREEMENT, understand its contents, and have had the advice of counsel before executing and delivering this AGREEMENT.

12. Condition of Collateral/Maintenance. At all times, the OBLIGORS shall keep the collateral pledged as security for the LOAN (collectively, the "COLLATERAL") in good repair and shall cause such maintenance and repairs to be performed in connection with the COLLATERAL as is customarily performed in connection with property and improvements thereon of this type. At any time or from time to time, the LENDER and its agents and representatives, upon providing the OBLIGORS with twenty-four (24) hours' written notice (except in the case where the LENDER reasonably believes that the condition of the COLLATERAL is imminently threatened, in which case no notice shall be required), shall be entitled to inspect the COLLATERAL and the PARTIES shall fully cooperate with the LENDER and its agents and representatives during the course of such inspections.

13. Insurance. The OBLIGORS shall maintain fire, casualty and other hazard insurance with respect to the COLLATERAL. Simultaneously with the execution of this AGREEMENT, the PARTIES shall provide the LENDER with documentation evidencing the existence of such insurance policies. On or before the effective date of the PLAN, the PARTIES shall take such steps as are necessary to cause the LENDER to be named as a mortgagee, loss payee or additional insured, as the case may be, to the extent of LENDER'S interest. A copy of each such amended insurance policy shall be provided to the LENDER, as soon as possible following confirmation of the PLAN. All insurance proceeds payable from any such insurance policies, and all insurance proceeds payable in connection with or as a result of any of the COLLATERAL, paid directly to the LENDER will be applied by the LENDER to reduce the indebtedness that is owed to the LENDER under the LOAN DOCUMENTS.

14. Inspection of Books and Records. Without limiting any rights of the LENDER under the other LOAN DOCUMENTS, the OBLIGORS shall, from time to time, upon three (3) business days' written notice, permit employees or other representatives of the LENDER to enter the business premises of the OBLIGORS and any other place where records concerning the business of the OBLIGORS are kept, during normal business hours of the OBLIGORS or at any other reasonable time, for the purpose of conducting a field exam which will include, among other things, the inspecting and photocopying any or all of such records. All costs and expenses of such inspections/field exams shall be paid by the OBLIGORS when and as incurred. The LENDER's employees or other representatives of the LENDER shall be permitted to remain upon the OBLIGORS' premises during normal business hours and at all other reasonable times until such inspection is completed to the LENDER's satisfaction.

15. Pending Litigation/Appeals. On or before the DELIVERY DATE the PARTIES shall provide written evidence to the LENDER that they have filed motions to stay any pending appeals between one or more of the PARTIES and the LENDER or TRUSTEE Janet Meiburger. The PARTIES agree that within seven (7) days of the date of the approval of this AGREEMENT

8

by the BANKRUPTCY COURT in the BANKRUPTCY, that the PARTIES will dismiss with prejudice any pending litigation or appeals between one or more of the PARTIES and the LENDER or TRUSTEE.

16.   Preservation of Default; Forbearance.  Nothing contained in this AGREEMENT or in any of the other LOAN DOCUMENTS shall be deemed to cure any existing default under the LOAN DOCUMENTS or waive any of the LENDER's rights and remedies arising because of any such existing default; rather, any such existing defaults, the LENDER's rights and remedies arising therefrom, and the LENDER's rights and remedies under the LOAN DOCUMENTS are hereby preserved.  Subject to the terms and conditions set forth herein, the LENDER agrees to forbear from exercising any rights or remedies which the LENDER may be entitled to assert against the OBLIGORS and their respective assets through and until March 1, 2028 (except to the extent extended to March 1, 2029 pursuant to paragraph 6.4 above), so long as the PARTIES comply with each and every term and condition of this AGREEMENT and the other LOAN DOCUMENTS.  However, if any of the conditions set forth in this AGREEMENT are not fully satisfied, the LENDER shall immediately be entitled to exercise and enforce all rights and remedies which are available to the LENDER under the LOAN, the LOAN DOCUMENTS, and applicable law.  Furthermore, on March 1, 2028 (except to the extent extended to March 1, 2029 pursuant to paragraph 6.4 above), all indebtedness owed to the LENDER under the LOAN and the LOAN DOCUMENTS shall be immediately due and payable from the OBLIGORS to the LENDER.  In the event that such indebtedness has not been satisfied by March 1, 2028 (except to the extent extended to March 1, 2029 pursuant to paragraph 6.4 above), the LENDER, immediately thereafter, shall be entitled to assert and enforce all of its rights and remedies which are available to the LENDER under this AGREEMENT, the other LOAN DOCUMENTS, and applicable law with respect to the OBLIGORS and their assets.  Furthermore, it is also understood, acknowledged and agreed between the parties that notwithstanding the LENDER's execution of this AGREEMENT, the LENDER has specifically reserved all of its rights and remedies under the LOAN DOCUMENTS, and applicable law with respect to the OBLIGORS and their respective assets including, without limitation, the LENDER's right to immediately assert and enforce all such rights and remedies.

