

## VIRGINIA REALTORS®
## Commercial Purchase Agreement

Each commercial transaction is different.  This form may not address your specific purpose.  This is a legally binding document. If not understood, seek competent advice before signing.

This Commercial Purchase Agreement (the "Agreement") is dated March 19 , 20 26 , between 25350 Pleasant Valley, LLC, DIP ("Seller") and Pleasant Valley Holdings III, LLC (Sadiq Hafiz) ("Purchaser").  The parties acknowledge that N/A ("Listing Broker") represents Seller and that Squaresold Real Estate ("Selling Broker") represents [**select one**]: ☐ Seller  ☐ Purchaser.  The parties further acknowledge that disclosure of the brokerage relationships was made to them by the real estate licensees involved in this transaction when specific assistance was first rendered and confirmed in writing.

1.      Sale of Property.  Purchaser agrees to buy and Seller agrees to sell the land, all improvements thereon, and all rights and appurtenances thereto belonging, located in the City/County of Chantilly/Loudoun , Virginia, with a tax parcel no. of 070354376017 & 070354376016 and a street address of 25350 Pleasant Valley Rd, 180 & 175 , Chantilly, VA 20152 .  Seller discloses that [**select one**]: ☐ there are no tenants or other parties in possession of the Property  **OR**  ☒ there are tenants or persons who are in possession of the Property as set forth on **SCHEDULE A** attached hereto.

2.      Purchase      Price.      The      purchase      price      for      the      Property      is Four million two hundred eighteen thousand Dollars ($ 4,218,000.00 ) (the "Purchase Price") and shall be paid to Seller at Settlement, subject to the prorations and adjustments described herein, as follows:

        A.      Deposit**:** Purchaser    shall    make    a    deposit    of    $ 25,000     to    be    held    by RL Title & Escrow (Vienna, VA) (the "Escrow Agent") in the form of: ☒ check ☐ cash ☐ other _____ (the "Deposit"). Purchaser **[select one]:** ☒ has paid the Deposit to the Escrow Agent **OR** ☐ will pay the Deposit to the Escrow Agent within _____ days (the "Extended Deposit Date") after the date this Contract is fully executed by the parties.  If Purchaser fails to pay the Deposit as set forth herein, then Purchaser shall be in breach of this Contract.  At Seller's option and in lieu of all other remedies set forth in this Contract, Seller may terminate this Contract by written notice to Purchaser and neither party shall have any further obligation hereunder.

If the Escrow Agent is a Virginia Real Estate Board ("VREB") licensee, the parties direct the Escrow Agent to place the Deposit in an escrow account by the end of the fifth business banking day following the latter of: (i) the date this Contract is fully executed by the parties, or (ii) the Extended Deposit Date.  If the Escrow Agent is not a VREB licensee, the parties direct the Escrow Agent to place the Deposit in an escrow account in conformance with applicable Federal or Virginia law and regulations.  The Deposit may be held in an interest bearing account and the parties waive any claim to interest resulting from such Deposit.  The Deposit shall not be released by the Escrow Agent until (i) credited toward the purchase price at settlement; (ii) Seller and Purchaser agree in writing as to its disposition, (iii) a court of competent jurisdiction orders a disbursement of the funds, or (iv) disbursed in such manner as authorized by the terms of this Contract or by Virginia law or regulations.  Seller and Purchaser agree that Escrow Agent shall have no liability to any party for disbursing the Deposit in accordance with this paragraph, except in the event of Escrow Agent's negligence or willful misconduct.

        B.      Balance.  The balance of the Purchase Price shall be paid by Purchaser at Settlement in certified funds or bank wire (inclusive of any loan obtained by Purchaser to purchase the Property).

3.      Settlement.

A.      Settlement of Property.  Settlement of the purchase and sale of the Property shall be made at
RL Title & Escrow (Vienna, VA)_____ on 60 days after Bankruptcy Approval ("Settlement").   Possession of the
Property shall be delivered to Purchaser at Settlement.  SUBJECT TO LEASES SHOWN ON EXHIBIT A.

