Maurice B. VerStandig, Esq.
Bar No. 81556
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
Facsimile: (301) 444-4600
mac@dcbankruptcy.com
*Proposed Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 23-11983-KHK |
| | ) | (Chapter 11) |
| 25350 PLEASANT VALLEY LLC | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**AMENDED MOTION TO (I) SELL PROPERTY FREE AND CLEAR OF LIENS; AND
(II) ASSUME AND ASSIGN LEASES IN CONNECTION WITH SALE OF PROPERTY**

Comes now 25350 Pleasant Valley LLC (the "Debtor" or "Movant"), pursuant to section

363 of title 11 of the United States Code, Federal Rule of Bankruptcy Procedure 6004, and Local

Rule 6004-1, and moves this Honorable Court for leave to sell—free and clear of all liens and

encumbrances—the real property commonly known as units 175 and 180 situated at 25350

Pleasant Valley Road, Chantilly, Virginia 20152, together will all improvements and fixtures

thereupon (the "Property"), and to assume and assign the leases associated therewith in connection

with the sale of the Property, and in support thereof states as follows:

**I.    Introduction**

This case stands at a crossroads where confirmation of a chapter 11 plan has been denied

and the Debtor must now seek to use the remaining available tools of the bankruptcy process, as

best as possible, to facilitate an orderly conclusion to this proceeding in a manner that best serves

the interests of creditors. This is—and always has been—a case centered on the Property. And while issues attendant to the tenants occupying the Property have historically served to frustrate sale-centric endeavors, those hurdles have now been cleared.

An arm's length purchaser wishes to procure the Property for $4,218,000.00 (the "Purchase Price"). Negotiations between directly impacted parties, meanwhile, have created a prism whereby the Purchase Price can be used to (i) fully satisfy a first position lien, (ii) partially satisfy a second position lien in a manner agreeable to the subject lienholder, (iii) pay fully the chapter 7 administrative expenses incurred in this matter; and (iv) provide monies to pay various closing costs and expenses.

What is proposed herein is a quality agreement that will ultimately yield a better return to creditors than would any other feasible arrangement. The agreement looks out not merely for secured creditors but, too, is mindful of the need to compensate the administrative claimants—as exemplified by the chapter 7 trustee—who have toiled through this lengthy case. And the agreement will bring *de facto* finality to a bankruptcy estate that has otherwise been subject to numerous twists and turns since its inception nearly three years ago.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the sale of the Property be approved.

## II.     Proposed Sale Specifics

Pursuant to Local Rule 6004-1, the Debtor notes the legal description, for the Property, to be:

> Unit A-175 of EPIC AT DULLES SOUTH COMMERCIAL CONDOMINIUM and the limited common elements appurtenant thereto, including the limited common element parking spaces 290, 292, 293, 341, 342, 343, 344, 345, 346, 347, 348,349, 350, and 351, established by condominium instruments recorded as Instrument No. 20070207-0010426 (Plats recorded as Instrument No. 20070207-0010427 and as Instrument No. 20070207-0010428) and

any Supplemental Declarations and/or Amendments recorded subsequent thereto, among the land records of Loudoun County, Virginia.

and

Unit A-180 of EPIC AT DULLES SOUTH COMMERCIAL CONDOMINIUM and the limited common elements Appurtenant thereto, including the limited common element parking spaces 174, 175, 176, 177, 178, 179, 180, 286, 287, 288, 289, 352, 353, 354, and 355, established by condominium instruments recorded as Instrument No. 20070207-0010426 (Plats recorded as Instrument No. 20070207-0010427 and as Instrument No. 20070207-0010428) and any Supplemental Declarations and/or Amendments recorded subsequent thereto, among the land records of Loudoun County, Virginia.

Additionally, attached hereto as Exhibit A is the sales contract for which ratification is instantly sought (the "Sales Contract"), *subject to the revisions set forth herein*. As noted therein, the proposed purchaser is Pleasant Valley Holdings III LLC; the proposed sales price is as indicated *supra*; and a deposit of $25,000.00 has been paid by the proposed purchaser.

The Debtor proposes—with the consent of MainStreet Bank (the second-position lienholder on the Property)—to disburse the proceeds of the Sales Contract as follows:

| Item | Sum | Reference |
|---|---|---|
| Sales Price | $4,218,000.00 | |
| | | |
| Total Proceeds | $4,218,000.00 | |
| | | |
| Satisfaction of Lien of Northwest Federal Credit Union (1st Position Lien) | ($1,480,079.04) | |
| Discounted Payment of Lien of MainStreet Bank (2nd Position Lien) | ($2,655,802.69) | |
| Funds Allocated to Payment of Chapter 7 Administrative Claims | ($26,618.27) | DE #408; DE #409 |
| Funds Allocated to Payment of Chapter 11 Administrative Claims | $0.00 | |

| | | DE #401; Agreement indicated by counsel for Mr. Hafix |
|---|---|---|
| Sadiq Hafix Administrative Claim | Waived | |
| Funds Applied to Estimated Closing Costs | ($15,000.00) | |
| Agent Commission | ($40,500.00) | DE #136 at ¶¶ 3(B), 5; Purchase Agreement § 11; Discussed below |
| | | |
| | | |
| Total Disbursements: | ($4,218,000.00) | |

### III.    Discussion of Sale Line Items

While certain of the foregoing line items are self explanatory (i.e., "Sales Price"), others command some explanation derivative of the negotiations and discussions that have been engaged over the past several weeks.