17.   Conditions Precedent to Forbearance.  The LENDER's obligation to forbear as provided in this AGREEMENT shall not be effective until the full satisfaction of the conditions set forth below in this paragraph, and the LENDER shall have no obligation to forbear unless all such conditions are fully satisfied on or before the dates set forth in this paragraph:

17.1.   Execution and Delivery of Documents.  This AGREEMENT, the written evidence required in paragraph 15 above and all other documents required to be executed and delivered in connection herewith shall be executed, acknowledged where indicated, and delivered by the PARTIES and the TENANTS to the LENDER on or before the DELIVERY DATE.

18.   Additional Events of Default.  In addition to all events of default provided under the ORIGINAL LOAN DOCUMENTS, the occurrence of any of the following described events shall also constitute an event of default ("EVENT OF DEFAULT") under the LOAN DOCUMENTS:

18.1.   Breach of Representation or Warranty.  The failure of any information represented or warranted by any PARTY pursuant to this AGREEMENT or any of the other LOAN DOCUMENTS to be true and correct.

18.2.   Payment Default.  The failure of any of the OBLIGORS to make, in a timely manner, any of the payments required hereunder.

18.3.   Requirements/Prohibitions Under the Agreement.  The failure of any of the PARTIES or TENANTS to do anything required under this AGREEMENT or under any of the other LOAN DOCUMENTS, or any of the PARTIES or TENANTS doing anything prohibited by this AGREEMENT or by any of the other LOAN DOCUMENTS.

18.4.   Default Under the Documents.  The occurrence of any event or the existence of any circumstance which, under the terms of any other LOAN DOCUMENTS, constitutes an event of default thereunder.

18.5.   Judgment/Lien.  The entry of a judgment or lien against 25350 or any of the assets of any of 25350, the attachment of any assets of 25350, or the recordation of any Federal, State or local tax lien against 25350 which are not dismissed or satisfied within twenty-one (21) days of their entry with respect to any judgment or lien, or within twenty-one (21) days of the attachment itself with respect to any attachment of assets of 25350.

18.6.   Impairment of Collateral.  An event shall occur which the LENDER deems to impair the COLLATERAL or any other assets pledged as collateral for the LOAN in any respect, including, without limitation, the value thereof.

18.7.   Death/Dissolution.  The death of B. BAYRAMOV or E. BAYRAMOV and/or the dissolution of 25350 or CASPIAN.

18.8.   Involuntary Bankruptcy of Party/Tenant.  The filing of a petition by one or more creditors, other than LENDER, against any one or more of the PARTIES or TENANTS, except E. BAYRAMOV and B. BAYRAMOV, seeking, with respect to such PARTY, PARTIES, TENANT or TENANTS: (a) the entry of a decree or order for relief by a court having jurisdiction against or with respect to any one or more of such PARTIES or TENANTS in an involuntary case under the federal Bankruptcy laws or any state insolvency or similar laws ordering the liquidation of the assets of any one or more of such PARTIES or TENANTS; or (b) a reorganization of any one or more of such PARTIES or TENANTS or the business and affairs of any one or more of such PARTIES or TENANTS or the appointment of a receiver, liquidator, assignee, custodian, trustee, or similar official for any one or more of such PARTIES or TENANTS or any of the property of any one or more of such PARTIES or TENANTS, which involuntary proceeding is not dismissed within sixty (60) days of filing.

18.9.   Voluntary Bankruptcy.  The commencement by any one or more of the PARTIES or TENANTS, except E. BAYRAMOV and B. BAYRAMOV, of a voluntary case under the federal Bankruptcy laws or any state insolvency or similar laws or the consent by any

10

one or more of such PARTIES or TENANTS to the appointment of a receiver, liquidator, assignee, trustee, custodian or similar official for such PARTY or PARTIES or TENANT or TENANTS or the taking possession by a receiver, liquidator, assignee, trustee, custodian or similar official for such PARTY or PARTIES or TENANT or TENANTS of any of the property of such PARTY or PARTIES or TENANT or TENANTS, or the making by any one or more of such PARTIES or TENANTS of an assignment for the benefit of creditors, or the failure by any one or more of such PARTIES or TENANTS generally to pay the debts of such PARTY or PARTIES or TENANT or TENANTS as they become due.

18.10. Breach of Covenant.  The violation by any PARTY of any of the covenants set forth in this AGREEMENT.

18.11. Other Loans.  The default by any of the OBLIGORS under any contract, agreement or instrument with any lending institution to which any of the OBLIGORS is a party and/or the default by any of the OBLIGORS under any contract, agreement or instrument under which property of any of the OBLIGORS is bound.

18.12. Cure Periods.  Notwithstanding the forgoing or anything else to the contrary in this AGREEMENT or the LOAN DOCUMENTS, OBLIGORS shall be entitled to the following cure periods, once each twelve-month period following the date of PLAN confirmation:

(a) In the event of a monetary default – five (5) business days following the due date of any payment required under this AGREEMENT; and

(b) In the event of a non-monetary default – fifteen (15) calendar days following written notice of any non-monetary default under this AGREEMENT, by LENDER via email to Christopher Rogan, counsel to Elshan Bayramov (at crogan@RMZLawfirm.com), with copies to John Forest, counsel to 25350 (at john@forestlaw.com) and Janet Meiburger, 25350's bankruptcy trustee (at janetm@meiburgerlaw.com).