B.      Deliveries by Seller at Settlement.  At Settlement, Seller shall deliver to Purchaser the following:
SPECIAL WARRANTY
(i)      A ~~general warranty deed with full English covenants of title~~ (the "Deed") conveying to the
Purchaser good and marketable fee simple title to the Property, free and clear of all liens, encumbrances,
conditions and restrictions, except any lien for real estate taxes not yet due and payable, and any Title Objections
for which Purchaser has no objection and/or has waived such objection pursuant to Paragraph 5;

(ii)      An affidavit for the benefit of Purchaser and its title insurer, satisfactory to Purchaser's
title company (the "Affidavit") stating that (i) no right to a mechanic's or materialman's lien has accrued with respect
to the Property as a result of any act or omission by the Seller and (ii) there are no outstanding leases or
agreements with regard to, or other parties in or entitled to possession of, the Property except as disclosed in
**SCHEDULE A** attached hereto;

(iii)      A Certificate of Non-Foreign Status as required by Section 1445 of the Internal Revenue
Code of 1986 and any other certificates required by any governmental authority or agency;

(iv)      If the Property is leased, a tenant estoppel certificate and an assignment of lease
(including the transfer of the security deposit at Settlement) for each and every tenant of the Property, in forms
acceptable to Purchaser; and

(v)      Such other Seller certifications as Purchaser's lender or title company may reasonably
require.

C.      Costs and Prorations.  Seller shall pay the costs of preparing the Deed, the Grantor's tax thereon
and any other expenses incurred by Seller.  Purchaser shall pay for the title search, title insurance premiums,
survey expenses, lender fees, Grantee's tax and all other settlement expenses incurred by Purchaser.  Real estate
taxes, rent, CAM and assessments, as  applicable, shall be prorated between Seller and Purchaser as of the date
of the Settlement.  Each party shall pay its own legal, accounting and other expenses incurred in connection with
this Agreement or Settlement.

D.      Condition of Property.  Purchaser agrees to accept the Property at Settlement in its physical
condition at the time this Agreement is fully executed by all parties, except as otherwise provided herein.  Seller
agrees to maintain the Property in good condition and repair until Settlement.  At Settlement, Seller agrees to
transfer to Purchaser all existing warranties, if any, on the Property's roof, structural components, HVAC,
mechanical, electrical, security and plumbing systems.

4.      Feasibility Period.

A.      For a period of __thirty_____ (30___) days following execution of this
Agreement by all parties (the "Feasibility Period"), Purchaser, its agents and contractors, shall have the right to:
(i) enter the Property for the purpose of inspecting the Property and performing tests as are desirable to Purchaser
in its sole and absolute discretion; (ii) seek zoning information from the local governing authority concerning
Purchaser's intended use of the Property; and/or (iii) apply for lender financing to acquire the Property.

B.      Within five (5) days after Seller's receipt of a fully executed copy of this Agreement, if not
previously delivered, Seller shall deliver to Purchaser copies of  the following materials related to the Property if
in Seller's possession: (i) any Phase I or other environmental studies; (ii) a current survey; (iii) the most current
owner's title insurance policy; and (iv) all leases and rent rolls for each tenant identified in **SCHEDULE A** (including
without limitation, the base monthly rental and all taxes, insurance, and other pass-throughs paid by the tenant),
and all contracts affecting the Property that are not terminable at will.  Items (i) through (iv) are collectively referred
to as the "Materials".

C.      If Purchaser is not satisfied in its sole and absolute discretion with all aspects of the Property (including zoning) or the Materials, or has not obtained financing upon terms and conditions satisfactory to Purchaser, then Purchaser shall have the right, upon written notice to Seller prior to the expiration of the Feasibility Period, to terminate this Agreement, in which event the Deposit shall be refunded in full to Purchaser and the parties shall have no further obligation or liability to one another, except for any liability pursuant to the indemnity provisions of Paragraphs 4D., 10 and 11.  Purchaser acknowledges that the Feasibility Period will not be extended for any reason, regardless of whether Purchaser has completed its inspections or zoning inquiry, or has obtained financing.

D.      If Purchaser fails to acquire the Property, Purchaser agrees: (i) to repair any damage arising as a result of its exercise of the right of access granted in this Paragraph 4; (ii) to indemnify and hold Seller harmless from any and all liability of any kind or nature whatsoever as a result of the exercise of such right of access, other than as a result of Seller's negligence or misconduct or the negligence or misconduct of Seller's agents, employees or contractors; and (iii) upon demand to return the Materials to Seller.