### a.   Satisfaction of Lien of Northwest Federal Credit Union (1st Position Lien)

These are the funds proposed to be paid to the first position lien claimant secured by the Property. The sum is derivative of a payoff statement provided by the claimant, with the *per diem* thereupon updated to and through May 1, 2026.

### b.  Discounted Payment of Lien of MainStreet Bank (2nd Position Lien)

MainStreet Bank and its counsel have worked—tirelessly—to help make this deal happen. The figure reflected on this line item is the payoff the financial institution has agreed to accept in full satisfaction of its lien.

### c.   Funds Allocated to Payment of Chapter 11 Administrative Claims

No funds are being allocated to pay chapter 11 administrative claims because it is not reasonably believed any such claims do—or will—exist, aside from that of undersigned counsel

(which is expected to be covered, *en toto*, by a post-petition retainer paid to undersigned counsel). Specifically, former chapter 11 counsel to the Debtor—John Forest, Esq.—does not presently appear to remain a member in good standing of this Honorable Court and has not filed a fee application. It is not believed any other administrative expense claims have arisen since this case was re-converted from chapter 7, excepting ordinary course operating expenses that have been paid in due course in accord with a cash collateral budget.

### d.  Sadiq Hafix Administrative Claim

The principal of the proposed purchaser holds an administrative expense claim in the sum of $20,000.00. *See* DE #401. As part of the proposed sale, this claim will be waived and released.

### e.  Funds Applied to Estimated Closing Costs

The application of $15,000.00 toward closing costs is a good faith estimate of the seller's share of such costs, understanding that traditional expenses will be incurred and, since this sale is not occurring pursuant to a plan of reorganization, there will not be any exemption from the payment of transfer taxes. *See* 11 U.S.C. § 1146. To the extent closing costs exceed the sum, such will need to be paid by the purchaser. To the extent closing costs prove to be less than this sum, the difference will inure to the benefit of MainStreet Bank, to be paid at closing as part of the retirement of that institution's lien.

### f.  Agent Commission

The posture of this case is unusual, as is the Debtor's obligation, *vel non*, to compensate a realtor. The chapter 7 trustee previously applied to employ Stephen Karbelk ("Mr. Karbelk") as the exclusive listing agent for the Property. *See* DE #136. An agreement appended to that application (the "Listing Agreement") provides, *inter alia*, for (i) a termination date of December 31, 2024, *id.* at p. 7, § 3(B); and (ii) a protection period that runs for 30 days thereafter, *id.* at p. 8,

§ 5.[1] Thus, while the employment application was granted, and the Listing Agreement was approved, *see* DE #167, the agreement has since lapsed as has the post-agreement protection period.

Mr. Karbelk was never then re-employed, either by the chapter 7 trustee or, following conversion to chapter 11 on April 17, 2025, *see* DE #351, by the Debtor, *see* Docket, *passim*. So the Listing Agreement has, per its own, express terms, now lapsed. And there is no new or superseding listing agreement in place.

At the last hearing in this matter, this Honorable Court suggested any effort to re-employ Mr. Karbelk would need to be with consideration for new work (and such is a paraphrase, not nearly a precise quotation). There is not, however, any new work to be done by a realtor. And with Mr. Karbelk's prior application for compensation having been denied, *see* DE #420, there is not any lawful basis to compensate Mr. Karbelk for his prior services based on the extant posture of this case.

So, while the equities of such are no doubt a touch unsettling, it does not appear Mr. Karbelk is eligible to be paid at closing. Nor does it appear the Listing Agreement provides any forward-looking mechanism to furnish Mr. Karbel with compensation in this matter. And there will thusly not be any payment made to him upon sale of the Property.

This does, however, invite a secondary problem: the buyer's realtor—who has assisted the buyer for a healthy quotient of time—has a reasonable expectation of being paid at closing, but is contractually only payable through a split of the commission reserved to Mr. Karbelk's firm under the Listing Agreement. The proposed buyer—through counsel—has made clear that its realtor

---

[1] Application of the protection period is dependent upon at least one intervening, triggering act coming to pass, but such is immaterial to this motion insofar as the Protection Period—regardless of whether or not ever properly triggered—has lapsed.

must be paid. And it is understood the sum of such payment is $40,500.00 (representing a significant discount unto itself—the Listing Agreement proposed a buyer's realtor receive 2.5% of the sales price and this sum is approximately 0.96% of the Purchase Price).