19.    Miscellaneous.

19.1.  Incorporation; Limited Modification.  The terms and conditions of the other LOAN DOCUMENTS are incorporated herein by reference and made a part hereof as if fully set forth herein.  Except as specifically modified by or pursuant to this AGREEMENT, all terms and conditions of the ORIGINAL LOAN DOCUMENTS remain unchanged, in full force and effect, and are hereby ratified and confirmed in all respects.  In the event of any inconsistencies between the terms and conditions of this AGREEMENT and any of the terms and conditions of the other LOAN DOCUMENTS, the LENDER shall determine, in its sole discretion, which of the terms and conditions shall control.

19.2.  Integration.  This AGREEMENT and the other LOAN DOCUMENTS constitute the entire agreement between the LENDER and the PARTIES with respect to the subject matter hereof, and any term or condition not expressed in this AGREEMENT or the other

11

LOAN DOCUMENTS does not constitute a part of the agreement of the LENDER and the PARTIES with respect to such subject matter.

19.3. No Novation. This AGREEMENT shall not cause a novation of any of the obligations of the OBLIGORS under the ORIGINAL LOAN DOCUMENTS, nor shall it extinguish, terminate or impair the OBLIGORS' respective obligations under the ORIGINAL LOAN DOCUMENTS. In addition, this AGREEMENT shall not release, affect or impair the priority of any security interests, assignments and liens held by the LENDER against any assets of the OBLIGORS.

19.4. Severability. If any provision or part of any provision of this AGREEMENT shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this AGREEMENT, and this AGREEMENT shall be construed as if such invalid, illegal or unenforceable provision or part thereof had never been contained herein, but only to the extent of its invalidity, illegality, or unenforceability.

19.5. Waivers. No failure or delay by the LENDER in the exercise or enforcement of any of its rights under any LOAN DOCUMENT shall be a waiver of such right or remedy nor shall a single or partial exercise or enforcement thereof preclude any other or further exercise or enforcement thereof or the exercise or enforcement of another right or remedy. The LENDER may at any time or from time to time waive all or any rights under this AGREEMENT or the other LOAN DOCUMENTS, but any such waiver must be specific and in writing and no such waiver shall constitute, unless specifically so expressed by the LENDER in writing, a future waiver of performance or exact performance by the PARTIES or TENANTS. No notice to or demand upon any PARTY or TENANT in any instance shall entitle any PARTY or TENANT to any other or further notice or demand in the same, similar or other circumstance.

19.6. Choice of Law. The laws of the Commonwealth of Virginia (excluding, however, conflict of law principles) shall govern and be applied to determine all issues relating to this AGREEMENT and the rights and obligations of the parties hereto, including but not limited to the validity, construction, interpretation, and enforceability of this AGREEMENT and its various provisions and the consequences and legal effect of all transactions and events which resulted in the execution of this AGREEMENT or which occurred or were to occur as a direct or indirect result of this AGREEMENT having been executed.

19.7. Binding Effect; No Oral Modification. This AGREEMENT shall be binding upon and shall inure to the benefit of the parties and their respective personal representatives, successors and assigns. This AGREEMENT may not be altered, modified or amended unless such alteration, modification or amendment is in writing and executed by the LENDER.

19.8. Time. Time is of the essence with respect to all of the obligations of the OBLIGORS under this AGREEMENT and the other LOAN DOCUMENTS.

20. <u>Waiver of Jury Trial</u>. THE PARTIES, TENANTS AND THE LENDER AGREE THAT ANY SUIT, ACTION, OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT OR INSTITUTED BY ANYONE TO THIS AGREEMENT, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, ON OR WITH RESPECT TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENTS OR WHICH IN ANY WAY RELATES, DIRECTLY OR INDIRECTLY, TO THE OBLIGATIONS OF ANY OF THE OBLIGORS TO THE LENDER UNDER THE LOAN DOCUMENTS, OR THE DEALINGS OF THE PARTIES OR TENANTS WITH RESPECT THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. THE PARTIES, TENANTS AND THE LENDER EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH ACTION OR PROCEEDING. THE PARTIES, TENANTS AND THE LENDER ACKNOWLEDGE AND AGREE THAT THIS PROVISION IS A SPECIFIC AND MATERIAL ASPECT OF THE AGREEMENT BETWEEN THEM AND THAT THE PARTIES, TENANTS AND THE LENDER WOULD NOT ENTER INTO THIS AGREEMENT IF THIS PROVISION, OR ANY OTHER PROVISION OF THIS AGREEMENT, WERE NOT CONTAINED HEREIN.

21. <u>Release</u>. As part of the agreement set forth herein, and in consideration of the same, the PARTIES each hereby release the LENDER and all of the LENDER's past, present and future directors, officers, employees, partners, members, predecessors, agents and attorneys from any and all claims, causes of action, suits and damages (including claims for attorneys' fees) which the PARTIES, jointly, severally, or otherwise, ever had or now have against the LENDER or any of the LENDER's past, present and future directors, officers, employees, partners, members, predecessors, agents or attorneys.

22. <u>Properties</u>. The TENANTS by their execution of this AGREEMENT agree that in the event there is any default under this AGREEMENT that they will, within fourteen (14) days of being advised in writing of such default, voluntarily vacate the PROPERTIES without the necessity of any further court order.