5.      Title and Survey Objections.  Purchaser may, at its sole expense, obtain a title insurance commitment and a survey for the Property.  Prior to the expiration of the Feasibility Period, Purchaser shall notify the Seller in writing as to any title or survey objections regarding the Property that the Purchaser is unwilling to accept (collectively the "Title Objections").  Seller shall advise Purchaser in writing within ten (10) days after receipt of such notice, which if any of the Title Objections will not be cured by Seller at or prior to Settlement.  If Seller fails to respond to Purchaser within such ten (10) day period or if Seller's response indicates that it does not intend to cure one or more of the Title Objections, then Purchaser may, at its option either (i) terminate this Agreement by giving written notice to Seller; (ii) cure such Title Objections at its own expense and proceed to Settlement with no reduction in the Purchase Price; or (iii) waive such Title Objections and proceed to Settlement, with no reduction in the Purchase Price.  If Purchaser elects to terminate this Agreement, the Deposit shall be refunded in full to Purchaser and the parties shall have no further obligation or liability to one another, except for any liability pursuant to the indemnity provisions of Paragraphs 4D., 10 and 11.

6.      Conditions Precedent to Obligation of Purchaser.  This Agreement and all of Purchaser's obligations hereunder are further subject to Purchaser determining in its sole and absolute discretion that all of the conditions set forth in this Paragraph 6 have been satisfied or waived in writing by Purchaser.  In the event that any of the following conditions are not satisfied or waived by Purchaser, Purchaser may give written notice to Seller terminating this Agreement on or before Settlement, in which event the Deposit shall be refunded in full to Purchaser and the parties shall have no further obligation or liability to one another, except for any liability pursuant to the indemnity provisions of Paragraphs 4D., 10 and 11.

A.      Seller's Representations and Warranties.  All the representations and warranties of Seller made herein shall have been true when made and shall be true and correct as of Settlement, with no material changes therein.

B.      Seller's Deliveries.  As of Settlement, Seller shall have taken all action and delivered all documents and materials required by this Agreement.

C.      No Litigation.  As of Settlement, there shall be no litigation, proceeding or investigation pending, or to the knowledge of Purchaser or Seller threatened, which might prevent or adversely affect the intended use of the Property or which questions the validity of any action taken or to be taken by Seller or Purchaser hereunder, or which threatens the continued operation of the Property for commercial purposes.

7.      Representations and Warranties of the Seller.  Seller, jointly and severally (if more than one Seller), represents and warrants unto Purchaser as of the date hereof and on the Settlement date that:

A.      Authority and Marketable Title.  Seller is the owner of the Property, possesses the requisite authority to enter into and perform this Agreement, and has the absolute right to sell, assign, and transfer the Property to Purchaser at Settlement.

B.      No Pending Litigation or Bankruptcy.  There are no actions, suits or proceedings at law or in equity pending, threatened against, or affecting the Property before or by any federal, state, municipal, or other governmental department, commission, board, bureau, agency, or instrumentality.  No bankruptcy or similar action, whether

~~voluntary or involuntary, is pending or is threatened against Seller, and Seller has no intention of filing or commencing any such action within ninety (90) days following Settlement.~~

C. <u>No Outstanding Purchase Option</u>. No option, right of first refusal or other contractual opportunity to purchase the Property has been granted to, or executed with, a third-party that is enforceable against Seller and/or the Property giving such third-party a right to purchase an interest in the Property or any party thereof.

D. <u>No Notice of Repairs</u>. Seller has received no written notice from any governmental agency that repairs, alterations or corrections that must be made to the Property.

E. <u>Utilities</u>. The Property is connected to **[select one]:** ☑ a municipal water and sewer system and has utility meters installed within the Property **OR** ☐ a well and septic system located on the Property. Seller makes no representation on whether the capacities of such utilities are sufficient for Purchaser's intended use of the Property.