To address this oddity, the Debtor proposes that either (i) this Honorable Court authorize the payment, as a closing cost, to be made at closing as a closing expense in *addition* to the $15,000.00 discussed *supra* (but not to be made should closing fail to occur for any reason); or (ii) the Purchase Price be reduced to $4,177,500.00, with the express understanding the discount of $40,500.00 will correlate—dollar for dollar—to a commission paid by the buyer, at closing, on the HUD-1 closing statement, but where such funds shall not be a part of the Purchase Price and shall accordingly not ever enter the Debtor's estate or be administrated as part of the Debtor's estate.

## IV.    Changes to Sales Contract

The Debtor proposes to modify the Sales Contract, appended hereto as Exhibit A, on the following terms:

1.    The reference to a "Selling Broker" shall be stricken from the prefatory clause of the Sales Contract. *See, supra,* § III(f).

2.    Section 3(c) of the Sales Contract shall be modified such that the following language is appended thereto: "In no event shall Seller's portion of closing costs exceed $15,000.00."

3.    Section 11 of the Sales Contract shall be stricken and replaced with the following language: "Payment of any brokers shall be in accord with an order of the United States Bankruptcy Court for the Eastern District of Virginia authorizing Seller's performance under this Agreement."

4.    Section 13(d) of the Sales Contract shall be stricken.

V.      **Argument: The Sale Should be Approved**

Disposition of the Property to an arm's length, bona fide purchaser for value will allow this case to realize finality in a manner that best protects the interests of creditors and other parties in interest. With plan confirmation having been denied, it is manifest the Debtor cannot retain the Property. Conversion to chapter 7—for a second time—would only invite the incursion of further administrative expenses and commissions. And dismissal would leave parties in a situation where a sale would almost assuredly be occasioned in the discounted throes of a foreclosure, without any protection for the chapter 7 trustee's claim and with the further incursion of *per diem* interest in favor of a senior lienholder. The Purchase Price, meanwhile, is a fair and reasonable price for the Property. And there is thusly apt wisdom in permitting the proposed sale to occur.

As this Honorable Court has previously observed, of the standard governing a sale motion such as this:

> A sale of substantially all of the assets of the estate prior to plan confirmation requires a "sound business purpose," which in turn requires: (1) a sound business reason or emergency justifying a pre-confirmation sale; (2) that the sale has been proposed in good faith; (3) adequate and reasonable notice of the sale has been provided to interested parties; and (4) the purchase price is fair and reasonable. Courts generally look to the trustee's business judgment in analyzing asset sales under Section 363(b).

*In re MCSGlobal Inc.*, 562 B.R. 648, 654 (Bankr. E.D. Va. 2017) (citing *In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997); *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Alpha Nat. Res., Inc.*, 546 B.R. 348, 356 (Bankr. E.D. Va. 2016)).

Here, there is a sound business reason for selling the Property: the Debtor is facially insolvent and, owing a fiduciary duty to its creditors, *In re Fuller's Serv. Ctr. Inc.*, 675 B.R. 575, 593 (Bankr. N.D. Ill. 2025) (citing 11 U.S.C. § 1107(a); *Wolf v. Weinstein*, 372 U.S. 633, 650 (1963); *In re Schipper*, 933 F.2d 513, 516 (7th Cir. 1991)), must now look to efficiently make an

optimal return to those creditors. A prompt sale of the Property, at a market-based price, will achieve those ends.

Concerning the second factor: the sale is being proposed in good faith. The proposed purchaser is Pleasant Valley Holdings III LLC (the "Purchaser"), an arm's length, third party entity with no relation to the Debtor. The Purchaser is *not* an insider of the Debtor. The Purchaser does not have any pre-petition relationship with the Debtor. The Purchaser, rather, is an entity located by the realtor formerly employed by the chapter 7 trustee in this case. And there is accordingly ample safety in positing the proposed sale to be one cloaked in good faith.

As for the adequacy of notice: the Debtor is providing the full notice contemplated by Federal Rule of Bankruptcy Procedure 2002 (i.e., 21 days' notice of a hearing on this motion).

Moreover, addressing the fourth prong: the Purchase Price is fair and reasonable. This is a sum that was arrived upon by the open marketing of the Property, by a reputable real estate agent, for a sufficient period of time. The Purchase Price is a market-tested sum. Even at that, it is a sum that was market tested when there was a belief the Property could be delivered sans extant leases—something that would have made the Property even more valuable. And, especially in the extant economic environment where "volatility" is perhaps the mildest descriptive verbiage, the Purchase Price stands out as being exceptionally reasonable.

At core, the proposed sale is a reasonable exercise of the Debtor's business judgment and should be allowed accordingly.

## VI.    Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) ratify the Sales Contract and authorize the Debtor to sell the Property pursuant to the Sales Contract; (ii) order the Debtor to assume all leases for the Property, as of the date of closing of the Sales Contract, and

authorize the Debtor to assume the same leases at closing; and (iii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: May 4, 2026

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 81556
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
Facsimile: (301) 444-4600
mac@dcbankruptcy.com
*Proposed Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of May, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies of the notice accompanying this motion (but not of the motion itself) being sent, via US Mail, postage prepaid, to all parties on the attached mailing matrix.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

10