IN WITNESS WHEREOF, the parties have executed this AGREEMENT as of the date first written above with the specific intention of creating a document under seal. This AGREEMENT may be executed in counterparts, each of which shall be fully enforceable without the others, and all of which shall collectively constitute this entire original AGREEMENT. Signed counterparts may be delivered electronically, with all copies delivered electronically to be deemed to have the same force and effect as if bearing original signatures.

13

WITNESS/ATTEST:

CASPIAN AUTO HOUSE, INC.

By: _____ (SEAL)
Name:   Babak Bayramov
Title:   President

By: _____ (SEAL)
Elshan Bayramov, Individually

By: _____ (SEAL)
Babak Bayramov, Individually

25350 PLEASANT VALLEY LLC

By: _____ (SEAL)
Name:   Elshan Bayramov
Title:   Manager (see 4.4 Above)

KBL AUTO REPAIR, LLC

By: _____ (SEAL)
Name:
Title:   Rovshan Hamidov, Managing Member

AUTO DEAL MAKERS LLC

By: _____ (SEAL)
Name:
Title:   Anthony Halabi, Managing Member

MAINSTREET BANK

By: _____ (SEAL)
Name:
Title:

14

WITNESS/ATTEST:                    CASPIAN AUTO HOUSE, INC.

_____           By: _____(SEAL)
                                       Name:    Babak Bayramov
                                       Title:   President

_____           By: _____(SEAL)
                                       Elshan Bayramov, Individually

_____           By: _____(SEAL)
                                       Babak Bayramov, Individually

                                  25350 PLEASANT VALLEY LLC

_____           By: _____(SEAL)
                                       Name:    Elshan Bayramov
                                       Title:   Manager

                                  KBL AUTO REPAIR, LLC

_____           By: _____(SEAL)
                                       Name:
                                       Title:   Rovshan Hamidov, Managing Member

                                  AUTO DEAL MAKERS LLC

_____           By: _____(SEAL)
                                       Name:
                                       Title:   Anthony Halabi, Managing Member

                                  MAINSTREET BANK

                                  By: _____(SEAL)
                                       Name:    Christopher D. Johnston
                                       Title:   EVP Chief Credit Officer

14

<u>ACKNOWLEDGMENTS</u>

STATE OF ___VA___ )

CITY/COUNTY OF _Stafford_ )   TO WIT:

I HEREBY CERTIFY that, on this 6th day of March 2025, before me, the undersigned, a Notary Public of the jurisdiction aforesaid, personally appeared Babak Bayramov, who acknowledged himself to be the President of CASPIAN AUTO HOUSE INC., and further acknowledged that he, as such President, being authorized to do so, executed the foregoing instrument on behalf of CASPIAN AUTO HOUSE INC., by himself as President of CASPIAN AUTO HOUSE INC., for the purposes therein contained.

IN WITNESS MY hand and Notarial Seal.

NOTARY PUBLIC

My Commission Expires: _09/30/2025_

STATE OF ___VA___ )

CITY/COUNTY OF _Stafford_ )   TO WIT:

I HEREBY CERTIFY that, on this 6th day of March 2025, before me, the undersigned, a Notary Public of the jurisdiction aforesaid, personally appeared ELSHAN BAYRAMOV, known to me (or satisfactorily proven), to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS MY hand and Notarial Seal.

NOTARY PUBLIC

My Commission Expires: _09/30/2025_

15

STATE OF ___VA___ )

                                              TO WIT:

CITY/COUNTY OF Stafford )

      I HEREBY CERTIFY that, on this 6th day of March 2025, before me, the undersigned, a Notary Public of the jurisdiction aforesaid, personally appeared BABAK BAYRAMOV, known to me (or satisfactorily proven), to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

      IN WITNESS MY hand and Notarial Seal.

_____
NOTARY PUBLIC

My Commission Expires: 09/30/2025

*[Notary seal: TINA M RUIZ, COMMONWEALTH, REGISTRATION NO. 7750137, MY COMM. EXPIRES 09/30/2025, OF VIRGINIA, NOTARY PUBLIC]*

STATE OF ___VA___ )

                                              TO WIT:

CITY/COUNTY OF Stafford )

      I HEREBY CERTIFY that, on this 6th day of March 2025, before me, the undersigned, a Notary Public of the jurisdiction aforesaid, personally appeared Elshan Bayramov, who acknowledged himself to be the Manager of 25350 PLEASANT VALLEY LLC, and further acknowledged that he, as such Manager, being authorized to do so, executed the foregoing instrument on behalf of 25350 PLEASANT VALLEY LLC, by himself as Manager of 25350 PLEASANT VALLEY LLC, for the purposes therein contained.

      IN WITNESS MY hand and Notarial Seal.

_____
NOTARY PUBLIC

My Commission Expires: 09/30/ 2025

*[Notary seal: TINA M RUIZ, COMMONWEALTH, REGISTRATION NO. 7750137, MY COMM. EXPIRES 09/30/2025, OF VIRGINIA, NOTARY PUBLIC]*

STATE OF _____VA_____ )

                                                    TO WIT:

CITY/COUNTY OF Stafford )

I HEREBY CERTIFY that, on this 6th day of March 2025, before me, the undersigned, a Notary Public of the jurisdiction aforesaid, personally appeared Rovshan Hamidov, who acknowledged himself to be the Managing Member of KBL AUTO REPAIR, LLC, and further acknowledged that he, as such Manager, being authorized to do so, executed the foregoing instrument on behalf of KBL AUTO REPAIR, LLC, by himself as Manager of KBL AUTO REPAIR, LLC, for the purposes therein contained.