F. <u>Hazardous Materials</u>. To the best of Seller's actual knowledge, no toxic or hazardous materials (as said terms are defined in any applicable federal or state laws) have been used, discharged or stored on or about the Property in violation of said laws, and to the best of Seller's knowledge, no such toxic or hazardous materials are now or will be at Settlement located on or below the surface of the Property. There are no petroleum storage tanks located on or beneath the surface of the Property.

G. <u>Parties in Possession</u>. As of the Settlement date, there will be no adverse or other parties in possession of the Property or any part thereof, nor has any party been granted any license, lease or other right or interest relating to the use or possession of the Property or any part thereof, except for the Leases attached hereto and made a part hereof as **SCHEDULE A**.

H. <u>Other Contracts</u>. Seller is not a party to any contracts relating to the Property that is not terminable at will, except as disclosed on **SCHEDULE B**, which is attached hereto and made a part hereof. Between the date of this Agreement and the Settlement date, Seller will not, without the prior written consent of Purchaser, which consent shall not be unreasonably withheld, enter into any contract relating to the Property that is not terminable at will.

I. <u>No Undisclosed Restrictions</u>. Seller has not, nor to the best of Seller's knowledge or belief has any predecessor in title, executed or caused to be executed any document with or for the benefit of any governmental authority restricting the development, use or occupancy of the Property that has not specifically been disclosed to Purchaser or wouldn't be revealed by a title report.

8. <u>Risk of Loss</u>. The risk of loss or damage to the Property by fire or other casualty prior to Settlement shall be on the Seller. If such loss or damage materially and adversely affects the use of the Property as of Settlement, Purchaser shall be entitled to terminate this Agreement by written notice to Seller, in which event the Deposit shall be refunded in full to Purchaser and the parties shall have no further obligation or liability to one another, except for any liability pursuant to the indemnity provisions of Paragraphs 4D., 10 and 11.

9. <u>Condemnation</u>. If, prior to Settlement, any taking pursuant to the power of eminent domain is proposed or occurs, as to all or any portion of the Property intended to be acquired at Settlement by the Purchaser, or sale occurs in lieu thereof, the Purchaser shall be entitled to terminate this Agreement by written notice to Seller, in which event the Deposit shall be refunded in full to Purchaser and the parties shall have no further obligation or liability to one another, except for any liability pursuant to the indemnity provisions of Paragraphs 4D., 10 and 11.

10. <u>Access/Cooperation</u>. During the term of this Agreement, Purchaser and his duly authorized agents shall be entitled to reasonable access to the Property for the purpose of surveying, appraising and making other findings related to the Property. Purchaser agrees to indemnify and hold the Seller harmless from any and all liability of any kind or nature whatsoever as a result of the exercise of such right of access, other than as a result of the Seller's gross negligence or willful misconduct.

11. <u>Agents and Brokers</u>. Each party represents and warrants that it did not consult or deal with any broker or agent with regard to this Agreement or the transaction contemplated hereby, except for the Listing Broker and the Selling Broker, and each party hereto agrees to indemnify and hold harmless the other party from all liability,

expense, loss, cost or damage, including reasonable attorneys' fees, that may arise by reason of any claim, demand or suit of any agent or broker arising out of facts constituting a breach of the foregoing representation and warranty. Listing Broker shall be paid a brokerage fee by Seller of ☐ __N/A_____ % of the Purchase Price. Selling Broker shall be paid by Seller a fee of ☐ __N/A_____% of the Purchase Price. The fees to the Listing Broker and Selling Broker shall be paid in cash at Settlement.

12.     Notices.  Any notice, request or demand required or permitted to be given pursuant to this Agreement shall be in writing and shall be deemed sufficiently given if, delivered by hand or messenger at the address of the intended recipient, sent prepaid by Federal Express (or a comparable guaranteed overnight delivery service), or deposited in the United States first class mail (registered or certified, postage prepaid, with return receipt requested), addressed to the intended recipient, at the intended recipient's address set forth below, or at such other address as the intended recipient may have specified by written notice to the sender given in accordance with the requirements of this Paragraph.  Any such notice, request or demand so given shall be deemed given on the day it is received by the recipient.