IN WITNESS MY hand and Notarial Seal.

_____
NOTARY PUBLIC

My Commission Expires: 09/30/2025

TINA M RUIZ
COMMONWEALTH
REGISTRATION NO.
7750137
MY COMM. EXPIRES
09/30/2025
OF VIRGINIA
NOTARY PUBLIC

STATE OF _____VA_____ )

                                                    TO WIT:

CITY/COUNTY OF Stafford )

I HEREBY CERTIFY that, on this 6th day of March 2025, before me, the undersigned, a Notary Public of the jurisdiction aforesaid, personally appeared Anthony Halabi, who acknowledged himself to be the Managing Member of AUTO DEAL MAKERS LLC, and further acknowledged that he, as such Manager, being authorized to do so, executed the foregoing instrument on behalf of AUTO DEAL MAKERS LLC, by himself as Manager of AUTO DEAL MAKERS LLC, for the purposes therein contained.

IN WITNESS MY hand and Notarial Seal.

_____
NOTARY PUBLIC

My Commission Expires: 09/30/2025

TINA M RUIZ
COMMONWEALTH
REGISTRATION NO.
7750137
MY COMM. EXPIRES
09/30/2025
OF VIRGINIA
NOTARY PUBLIC

17

STATE OF __Virginia__ )

CITY/COUNTY OF __Fairfax__ )         TO WIT:

    I HEREBY CERTIFY that, on this __5th__ day of March 2025, before me, the undersigned, a Notary Public of the jurisdiction aforesaid, personally appeared _Christopher Johnston_ who acknowledged himself/herself to be a __EVP Chief Credit Officer__ of MAINSTREET BANK, and further acknowledged that he/she, as such __EVP Chief Credit Officer__, being authorized to do so, executed the foregoing instrument on behalf of MAINSTREET BANK, for the purposes therein contained by signing the name of MAINSTREET BANK, by himself/herself as _EVP Chief Credit Officer_

    IN WITNESS MY hand and Notarial Seal.