          For the Seller:   __25350 Pleasant Valley, LLC, DIP_____

                            _____ .

                            _____


          For Purchaser:  Pleasant Valley Holdings III, LLC (Sadiq Hafiz)_____
                            25284 Pleasant Valley Rd, Suite 100_____
                            Chantilly, VA 20152_____

13.     Default.

          A.     Default by Purchaser.  If Purchaser defaults under this Agreement, the damages suffered by Seller would be difficult to ascertain. **Therefore, Seller and Purchaser agree that, in the event of a default by Purchaser, Seller's sole and exclusive remedy, in lieu of all other remedies, shall be to terminate this Agreement and retain the Deposit as full and complete liquidated damages.**  If the Deposit is retained as liquidated damages, Seller agrees to pay one-half of the Deposit to the Listing Broker to compensate Broker for his brokerage services in the transaction.  Such payment shall have no effect on the payment due in any subsequent transaction.  Seller hereby specifically waives the right to seek specific performance of this Agreement by Purchaser or any other remedy at law or in equity, provided that Seller reserves the right to all remedies available at law and in equity solely in order to enforce the indemnification obligations of Purchaser under Paragraphs 4D., 10 and 11 herein.

                                                                      MAY

          B.     Default by Seller.  If Seller defaults under this Agreement, Purchaser ~~shall have the option to (i) seek specific performance of this Agreement, or (ii)~~ terminate this Agreement, in which event the Deposit shall be promptly refunded to Purchaser.  ~~Seller shall be liable for Purchaser's expenses in the filing of any specific performance action, including reasonable attorney's fees and court costs.~~

          C.     Right to Cure Default.  Prior to any termination of this Agreement as provided in Subparagraphs 13A. and 13B., the non-defaulting party shall provide written notice of any default(s) to the defaulting party (the "Default Notice") permitting the defaulting party ten (10) days to cure any such default(s).  If defaulting party does not cure the default(s) or does not respond to the Default Notice, then the non-defaulting party may terminate the Agreement by written notice to the defaulting party.  Nothing herein shall prevent either party from seeking a judicial determination regarding any default; provided however, the court shall award the expenses of attorney's fees and court costs to the prevailing party in any such action.

          D.     Brokerage Fees.  Notwithstanding the remedies set forth in Subparagraphs 13A., 13B, and 13C, if either Seller or Purchaser defaults under this Agreement, the defaulting party shall be liable for the full amount of the brokerage fees set forth in Paragraph 11 and any brokerage fees set forth in Seller's listing agreement with the Listing Broker for the Property (which document is hereby incorporated herein by this reference) as if this Agreement and Seller's listing agreement had been performed, and for any damages and all expenses incurred by the Listing Broker and the Selling Broker in connection with this transaction and the enforcement of this Agreement and Seller's listing agreement, including, without limitation, attorney's fees and court costs.  Payment of a real estate broker's fee as the result of a transaction relating to the Property which occurs subsequent to a

default under this Agreement shall not relieve the defaulting party of liability for any brokerage fees due under this Agreement or Seller's listing agreement.

14.    Miscellaneous.

A.    Final Agreement.  This Agreement contains the entire agreement between the parties hereto relating to the Property and supersedes all prior and contemporaneous negotiations, understandings and agreements, written or oral, between the parties hereto.

B.    Virginia Law Applicable.  This Agreement shall be construed, performed and enforced in accordance with the laws of the Commonwealth of Virginia and shall not be amended or modified and no waiver of any provision hereof shall be effective unless set forth in a written instrument executed with the same formality as this Agreement.

C.    Assignment.  This Agreement shall not be assigned by one party without the written consent of the other party, except the assignment of this Agreement to an entity owned by Purchaser or the principals of Purchaser shall not require the consent of Seller, but Purchaser shall provide written notice to Seller of such assignment.  This Agreement shall inure to the benefit of the parties hereto and their respective and permitted successors and assigns.

D.    Counterparts.  This Agreement may be signed in one or more counterparts, each of which is deemed to be an original and all of which shall together constitute the same instrument.  The parties agree that a fax of any signed original document shall have the same effect as an original.