NOTARY PUBLIC

My Commission Expires: __7/31/2028__

13075.011.239158

SHAHNAWAZ SHAFI
NOTARY PUBLIC
REGISTRATION # 275462
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES 7/31/2028

18

## EXHIBIT 1

# FIVE YEAR PROJECTION 2025 - 2030                    PROJECTED

### Rent Increase of each Tenant  $2500 KBL LLC &  ADM LLC

| Rental Income, Profits, New Value | | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | | No Rent Increase 2 Years 2026 | 2027 | Rental Escalation Kicks In 2028 | 2029 1-30 | 2-30 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ADM LLC - Rent Payments - Rent Increase of $2500 | LEASE AMENDMENT | $ 12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | | $150,000 | $150,000 | $ 165,500 | $ 14,631 | $ 14,631 | $ 619,762 |
| KBL LLC - Rent Payments - Rent Increase of $2500 | LEASE AMENDMENT | $ 12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | | $150,000 | $150,000 | $ 165,500 | $ 14,631 | $ 14,631 | $ 619,762 |
| Total Rent Receipts | | $ 25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 | | $300,000 | $300,000 | $ 331,000 | $ 29,262 | $ 29,262 | $ 1,239,524 |
| | | | | | | | | | | | | | | | | | | |
| Property Expenses and Secured Creditors | | | | | | | | | | | | | | | | | | |
| Property Tax | | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $2,000 | $ 2,000 | | $ 24,000 | $ 26,000 | 30,000 | $ 3,000 | $ 3,000 | $ 106,000 |
| Condo Fees | | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $ 2,400 | $2,400 | $ 2,400 | | $ 32,000 | $ 33,000 | 36,000 | $ 3,500 | $ 3,500 | $ 132,000 |
| Insurance for 25350 Pleasant Valley LLC | | - | - | - | - | $ 440 | $ 440 | $ 440 | $ 440 | $ 440 | $ 440 | | | | | | | $ 2,640 |
| NWFCU Loan Payment | | $ 5,579 | $ 5,540 | $ 5,579 | $ 5,399 | $15,500 | $ 7,500 | $ 7,500 | $ 7,500 | $7,500 | $ 7,500 | | $ 90,000 | $ 90,000 | 90,000 | $ 7,500 | $ 7,500 | $ 360,096 |
| MSB Loan Loan Payment | | $ 13,500 | $13,500 | $13,500 | $13,500 | $13,500 | $13,500 | $13,500 | $13,500 | $13,500 | $ 31,500 | | $205,800 | $205,800 | 205,800 | $ 17,150 | $ 17,150 | $ 804,700 |
| Total Expenses | | $ 23,479 | $23,440 | $23,479 | $23,299 | $33,840 | $ 25,840 | $ 25,840 | $ 25,840 | $25,840 | $ 43,840 | | $351,800 | $354,800 | 361,800 | $ 31,150 | $ 31,150 | $ 1,405,436 |
| | | | | | | | | | | | | | | | | | | $ - |
| Projected net cash flow (from Debtor's operations) | | $ 1,521 | $ 1,560 | $ 1,521 | $ 1,701 | $(8,840) | $ (840) | $ (840) | $ (840) | $ (840) | $(18,840) | | $(51,800) | $(54,800) | (30,800) | $ (1,888) | $ (1,888) | $ (164,024) |
| | | | | | | | | | | | | | | | | | | |
| Additional Plan Contributions | | | | | | | | | | | | | | | | | | |
| ADM LLC - Rovshan Hamidov ( 50% Owner of ADM) | | $ 2,500 | $ 2,500 | $ 2,500 | $15,000 | $ 3,500 | $ 3,500 | $ 4,000 | $ 3,500 | $3,500 | $ 9,500 | | $ 20,000 | $ 20,000 | 20,000 | $ 1,750 | $ 1,750 | $ 113,500 |
| ADM LLC - Anthony Halabi ( 50% owner of ADM) | | $ 2,500 | $ 2,500 | $ 2,500 | $15,000 | $ 3,500 | $ 3,500 | $ 4,000 | $ 3,500 | $3,500 | $ 9,500 | | $ 20,000 | $ 20,000 | 20,000 | $ 1,750 | $ 1,750 | $ 113,500 |
| ELSHAN BAYRAMOV | | $ 5,000 | $ 5,000 | $ 5,000 | $60,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $5,000 | $ 10,000 | | $ 45,000 | $ 45,000 | 50,000 | $ 3,500 | $ 3,500 | $ 257,000 |
| | | | | | | | | | | | | | | | | | | |
| CASH BALANCE ROLLFORWARD | | | | | | | | | | | | | | | | | | |
| Cash beginning balance | Rent Account 25350 PLV Balance | $ 2,506 | $14,027 | $25,587 | $37,109 | $128,810 | $41,670 | $ 35,030 | $ 25,890 | $14,750 | $ 3,610 | | $ 470 | $ 10,370 | 2,270 | $ 5,006 | $ 4,818 | |
| Projected plan funding | Net Cash Flow + Contribution | $ 11,521 | $11,560 | $11,521 | $91,701 | $ 3,160 | $ 11,160 | $ 12,160 | $ 11,160 | $11,160 | $ 10,160 | | $ 33,200 | $ 30,200 | 59,200 | $ 5,112 | $ 5,112 | $ 318,088 |
| Total plan payments | Total of the All Plan Payments | $ - | $ - | $ - | $ - | $ 90,300 | $ 17,800 | $ 21,300 | $ 22,300 | $22,300 | $ 13,300 | | $ 23,300 | $ 38,300 | 58,300 | $ 5,300 | $ 5,300 | $ 317,800 |
| Cash ending balance | | $ 14,027 | $25,587 | $37,109 | $128,810 | $41,670 | $ 35,030 | $ 25,890 | $ 14,750 | $3,610 | 470 | | $ 10,370 | $ 2,270 | 3,170 | $ 4,818 | $ 4,630 | |
| | | | | | | | | | | | | | | | | | | |
| Projected Payments to Claimants in Plan | | | | | | | | | | | | | | | | | | |
| Chapter 7 Trustee Janet Meiburger - Legal FEES of Chapter 11 Trustee | | | | | | $32,500 | $ 6,500 | $ 6,000 | $ 6,000 | $6,000 | $ 3,000 | | | | | | | $ 60,000 |
| Class 3 U.S SBA EIDL LOAN ( Secured by-UCC) | | | | | | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 | | $ 3,300 | $ 3,300 | 3,300 | $ 300 | $ 300 | $ 12,300 |
| SALES BROKER EXPENSE/ ALLOWANCE | | | | | | $32,500 | $11,000 | $ 15,000 | $ 16,000 | $16,000 | $ 10,000 | | | | | | | $ 100,500 |
| CONDO FEES DUE'S ONE TIME PAYMENT | | | | | | $15,000 | | | | | | | | | | | | $ 15,000 |
| Refund to Prospective Buyers ( Appraisal, Due Diligence) | | | | | | $10,000 | | | | | | | | | | | | |
| Unsecured Creditors | | | | | | | | | | | | | $ 20,000 | $ 35,000 | 55,000 | $ 5,000 | $ 5,000 | $ 120,000 |
| Total Plan Payments | | $ - | $ - | $ - | $ - | $ 90,300 | $ 17,800 | $ 21,300 | $ 22,300 | $22,300 | $ 13,300 | | $ 23,300 | $ 38,300 | 58,300 | $ 5,300 | $ 5,300 | $ 317,800 |
| | | | | | | | | | | | | | | | | | | $ 307,800 |

1

## Exhibit A

### Pending Litigation, Investigations, and Judgments

Pursuant to Section 9.4 of the AGREEMENT, the following legal proceedings, investigations, and judgments are disclosed to the LENDER:

1. **Bankruptcy Proceedings**

   - *In re Total Auto Financing LLC*

     - **Case No.:** 1:23-bk-11867
     - **Court:** United States Bankruptcy Court for the Eastern District of Virginia
     - **Status:** Chapter 11 Bankruptcy proceedings are pending.