E.    Tax-Deferred Exchange.  Either party may elect to include the conveyance of the Property in an IRS Section 1031 Like Kind Exchange (a tax-deferred exchange).  In the event that a party makes such an election, the non-exchanging party agrees to execute such documents necessary to effectuate such an exchange (at no cost to the exchanging party), but in no event shall such exchange affect the terms of the transaction or a party's responsibilities to the other party under this Agreement.  The exchanging party shall bear the sole costs of its exchange.

F. **WIRE FRAUD ALERT.** Criminals are hacking email accounts of real estate agents, title companies, settlement attorneys, and others, resulting in fraudulent wire instructions being used to divert funds to the account of the criminal. Purchaser and Seller are advised to not wire any funds without personally speaking with the intended recipient of the wire to confirm the routing number and the account number. Neither Purchaser or Seller should send personal information such as Social Security numbers, bank account numbers, and credit card numbers except through secured email or personal delivery to the intended recipient.

15.    Additional Provisions: All property sold in "As Is, Where Is" condition. All sales are subject to Bankruptcy Court approval.

**Selling Broker commission of $10,000.00 to be paid from the proceeds.**

**SUBJECT TO LEASES: The Property is sold subject to the existing leases identified in SCHEDULE A.**

**LEASE ASSIGNMENT: At Settlement, Seller shall assign all leases and transfer all security deposits to Purchaser. Purchaser shall assume all landlord obligations under the leases effective as of Settlement.**

16.    Acceptance.  To be effective this Agreement must be executed by Purchaser and Seller and an original copy of this Agreement returned to Purchaser no later than 5:00 p.m. on _____, or this Purchase Agreement shall be deemed withdrawn.

Each of the parties has executed this Agreement in its name pursuant to due authority as of the dates set forth below.

| **Purchaser** | **Seller** |
|---|---|
| Printed Name: Sadiq Hafiz | Printed Name: 25350 Pleasant Valley, LLC, DIP |
| Title (if applicable): | Title (if applicable): |
| Date: | Date: |

| **Purchaser** | **Seller** |
|---|---|
| Printed Name: | Printed Name: |
| Title (if applicable): | Title (if applicable): |
| Date: | Date: |

**Selling Company's Name and Address**

Squaresold Real Estate

22820 Goldsborough Ter

Ashburn, VA 20148

**Listing Company's Name and Address**

**Agent's Name** Ahmed Nadim
Agent's tel. no. 571-277-9770
Fax no.
Agent's email a@squaresold.com

**Agent's Name**
Agent's tel. no.
Fax no.
Agent's email

COPYRIGHT©2019 by Virginia REALTORS®. All rights reserved. This form may be used only by members in good standing with Virginia REALTORS®. The reproduction of this form, in whole or in part, or the use of the name "Virginia REALTORS®", in connection with any other form, is prohibited without prior written consent from Virginia REALTORS®. The original form was licensed to Virginia REALTORS® ("VR") by Central Virginia Regional MLS, LLC ("CVR MLS") for use by members of VR and may not be otherwise used or duplicated without the written consent of CVR MLS.  Seek legal advice if you do not understand any provision of this form.

## SCHEDULE A

### LEASES, AGREEMENTS AND CONTRACTS
### FOR TENANTS AND OTHER PARTIES
### IN POSSESSION OF THE PROPERTY

**List below each such tenant or other party in possession of the Property, and provide Purchaser with a copy of each lease, license or other agreement.  If verbal agreement, summarize terms below.**

**Also provide Purchaser with any contract affecting the Property that is not terminable at will.**

**Unit 175 - 25350 Pleasant Valley Rd, Unit 175**
**Tenant: KBL Auto Repair LLC**
**Lease Date: January 2024**
**Status: In effect**

**Unit 180 - 25350 Pleasant Valley Rd, Unit 180**
**Tenant: Auto Deal Makers LLC**
**Lease Date: January 2024**
**Status: In effect**

**Notes:**

**1. Copies of all leases listed above have been provided to Purchaser for review.**

**2. All leases are in full force and effect as of the date of this Agreement.**

**3. Seller shall assign all leases to Purchaser at Settlement, and Purchaser shall assume all landlord obligations under said leases effective as of the Settlement date.**

**4. The Purchaser assumes the landlord's obligations after closing.**

**SCHEDULE B**

**CONTRACTS RELATING TO THE PROPERTY**
**(Not terminable at will)**