   - *In re Flexacar LLC*

     - **Case No.:** 1:23-bk-11984
     - **Court:** United States Bankruptcy Court for the Eastern District of Virginia
     - **Status:** Chapter 7 bankruptcy, Trustee: Kevin McCarthy

2. **Adversary Proceedings in the Bankruptcy Case (Bayramov as Plaintiff)**

   - *Bayramov v. Peritus Portfolio Services II LLC et al*
     - **Case No.:** 1:24-ap-01036
     - **Nature of Suit:** §523(a)(6) Willful and Malicious Injury, Injunctive Relief, Declaratory Judgment

3. **Bankruptcy Appeals From Adversary Proceedings (Bayramov as Plaintiff/Appellant)**

   - *Bayramov et al. v. American Credit Acceptance, LLC*
     - **Court:** Virginia Eastern District Court
     - **Case No.:** 1:24-cv-01746
     - **Nature of Suit:** Bankruptcy Appeal
     - **Related Case:** USBC EDVA 23-01187-BFK Adv. Proceeding 24-01039-BFK
     - **Status:** Pending

4. **Other Legal Proceedings and Judgments**

   - *American Credit Acceptance LLC v. Caspian Auto House Inc et al* (Bayramov as Counter Claimant)

     - **Court:** South Carolina District Court
     - **Case No.:** 7:23-cv-05477
     - **Nature of Suit:** Contract Dispute

- - **Status**: Pending with counterclaims filed by Elshan Bayramov and Babak Bayramov.

- *Automotive Finance Corporation v. Caspian Auto House Inc. et al*

  - - **Court**: Virginia Eastern District Court
    - **Case No.**: 1:23-cv-01679
    - **Nature of Suit**: Contract - Recovery of Overpayment & Enforcement of Judgment
    - **Outcome**: Consent judgment entered in favor of Plaintiff for **$6,000,000**.

- **Bayramov has separate litigations against Spartan Financial Partners, Peritus Portfolio Services, and Gary Perdue as plaintiffs in relation to the Total Auto Financing LLC case.**

  - - **Status**: Potential claims under review for legal action.

## 5.    Statement Regarding Tenants of 25350 Pleasant Valley LLC

There are no known claims, judgments, or litigation pending against the Tenants of 25350 Pleasant Valley LLC, namely Auto Deal Makers LLC and KBL Auto Repairs, except for those pending as adversary proceedings in the context of this bankruptcy case.

## Exhibit B

### Tax Compliance Disclosure

Pursuant to Section 9.5 of the AGREEMENT, the PARTIES confirm the following regarding
their tax obligations:

None.

## SECOND AMENDMENT TO FORBEARANCE AGREEMENT

THIS SECOND AMENDMENT TO FORBEARANCE AGREEMENT ("AMENDMENT") is made effective as of the _22_ day of August 2025, by and among Caspian Auto House, Inc., Babak Bayramov, 25350 Pleasant Valley LLC, Elshan Bayramov, KBL Auto Repair, LLC and Auto Deal Makers LLC (collectively, the "PARTIES") and MainStreet Bank ("LENDER"). The PARTIES and the LENDER and agree as follows:

1.     On March 5, 2025 the PARTIES and the LENDER entered into a forbearance agreement ("Forbearance Agreement") with respect to, among other things, the LOAN, the LOAN DOCUMENTS, the PROPERTIES and the BANKRUPTCY, as those terms are defined in the Forbearance Agreement.

2.     The Forbearance Agreement was ratified by the PARTIES by a Ratification Agreement dated April 22, 2025 and amended pursuant to an Amendment to Forbearance Agreement dated June 12, 2025.

3.     The PARTIES and the LENDER, by their execution of this AMENDMENT, agree that the August 28, 2025 date referenced in paragraph 4.3 of the Forbearance Agreement will now be deemed replaced with the date of December 31, 2025.

4.     The terms and conditions of the LOAN DOCUMENTS are incorporated herein by reference and made a part hereof as if fully set forth herein. Except as specifically amended by or pursuant to this AMENDMENT, all terms and conditions of the LOAN DOCUMENTS remain unchanged, in full force and effect, and are hereby ratified and confirmed in all respects. In the event of any inconsistencies between the terms and conditions of this AMENDMENT and any of the terms and conditions of the LOAN DOCUMENTS, the LENDER shall determine, in its sole discretion, which of the terms and conditions shall control.

5.     On or before August 28, 2025, the PARTIES shall deliver to the LENDER the original or electronic executed version of this AMENDMENT.

IN WITNESS WHEREOF, the parties have executed this AMENDMENT as of the date first written above with the specific intention of creating a document under seal. This AMENDMENT may be executed in counterparts, each of which shall be fully enforceable without the others, and all of which shall collectively constitute this entire original AMENDMENT. Signed counterparts may be delivered electronically, with all copies delivered electronically to be deemed to have the same force and effect as if bearing original signatures.

WITNESS/ATTEST:

CASPIAN AUTO HOUSE, INC.

By: _____ (SEAL)
Name:    Babak Bayramov
Title:    President

By: _____ (SEAL)
Elshan Bayramov, Individually

By: _____ (SEAL)
Babak Bayramov, Individually

25350 PLEASANT VALLEY LLC

By: _____ (SEAL)
Name:    Elshan Bayramov
Title:    Manager

KBL AUTO REPAIR, LLC

By: _____ (SEAL)
Name: _____
Title:    Rovshan Hamidov, Managing Member

AUTO DEAL MAKERS LLC

By: _____ (SEAL)
Name: _____
Title:    Anthony Halabi, Managing Member

MAINSTREET BANK

By: _____ (SEAL)
Name: _____
Title: _____

2

## ACKNOWLEDGMENTS

STATE OF ____VA_____ )

                                    TO WIT:

CITY/COUNTY OF _Stafford_ )

I HEREBY CERTIFY that, on this 27ᵗʰday of August 2025, before me, the undersigned, a Notary Public of the jurisdiction aforesaid, personally appeared Babak Bayramov, who acknowledged himself to be the President of CASPIAN AUTO HOUSE INC., and further acknowledged that he, as such President, being authorized to do so, executed the foregoing instrument on behalf of CASPIAN AUTO HOUSE INC., by himself as President of CASPIAN AUTO HOUSE INC., for the purposes therein contained.

IN WITNESS MY hand and Notarial Seal.

_____
NOTARY PUBLIC

My Commission Expires: _09/30/25_

TINA M RUIZ
COMMONWEALTH
REGISTRATION NO.
7750137
MY COMM. EXPIRES
09/30/2025
OF VIRGINIA
NOTARY PUBLIC

STATE OF ____VA_____ )

                                    TO WIT:

CITY/COUNTY OF _Stafford_ )

I HEREBY CERTIFY that, on this 27ᵗʰday of August 2025, before me, the undersigned, a Notary Public of the jurisdiction aforesaid, personally appeared ELSHAN BAYRAMOV, known to me (or satisfactorily proven), to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS MY hand and Notarial Seal.

_____
NOTARY PUBLIC

My Commission Expires: _09/30/25_

TINA M RUIZ
COMMONWEALTH
REGISTRATION NO.
7750137
MY COMM. EXPIRES
09/30/2025
OF VIRGINIA
NOTARY PUBLIC

3

STATE OF ____VA____ )

CITY/COUNTY OF __Stafford__ )                  TO WIT:

I HEREBY CERTIFY that, on this 27th day of August 2025, before me, the undersigned, a Notary Public of the jurisdiction aforesaid, personally appeared BABAK BAYRAMOV, known to me (or satisfactorily proven), to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS MY hand and Notarial Seal.

_____
NOTARY PUBLIC

My Commission Expires: 09/30/25

STATE OF ____VA____ )

CITY/COUNTY OF __Stafford__ )                  TO WIT:

I HEREBY CERTIFY that, on this 27th day of August 2025, before me, the undersigned, a Notary Public of the jurisdiction aforesaid, personally appeared Elshan Bayramov, who acknowledged himself to be the Manager of 25350 PLEASANT VALLEY LLC, and further acknowledged that he, as such Manager, being authorized to do so, executed the foregoing instrument on behalf of 25350 PLEASANT VALLEY LLC, by himself as Manager of 25350 PLEASANT VALLEY LLC, for the purposes therein contained.

IN WITNESS MY hand and Notarial Seal.

_____
NOTARY PUBLIC

My Commission Expires: 09/30/25

4

STATE OF _____ VA _____ )

CITY/COUNTY OF __Stafford__ )

TO WIT:

I HEREBY CERTIFY that, on this 27th day of August 2025, before me, the undersigned, a Notary Public of the jurisdiction aforesaid, personally appeared Rovshan Hamidov, who acknowledged himself to be the Managing Member of KBL AUTO REPAIR, LLC, and further acknowledged that he, as such Manager, being authorized to do so, executed the foregoing instrument on behalf of KBL AUTO REPAIR, LLC, by himself as Manager of KBL AUTO REPAIR, LLC, for the purposes therein contained.

IN WITNESS MY hand and Notarial Seal.

_____
NOTARY PUBLIC

My Commission Expires: __09/30/25__

STATE OF _____ VA _____ )

CITY/COUNTY OF __Stafford__ )

TO WIT:

I HEREBY CERTIFY that, on this 27th day of August 2025, before me, the undersigned, a Notary Public of the jurisdiction aforesaid, personally appeared Anthony Halabi, who acknowledged himself to be the Managing Member of AUTO DEAL MAKERS LLC, and further acknowledged that he, as such Manager, being authorized to do so, executed the foregoing instrument on behalf of AUTO DEAL MAKERS LLC, by himself as Manager of AUTO DEAL MAKERS LLC, for the purposes therein contained.

IN WITNESS MY hand and Notarial Seal.

_____
NOTARY PUBLIC

My Commission Expires: __09/30/25__

5

STATE OF _____ )

                                           TO WIT:

CITY/COUNTY OF _____ )

       I HEREBY CERTIFY that, on this ____ day of August 2025, before me, the undersigned, a Notary Public of the jurisdiction aforesaid, personally appeared _____, who acknowledged himself/herself to be a _____ of MAINSTREET BANK, and further acknowledged that he/she, as such _____, being authorized to do so, executed the foregoing instrument on behalf of MAINSTREET BANK, for the purposes therein contained by signing the name of MAINSTREET BANK, by himself/herself as _____.

       IN WITNESS MY hand and Notarial Seal.

                                         _____
                                         NOTARY PUBLIC

My Commission Expires: _____

13075.011:241412

6